IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSE L. ACEBAL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 01-47C |
| | ) | (Senior Judge Bruggink) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
PLAINTIFF LINDSEY BLEDSOE'S PROPOSED FINDINGS
OF UNCONTROVERTED FACTS

1. Between August 2, 1998, and May 20, 2000, Plaintiff Lindsey Bledsoe was a Lieutenant at USP Lewisburg. App. 10.

DEFENDANT'S RESPONSE: Admits. Def. App. 41-42.[1]

2. Sometimes before going to his duty post, Plaintiff Bledsoe had to pick up keys at the Control Center; at other times he received them from outgoing lieutenants. App. 13-18.

DEFENDANT'S RESPONSE: Admits.

3. MDC Brooklyn AW William Ey explains as follows the need for BOP employees to obtain keys:

> Because they have to get in to -- . . . work in a prison. They have to get in. They have to get keys to get into work. We lock doors in prison. App. 66.

DEFENDANT'S RESPONSE: Admits.

4. While Plaintiff Bledsoe was at USP Lewisburg (on the day watch), the BOP directed or required him to attend lieutenants' meetings. App. 3, 20. They were "mandatory" meetings. Id.

---

[1] "Def. App." refers to Defendant's Appendix to Defendant's Opposition To Plaintiff Lindsey Bledsoe's Motion For Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment Regarding Plaintiff Lindsey Bledsoe. "Pl. App." refers to Plaintiff's Appendix re Plaintiff Lindsey Bledsoe's Motion For Partial Summary Judgment.

DEFENDANT'S RESPONSE: Admits that when Lt. Bledsoe was assigned to Day Watch at USP Lewisburg, he was required to attend lieutenants' meetings, unless he had a conflict, e.g., mandatory training, an emergency, etc. Def. App. 55-56 (Johns); 1114-20 (Ey). At USP Lewisburg, such meetings were held during the Day Watch. Def. App. 1117, 1202-04, 1211-13, 1220-22, 1229-31. However, Lt. Bledsoe was not required or directed to attend Lieutenants' meetings when he was not on duty, e.g., on his day off, when he was on leave, or when he was off shift. Def. App. 55-56 (Johns); 1114-20 (Ey). Denies that the Lieutenants' meetings were "mandatory" meetings for all Lieutenants. Id.

5. The meetings, which were on Tuesdays, began at 8 a.m., generally lasted at least 3 hours, and were usually over at 12 or 12:30 p.m. App. 2, 23.

DEFENDANT'S RESPONSE: Admits that, in August 1998 - May 2000, at USP Lewisburg, the combined Department Head/Lieutenants' meetings usually began at 8:00 a.m. Def. App. 1202-04, 1211-13, 1220-22, 1229-31. Denies that they generally lasted at least three hours and were usually over at 12:00 or 12:30 p.m. Def. App. 1114, 1202-04, 1211-13, 1220-22, 1229-31. The combined Department Head/Lieutenants' part of the meeting usually lasted about 45 minutes. Id.

6. For about seven to nine months in 1999-2000, when the institution was preparing for a program review, the meetings generally lasted at least five hours, usually from 8 a.m. until 2 p.m. App. 8, 23-24.

DEFENDANT'S RESPONSE: Denies. Defendant incorporates its response to Plaintiff's Proposed Finding of Fact No. 5.

7. If lieutenants were on sick leave, they were not required to attend the meetings, but if the meeting was held on his day off or after his shift ended, Plaintiff Bledsoe was still required to attend it. App. 20-21.

DEFENDANT'S RESPONSE: Admits that the Lieutenants were not required to attend Lieutenants' meetings when they were on sick leave. Def. App. 55-56 (Johns), 1114-22 (Ey). Denies that if the meeting was held on his day off or after his shift ended, Lt. Bledsoe was required to attend. Id. Lieutenants were not required to attend the meetings when they were not on duty, e.g., when they were on leave, on day off, or off shift. Id..

8. Between August 2, 1998, and May 2, 2000, Plaintiff Bledsoe regularly attended monthly lieutenants' meetings at USP Lewisburg. App. 7-8, 19-20, 54. Plaintiff attended meetings at USP Lewisburg in September, October, November, and December 1999, among other times. App. 8. Plaintiff missed only one lieutenants' meeting at USP Lewisburg. App. 2, 54.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe regularly attended USP Lewisburg Lieutenants' meetings at times when he was on duty at the time of the meeting; denies that he regularly attended such meetings when he was not on duty. Def. App. 55-56 (Johns), 1114-22 (Ey), 1202-04, 1211-13, 1220-22, 1229-31. With regard to the second sentence, USP Lewisburg Department Head/Lieutenants' meeting minutes are not available for September, October, November, and December 1999. Def. App. 1201. Assuming that USP Lewisburg Lieutenants' meetings were held during the period September through December 1999, Lt. Bledsoe may well have attended those meetings during his duty hours (unless he was on leave), as the USP Lewisburg Quarterly Roster for September 19, 1999 to December 18, 1999 indicates that he was assigned as G Block Lieutenant, shift 12, 7:45 a.m.-4:15 p.m, and the meetings generally began at 8:00 a.m. Def. App. 1164. Admits that Lt. Bledsoe did not attend at least one lieutenants' meeting at USP Lewisburg, i.e., the meeting on February 22, 2000. Def. App. 1117-20, 1217. He was on annual leave that day. Def. App. 1217. There are no meeting minutes available to

determine whether he actually attended all but one of the meetings. Def. App. 1201.

9. Capt. Louis Lopez and Associate Warden (AW) Tracy Johnson told Plaintiff Bledsoe that he needed to be at the lieutenants' meetings. App. 2-3, 8, 20-21, 54. Management verbally ordered lieutenants to be there and kept a list of all who did not attend. App. 20.

DEFENDANT'S RESPONSE: We assume plaintiff intends to refer to USP Lewisburg AW Tracy Johns, as there was no AW Tracy Johnson. Def. App. 55-56. Denies that USP Lewisburg management (Cap. Lopez and AW Tracy Johns) told Lieutenant Bledsoe that he needed to be at all the Lieutenants' meetings, or that he was verbally ordered to attend all the Lieutenants meetings. Def. App. 55-56 (Johns), 1114-20 (Ey). Admits that Lieutenants who were on duty at the time of a USP Lewisburg Lieutenants' meeting needed to be at the meeting, unless they had a conflict such as, for example, mandatory training, an institutional emergency, etc. Def. App. 55-56 (Johns), 1114-20 (Ey). With regard to the second sentence, denies that USP Lewisburg management verbally ordered Lieutenants to be at the Lieutenants' meetings. Id . Denies the assertion that management "kept a list of all who did not attend," except admits that the meeting minutes themselves sometimes contained a list of Lieutenants who did not attend the meeting. Def. App. 1204, 1231.

10. The direction to attend these meetings was also in writing, but Plaintiff Bledsoe does not have the written orders. App. 8.

DEFENDANT'S RESPONSE: Denies. Lt. Bledsoe testified that he did not recall any written instructions directing Lieutenants to attend Lieutenants' meetings at USP Lewisburg. Def. App. (Dep. 27-28). See also Def. App. 55-56 (Johns), 1114-20 (Ey).

11. The BOP did not pay Plaintiff Bledsoe at overtime rates for the time he spent off the-clock in these meetings. App. 3.

DEFENDANT'S RESPONSE: Admits that, for the USP Lewisburg Lieutenants' meetings on January 25, 2000, March 21, 2000, and April 18, 2000, Lt. Bledsoe apparently was not paid overtime for attending those meetings at times outside of his scheduled shift; otherwise denies that Lt. Bledsoe was not compensated for attending such meetings outside of his scheduled shift. Def. App. 55-56 (Johns), 1116-20 (Ey), 1201-47.

12. At MDC Brooklyn, Plaintiff Bledsoe has served as Admax Lieutenant, Operations Lieutenant (morning and evening watches), Special Investigative Supervisor (SIS) Lieutenant, and Special Housing Unit (SHU) Lieutenant. App. 11-12. He served on the evening watch (4 p.m.-12 midnight) from May 20, 2000, to June 18, 2000; he has been on either the morning watch (12 midnight-8 a.m.) or the evening watch (2:30 p.m.-10:30 p.m.) from June 18, 2000, to the present. App. 96-109, 4, 11.

DEFENDANT'S RESPONSE: Admits that, at MDC Brooklyn, Lt. Bledsoe has served as Admax Lieutenant, Operations Lieutenant (morning and evening watches), Special Investigative Supervisor (SIS) Lieutenant, and Special Housing Unit (SHU) Lieutenant. Denies that he served on the evening watch (4:00 p.m. -midnight) from May 20 to June 18, 2000 and that, for the period June 18, 2000 to the present, Lt. Bledsoe has been on either the morning watch (midnight-8:00 a.m.) or the evening watch (2:30 p.m.-10:30 p.m.).

According to his Assignment Card (Exhibit 114) and the Quarterly Rosters (Exhibit 115), Lt. Bledsoe has had the following quarterly assignments at MDC Brooklyn:

(1) 6/18/2000-9/16/2000, SR-1, variable shifts, Tuesdays and Fridays off;

(2) 9/17/2000-12/16/2000, SR-1, variable shifts, Tuesdays and Fridays off;

(3) 12/17/2000-3/17/2001, SEC Lieutenant, Day Watch (7:45 a.m.-4:15 p.m.), Mondays and Tuesdays off;

(4) 3/18/2001-6/16/2001, SEC Lieutenant, Day Watch (7:45 a.m.-4:15 p.m.), Mondays and Tuesdays off (based on his assignment card);

(5) 6/17/2001-9/15/2001, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Tuesdays and Wednesdays off;

(6) 9/16/2001-12/15/2001, Admax Lieutenant, Evening Watch (12 hour emergency roster)(8:00 p.m.-8:00 a.m.), Tuesdays and Wednesdays off (based on his assignment card);

(7) 12/16/2001-3/16/2002, Admax Lieutenant, Morning Watch (midnight-8:00 a.m.), Mondays and Tuesdays off;

(8) 3/31/2002-6/29/2002, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(9) 6/30/2002-9/28/2002, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(10) 9/29/2002-12/28/2002, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(11) 12/29/2002-3/29/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(12) 3/30/2003-6/28/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(13) 6/29/2003-9/27/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(14) 9/28/2003-12/27/2003, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Sundays and Mondays off;

(15) 12/28/2003-3/27/2004, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Sundays and Mondays off;

(16) 3/28/2004-6/26/2004, SHU Lieutenant, Day Watch (7:30 a.m.-4:00 p.m.), Sundays and Saturdays off;

(17) 6/27/2004-9/25/2004, Operations Lieutenant, Day Watch (7:30 a.m.-4:00 p.m.), Fridays and Saturdays off;

(18) 9/26/2004-1/1/2005, SEC Lieutenant, Day Watch (7:30 a.m.-4:00 p.m.), Sundays and Mondays off;

(19) 1/2/2005-3/26/2005, Operations Lieutenant, Evening Watch (4:00 p.m.-midnight), Thursdays and Fridays off.

(20) 1/2/2005-3/26/2005, Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight, Thursdays and Fridays off;

(21) 3/27/2005-6/25/2005, SR-2, various shifts, Fridays and Saturdays off;

(22) 6/26/2005-9/24/2005, Operations Lieutenant, Day Watch, shift 8 (8:00 a.m.-4:00 p.m.), Fridays and Saturdays off;

(23) 9/25/2005-1/7/2006, SEC Lieutenant, 2:00 p.m.-10:00 p.m., Wednesdays and Thursdays off;

(24) 1/8/2006-3/25/2006, East Activities Lieutenant, Evening Watch, 4:00 p.m.-midnight, Wednesdays and Thursdays off;

(25) 3/26/2006-6/24/2006, Operations Lieutenant, Morning Watch, midnight-8:00 a.m., Sundays and Mondays off;

(26) 6/25/2006-9/23/2006, Operations Lieutenant, Morning Watch, midnight - 8:00 a.m.;

(27) 9/24/2006-12/23/2006, Operations Lieutenant, Morning Watch, midnight-8:00 a.m., Sundays and Mondays off.

Def. App. 307-08 (Lopresti); Def. App. 1335 (Schoenfelder). Lt. Bledsoe's assignments on Quarterly Rosters were modified by Daily Rosters, which indicated his daily assignments. Id. SR-1 and SR-2 were assignments that could be assigned to various posts, for example, Operations Lieutenant, SHU Lieutenant. Id.

13. Post orders are written orders which contain the instructions of the basic tasks that employees are required to do during that shift "and when they should be doing it." App. 62-63, 77, 79-80, 82.

DEFENDANT'S RESPONSE: Admits only that Post Orders are guidelines which contain instructions of the basic tasks that correctional employees are required to do during their shift, but denies that the post orders require particular tasks to be performed at precise times. As former FCI Otisville Warden Menifee explained, the Post Orders did not require the employee to do everything identified in the Post Order at the time stated; instead, "it's a guideline of what is expected to be occurring within the confines of th[e] shift." Def. App. 1330-31 ("A. It doesn't

mean you have to do everything right at 12 a.m. It's a guideline of what is expected to be occurring within the confines of this shift.")(Dep. 59). Similarly, William Ey, a former Associate Warden for MDC Brooklyn, testified that Post Orders

> are an outline of procedures to help the staff member work a particular post telling them the basic ins and outs of what they should be looking for and what they should be doing. It is a guideline ... they are not in stone but gives them a guideline to what they should be doing and when they should be doing it.

Def. App. 1251-53, 1261-63, 1269-70 (Dep. 46-48, <u>see also</u> 57-59, 82-83).

14. Employees are required to follow post orders. App. 69, 84-85, 77, 79-80, 82. MDC Brooklyn AW William Ey wants employees covered by post orders to follow them. App. 64. MDC Brooklyn Michael Zenk expects people covered by post orders to follow them. App. 60.

<u>DEFENDANT'S RESPONSE</u>: Admits. Defendant also incorporates its response to Plaintiff's Proposed Finding No. 13.

15. At MDC Brooklyn Plaintiff Bledsoe has served under post orders. App. 55.

<u>DEFENDANT'S RESPONSE</u>: Admits.

16. The post orders indicated when he was supposed to be on his post. App. 55.

<u>DEFENDANT'S RESPONSE</u>: Denies. Plaintiff's statement is ambiguous because it does not define a Lieutenant's post. Assuming a Lieutenant's post is the institution (Def. App. 1256-57 (Ey Dep. 51-52)), Post Orders may indicate when a Lieutenant is to be at the institution. If plaintiff intends "post" to refer to the Lieutenants' office, the Post Orders do <u>not</u> state the time when a Lieutenant was to arrive at the Lieutenants' office. Pl. App. 86-95.

BOP policy is stated in Operations Memorandum No. 214-95 and the Human Resource Management Manual and provides:

> Shift starting and stopping times for employees who work inside an institution shall be scheduled to begin and end at the point employees pick-up and drop-off

> equipment (keys, radios, body alarms, work detail pouches, etc.) at the control center. Therefore, employees who pick-up equipment at the control center shall have their shifts scheduled to include reasonable time to travel from the control center to their assigned duty post and return (at the end of the shift)....
>
> An institution employee whose shift starts at 7:30 a.m. must be at the control center and have received his/her equipment no later than 7:30 a.m. to be considered "on time" for the start of his/her shift. To accomplish this, each location should ensure minimum waiting time for the employee in the key line.
>
> If that same employee's shift ends at 4:00 p.m., he/she should drop-off his/her keys/equipment in the control center at 4:00 p.m., the scheduled quitting time. Reasonable travel time to and from the duty post to the control center would be compensable as part of the employee's tour of duty....

Def. App. 33-34; see also 39-40. BOP policy further states:

> If an employee arrives at the key line in a reasonable time to get equipment prior to the shift, but does not receive the equipment by the beginning of the shift because of unforeseen circumstances, this employee is not to be considered late.

Def. App. 40. Thus, if Lt. Bledsoe's assignment required that he pick up keys or equipment from the Control Center, he was to be in the key line at the Control Center at his shift-starting time. Def. App. 33-34, 39-40; Def. App. 305-06, 311-12 (Lopresti); Def. App. 1107-08, 1110-11 (Ey); Def. App. 1333-34, 1337-38 (Schoenfelder). Similarly, if Lt. Bledsoe's assignment required that he drop off keys or equipment at the Control Center, he was to be there at his shift-ending time. Id.

17. The AW's told the employees at MDC-Brooklyn they needed to be on their posts when their shifts officially began. App. 73.

DEFENDANT'S RESPONSE: Denies. We assume "employees" to refer to the Lieutenants at MDC Brooklyn. Plaintiff's statement is ambiguous because it does not define a Lieutenants' post. A Lieutenant's post is the entire institution. Def. App. 1256-57, 1277-78 (Ey Dep. 51-52, 120-21). If plaintiff intends "post" to refer to the Lieutenants' office, the AWs did not tell the Lieutenants at MDC Brooklyn that they needed to be at the Lieutenants' office at the start of their

shift. As former MDC Brooklyn AW William Ey testified, Lieutenants were not required to be in the Lieutenants' office at the start of their shift. Def. App. 1257, 1281-82 (Dep. 52, 147-48). As Mr. Ey testified, a Lieutenant "can meet their relief down front if they wanted to." Def. 1277-78 (Dep. 120-21). If Lt. Bledsoe's assignment required that he pick up keys or equipment from the Control Center, he was to be in the key line at the Control Center at his shift-starting time. Def. App. 33-34, 39-40; Def. App. 305-06, 311-12 (Lopresti); Def. App. 1107-08, 1110-11 (Ey); Def. App. 1333-34, 1337-38 (Schoenfelder). Similarly, if Lt. Bledsoe's assignment required that he drop off keys or equipment at the Control Center, he was to be there at his shift-ending time. Id.

BOP policy is stated in Operations Memorandum No. 214-95 and the Human Resource Management Manual and provides:

> Shift starting and stopping times for employees who work inside an institution shall be scheduled to begin and end at the point employees pick-up and drop-off equipment (keys, radios, body alarms, work detail pouches, etc.) at the control center. Therefore, employees who pick-up equipment at the control center shall have their shifts scheduled to include reasonable time to travel from the control center to their assigned duty post and return (at the end of the shift)....
>
> An institution employee whose shift starts at 7:30 a.m. must be at the control center and have received his/her equipment no later than 7:30 a.m. to be considered "on time" for the start of his/her shift. To accomplish this, each location should ensure minimum waiting time for the employee in the key line.
>
> If that same employee's shift ends at 4:00 p.m., he/she should drop-off his/her keys/equipment in the control center at 4:00 p.m., the scheduled quitting time. Reasonable travel time to and from the duty post to the control center would be compensable as part of the employee's tour of duty....

Def. App. 33-34; see also 39-40. BOP policy further states:

> If an employee arrives at the key line in a reasonable time to get equipment prior to the shift, but does not receive the equipment by the beginning of the shift because of unforeseen circumstances, this employee is not to be considered late.

Def. App. 40.

18. "The post orders said you have to be here to exchange equipment at a certain time; and as a supervisor, you always came early." App. 74. It was "an unwritten law." Id.

DEFENDANT'S RESPONSE: Denies. The Post Orders did not direct the Lieutenant to exchange equipment at a certain time. Pl. App. 86-95. Defendant also incorporates its response to Plaintiff's Proposed Findings Nos. 13, 16, and 17. Further, Lieutenants did not always arrive early. Def. App. 305-06, 311-12 (Lopresti); Def. App. 1107-08, 1110-11 (Ey); Def. App. 1333-34, 1337-38 (Schoenfelder). If Lt. Bledsoe's assignment required that he pick up keys or equipment from the Control Center, he was to be in the key line at the Control Center at his shift-starting time. Def. App. 33-34, 39-40; Def. App. 305-06, 311-12 (Lopresti); Def. App. 1107-08, 1110-11 (Ey); Def. App. 1333-34, 1337-38 (Schoenfelder). Similarly, if Lt. Bledsoe's assignment required that he drop off keys or equipment at the Control Center, he was to be there at his shift-ending time. Id.

19. Historically post orders have always required employees to pick up certain keys. App. 67.

DEFENDANT'S RESPONSE: We assume "employees" refers to Lieutenants. Admits only that Lieutenants' post orders usually provide that Lieutenants either obtain keys from the Lieutenants whom they are relieving or from the Control Center; the remainder is denied for lack of proof. Pl. App. 86-95. Defendant also incorporates its response to Plaintiff's Proposed Finding No. 13.

20. On March 19, 2000, for example, Capt. Salvatore LoPresti issued post orders for various lieutenants on all three shifts at MDC-Brooklyn. App. 86-95.

DEFENDANT'S RESPONSE: Admits.

21. The March 19, 2000, post order for Operations Lieutenant on the morning shift (12 midnight-8 a.m.), a position which Plaintiff Bledsoe sometimes had after that point required the

employee to have Key Rings [redacted], a radio, handcuffs, and a handcuff key. App. 86.

DEFENDANT'S RESPONSE: Admits.

22. Under "Normal Routine," that post order stated

> Report for duty in the proper uniform. You are required to utilize the "Staff Chit Board" whenever you enter and/or depart from the secured perimeter of this institution. Proceed to the Lieutenant's Office and receive any pertinent information from the Evening Watch Lieutenant, pass on any relevant information to the on-coming shift. Exchange all chit, (s) if applicable. Id.

DEFENDANT'S RESPONSE: Admits.

23. A similar instruction was repeated for the Operations Lieutenants on the other shifts. App. 89, 92.

DEFENDANT'S RESPONSE: Admits.

24. That post order also had the following entry for 12:00 A.M.:

> Count Time: As soon as Officers have made their reliefs, they will begin the Midnight count. In the event a post is vacated, the Operations Lieutenant will assume the responsibility of assisting with the count and other duties of the vacated post. All units will call the Counts and Assignments Officer with their count. App. 86.

DEFENDANT'S RESPONSE: Admits that the cited MDC Brooklyn Post Order for Morning Watch Operations Lieutenant (midnight-8:00 a.m.) contains the words in the indented quotation. Pl. App. 86. Denies that, according to the Post Order, such activities were to be performed at midnight. As former FCI Otisville Warden Menifee explained, the Post Orders did not mean that the employee had to do everything identified in the Post Order at the time stated; instead, "it's a guideline of what is expected to be occurring within the confines of th[e] shift." Def. App. 1330-31 ("A. It doesn't mean you have to do everything right at 12 a.m. It's a guideline of what is expected to be occurring within the confines of this shift.")(Dep. 59). Similarly, William Ey, a former Associate Warden for MDC Brooklyn, testified that Post Orders

> are an outline of procedures to help the staff member work a particular post telling them the basic ins and outs of what they should be looking for and what they should be doing. It is a guideline ... they are not in stone but gives them a guideline to what they should be doing and when they should be doing it.

Def. App. 1251-53, 1261-63, 1269-70 (Dep. 46-48, see also 57-59, 82-83). Thus, plaintiff's implicit assertion that the activities in the quotation all were to take place at precisely midnight is denied. Further, Mr. Ey testified that the midnight count actually starts some time after midnight, and that Lieutenants do not count inmates; rather, Lieutenants ensure that correctional officers are conducting the count. Def. App. 1254-56 (Dep. 49-51).

25. In addition, that post order had the following entry for 8:00 AM:

> Pass on any pertinent information to the Day Watch Operations Lieutenant. Turn in all equipment. Relieved of duty. App. 88.

DEFENDANT'S RESPONSE: Admits that the cited MDC Brooklyn Post Order for Morning Watch Operations Lieutenant contains the words in the indented quotation. Pl. App. 88. Denies that the Post Order stated that such activities were to be performed at 8:00 a.m. Id. Further, according to the Post Order, the shift of the Morning Watch Operations Lieutenant (midnight-8:00 a.m.) overlapped with the Day Watch Operations Lieutenant (7:45 a.m.- 4:15 p.m.) from 7:45 a.m. to 8:00 a.m. Pl. App. 88-89. The Morning Watch Operations Lieutenant thus passed on any pertinent information, keys and radio to the Day Watch Operations Lieutenant prior to 8:00 a.m. Pl. App. 89; Def. App. 309, 311 (Lopresti). If plaintiff is asserting such activities occurred at or after 8:00 a.m., that assertion is denied. Id.

Further, former FCI Otisville Warden Menifee explained, the Post Orders did not mean that the employee had to do everything identified in the Post Order at the time stated; instead, "it's a guideline of what is expected to be occurring within the confines of th[e] shift." Def. App. 1330-31 ("A. It doesn't mean you have to do everything right at 12 a.m. It's a guideline of what

is expected to be occurring within the confines of this shift.")(Dep. 59). See Def. App. 1251-53, 1261-63, 1269-70 (Ey Dep. 46-48, 57-59, 82-83).

26. To comply with post orders and other directives to be at work on time, Plaintiff Bledsoe arrived at the institution before his shifts began. App. 25-29.

DEFENDANT'S RESPONSE: Denies. Defendant incorporates its response to Plaintiff's Proposed Findings Nos. 13, 18, 24, and 25.

27. Before going to his duty post, Plaintiff Bledsoe had to pick up a radio battery at the Control Center, walk through a grille, wait for the elevator, and walk from the elevator to his office. App. 26-27, 29.

DEFENDANT'S RESPONSE: We assume that plaintiff intends "duty post" to refer to the Lieutenants' office, but we deny that a Lieutenant's duty post is the Lieutenants' office. A Lieutenants' duty post is the entire institution. Def. App. 1256-57, 1277-78 (Ey Dep. 51-52, 120-21).

Denies that Lt. Bledsoe was required to pick up a radio battery at the Control Center. Lieutenants were not required to pick up radio batteries at the Control Center, and Lt. Bledsoe testified that he could pick up a battery during his shift. Def. App. 10 (Bledsoe Dep. 35); Def. App. 308 (Lopresti); Def. App. 1335 (Schoenfelder). Admits that Lieutenants pass through a sallyport or grille to enter the secure perimeter of the institution. Admits that, depending upon his assignment, Lt. Bledsoe would go from the Control Center to the elevator, wait for an elevator, and walk from the elevator to the Lieutenant's office. Def. App. 54 (Clemens). Denies that Lt. Bledsoe always went to the Lieutenants' office before going to his assignment. Def. App. 311 (Lopresti). For example, as Admax Lieutenant, Lt. Bledsoe went directly to the unit and obtained the keys and radio from the Admax Lieutenant whom he relieved. Id.

28. It takes Plaintiff Bledsoe about five and one-half minutes to engage in these preliminary activities. App. 27.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe so testified, but he did not measure the amount of time. Pl. App. 27-28; Def. App. 10 (Dep. 35-36). Denies that it actually takes 5.5 minutes to perform such activities, or that Lt. Bledsoe is required to perform them prior to the start of his shift. Def. App. 306 (Lopresti); Def. App. 1334 (Schoenfelder).

The BOP has timed with a stop watch the amount of time it takes to walk from the Control Center to the Lieutenants' offices. Def. App. 53. MDC Brooklyn is comprised of two buildings: the East or old building, and the West or new building. Id. There are two Lieutenants' offices, one in the East building and another in the West building. Id. There are also two Control Centers, one in the East building and another in the West building. Id.

MDC Brooklyn AW Judd Clemens used a stop watch and measured the amount of time that it took him to walk at a moderate pace from the Control Centers to each of the Lieutenants' offices. Def. App. 53. When he made the measurements, he started the stop watch when he was inside the sallyport and next to the Control Center, and stopped the stop watch when he arrived inside the designated office. Id. In traveling from the Control Center to each of these offices, he waited for and took an elevator to the floor where the office was located. Id. The time measured was his travel time from the Control Center in the East or the West Building to each of the offices, and includes all of the time that he spent waiting for and taking an elevator. Id.

Thus, as measured by a stop watch, the time that it took to walk from the West Building's Control Center to the Lieutenants' office in the West Building was 1 minute, and required taking an elevator. Def. App. 53.

The location of the Lieutenants' office in the East Building was changed. As measured

by a stop watch, the time that it took to walk from the East Building's Control Center to the Lieutenants' office where it was previously located on the second floor (now the Computer Services area) was 2 minutes and 15 seconds, and required taking an elevator. Def. App. 53-54. As measured by a stop watch, the time that it took to walk from the East Building's Control Center to the new Lieutenants' office on the second floor of the East Building was 1 minute and 45 seconds, and required taking an elevator. Id. This area was formerly an Associate Warden's office. Id.

29. After his shift ended, Plaintiff Bledsoe has had to reverse his steps, although he does not have to drop off any equipment. App. 28-29.

DEFENDANT'S RESPONSE: Admits that, as Operations Lieutenant and as Security Lieutenant, Lt. Bledsoe usually walks from the Lieutenants' office directly out of the institution, without dropping off any keys or equipment, but denies that he has to do so after his shift ended. Def. App. 306 (Lopresti); Def. App. 1334 (Schoenfelder).

Further, Lt. Bledsoe's path out of the institution varies depending upon his assignment. Def. App. 311. For example, as Admax Lieutenant, Lt. Bledsoe walks directly from the unit out of the institution, without dropping off any equipment at the Control Center. Def. App. 311 (Lopresti). As SIS Lieutenant and as SHU Lieutenant, Lt. Bledsoe walks to the Control Center and turns in keys and/or equipment, and he was to be at the Control Center at his shift-ending time. Def. App. 311-12 (Lopresti); Def. App. 1337-38 (Schoenfelder).

30. When he is on the evening watch, it generally takes Plaintiff Bledsoe about three minutes to walk from his office, wait for the elevator, and exit through the sallyport at the entrance to the institution's secure perimeter. App. 28. The time is about five minutes when he is leaving at the end of the day watch, which ends at 4 p.m. App. 25-26, 29-30.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe so testified that it took him three minutes to go from the Lieutenants' office, wait for the elevator, and exit through the sallyport at the entrance to the institution's secure perimeter, and that it took him about five minutes when he is leaving at the end of the day watch. Def. App. 9-11 (Dep. 33-38).

However, denied that the day watch shift ends at 4:00 p.m. When Lt. Bledsoe started at MDC Brooklyn in May 2000, the shifts for Operations Lieutenants and Security Lieutenants were as follows: (1) Morning Watch, midnight-8:00 a.m.; (2) Day Watch, 7:45 a.m.-4:15 p.m; and (3) Evening Watch, 4:00 p.m.-midnight. Def. App. 309 (Lopresti); Def. App. 77-80 (Quarterly Roster). The MDC Brooklyn Post Orders for Operations Lieutenants also state these shifts. Pl. App. 89.

Effective the quarter March 28, 2004-June 28, 2004, the shift times for Operations Lieutenants and Security Lieutenants were changed as follows: (1) Morning Watch, midnight-8:00 a.m.; (2) Day Watch, 7:30 a.m.-4:00 p.m; and (3) Evening Watch, 4:00 p.m.-midnight. Def. App. 309 (Lopresti).

Further, as explained in our response to Plaintiff's Proposed Finding of Fact No. 28, the time that it takes to walk from the West Building's Control Center to the Lieutenants' office in the West Building is 1 minute and requires taking an elevator. Def. App. 53-54.

The time that it takes to walk from the East Building's Control Center to the Lieutenants' office where it was previously located on the second floor (now the Computer Services area) is about 2 minutes and 15 seconds, and requires taking an elevator. Id. The time that it takes to walk from the East Building's Control Center to the new Lieutenants' office on the second floor of the East Building is about 1 minute and 45 seconds, and requires taking an elevator. Id. This area was formerly an Associate Warden's office. Id.

31. At all relevant times during Plaintiff Bledsoe's employment there, the MDC Brooklyn has held monthly lieutenants' meetings and combined lieutenants'/department head meetings. See App. 31, 58.

DEFENDANT'S RESPONSE: Admits that, from May 2000 to the present, MDC Brooklyn has held its Lieutenants' meetings as combined Department Head/Lieutenants' meetings which usually were followed by a closed, Lieutenants' meeting, except that MDC Brooklyn sometimes has not held such meetings on a monthly basis. Def. App. 312, 336-37 (Lopresti). Thus, it is incorrect to state that MDC Brooklyn has held Lieutenants' meetings and combined Department Head/Lieutenants' meetings on a monthly basis. Id.

32. Under Warden Michael Zenk, who has been warden at MDC Brooklyn since April 21, 2002, lieutenants' meetings have been held once a month, and department head meetings are held twice a month. App. 57, 58. For efficiency, the lieutenants' meeting is combined with the department head meeting at the end of the month. It is held on Tuesdays. App. 58, 31.

DEFENDANT'S RESPONSE: Admits, except the Lieutenants' meetings were held as combined Department Head/Lieutenants' meetings and Warden Zenk left MDC Brooklyn on about April 30, 2005. Def. App. 84 (Zenk).

33. Under Wardens Carlisle Holder, Dennis Hasty, and Zenk, the combined department head/lieutenants' meetings typically last at least 3 hours. See App. 32-33. A combined department head/lieutenants' meeting takes place for 1.5 hours, immediately followed by a lieutenants' meeting exclusively for lieutenants. See App. 31. The duration of both meetings totals at least 3 hours. See App. 33.

DEFENDANT'S RESPONSE: Denies. The duration of such meetings has varied. Def. App. 331-50 (Lopresti). Denies that the combined Department Head/Lieutenants' meeting takes place

for 1.5 hours or 90 minutes. According to the meeting minutes, during the period May 2000 to February 2005, the MDC Brooklyn combined Department Head/Lieutenants' meetings took the following amounts of time:

| Date of meeting | Duration of meeting in minutes |
|---|---|
| May 30, 2000 | 70 |
| June 27, 2000 | 75 |
| August 14, 2000 | 65 |
| September 19, 2000 | 90 |
| October 31, 2000 | 75 |
| November 28, 2000 | 108 |
| December 26, 2000 | 75 |
| January 23, 2001 | 60 |
| February 20, 2001 | 55 |
| March 20, 2001 | 60 |
| June 27, 2001 | 100 |
| July 24, 2001 | 80 |
| August 23, 2001 | 95 |
| October 29, 2001 | 75 |
| November 27, 2001 | 65 |
| January 22, 2002 | 60 |
| February 19, 2002 | 25 |
| March 19, 2002 | 30 |
| August 22, 2002 | 60 |
| September 17, 2002 | 75 |
| October 28, 2002 | 50 |
| November 27, 2002 | 55 |
| January 21, 2003 | 40 |

| | |
|---|---|
| February 25, 2003 | 60 |
| March 18, 2003 | 75 |
| April 29, 2003 | 40 |
| May 27, 2003 | 40 |
| June 24, 2003 | 65 |
| July 22, 2003 | 40 |
| August 19, 2003 | 45 |
| September 30, 2003 | 45 |
| October 28, 2003 | 50 |
| November 25, 2003 | 50 |
| December 23, 2003 | 40 |
| January 20, 2004 | 40 |
| February 17, 2004 | 15 |
| March 30, 2004 | 55 |
| July 20, 2004 | 40 |
| August 31, 2004 | 60 |
| September 28, 2004 | 60 |
| October 26, 2004 | 40 |
| December 21, 2004 | 90 |
| February 15, 2005 | 60 |

Based upon the minutes, the duration of the Department Head/Lieutenants' meetings varied from 15 minutes to 108 minutes. Def. App. 331-50. Denied that the duration of the Department Head/Lieutenants' meeting and the subsequent closed Lieutenants' meeting totaled at least three hours. Id. The duration of such meetings has varied.

34. Between May 2000 and August 2000, the combined department head/lieutenants' meetings at MDC Brooklyn began at 8:00 a.m. "[E]very now and then," the combined meetings

began at 8 or 9 a.m. App. 32. See e.g., Meeting Minutes, App. 110-41.

DEFENDANT'S RESPONSE: Denies that, between May 2000 and August 2000, the MDC Brooklyn combined Department Head/Lieutenants' meetings began at 8:00 a.m., except admits the May 2000 and June 2000 combined Department Head/Lieutenants' meetings both began at 8:00 a.m. Def. App. 332. The August 2000 combined Department Head/Lieutenants' meeting began at 3:05 p.m. Def. App. 332. Denies that such meetings began at 9:00 a.m. Def. App. 329-31.

35. The department head portion generally ended at 9:30 a.m. App. 32. See e.g., Meeting Minutes, App. 110-41. A lieutenants' meeting followed the combined meeting, making the total time in attendance a minimum of three hours. App. 33.

DEFENDANT'S RESPONSE: Denies that the combined Department Head/Lieutenants' meeting generally ended at 9:30 a.m. Denies that a lieutenants' meeting followed the combined meeting, making the total time in attendance a minimum of three hours. The combined Department Head/Lieutenants' meeting usually, but not always, was followed by a closed, Lieutenants' meeting, and the duration of the meetings varied. Def. App. 312, 331-50 (Lopresti). Defendant also incorporates its response to Plaintiff's Proposed Finding No. 33.

36. By November 2000, the department head portions of the meetings generally began at 1 p.m. and lasted until 2:30 p.m., with a Lieutenant's meeting immediately following the combined meeting. App. 31-33, 120-21. See also App. 59.

DEFENDANT'S RESPONSE: Admits that, by November 2000, the combined Department Head/Lieutenants meeting generally began at 1:00 p.m. Def. App. 332. Indeed, the August and September 2000 Department Head/Lieutenants' meetings began at 1:00 p.m. Def. App. 332. Warden Hasty's memorandum, dated August 17, 2000, stated that such meetings would be held

at 1:00 p.m. on the last pay week Tuesday of the month. Def. App. 143. Denies that the combined Department Head/Lieutenants' meeting generally lasted from 1:00 p.m. until 2:30 p.m. or 90 minutes, with a Lieutenants' meeting immediately following the combined meeting. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33. The combined Department Head/Lieutenants' meeting usually was followed by a closed, Lieutenants' meeting. Def. App. 312 (Lopresti).

37. Since June 18, 2000, while plaintiff has worked the morning watch (midnight-8 a.m.), he has had to stay overtime at the MDC for the lieutenants' meetings. App. 5. Plaintiff had to wait at the institution after his shift ended at 8 a.m. If the commencement of a meeting was delayed until 8:30, plaintiff had to wait.

DEFENDANT'S RESPONSE: Denies. Denies that Lt. Bledsoe was required to stay overtime at MDC Brooklyn for the combined Department Head/Lieutenants' meetinga or subsequent, closed Lieutenants' meetings. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder). Denies that Lt. Bledsoe was required to stay after his morning watch shift ended for the Lieutenants' meetings. Id. Denies that Lt. Bledsoe had to wait at the institution after his shift ended at 8:00 a.m. Id. Denies that meetings were delayed until 8:30 a.m. Def. App. 329-31. The minutes indicate that these meetings were not delayed until 8:30 a.m. Id. Also denies that Lt. Bledsoe had to wait after his shift ended for the meeting. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder).

According to the meeting minutes and Daily Rosters, during the period May 2000 to February 2005, Lt. Bledsoe did not attend the following MDC Brooklyn Department

Head/Lieutenants' meetings:

(1) December 26, 2000 (day off);
(2) January 23, 2001;
(3) February 20, 2001 (day off);
(4) October 29, 2001 (off shift);
(5) November 27, 2001 (on duty);
(6) February 19, 2002 (training);
(7) March 19, 2002 (day off);
(8) August 22, 2002;
(9) October 28, 2002 (day off);
(10) January 21, 2003 (day off);
(11) February 25, 2003 (day off);
(12) March 18, 2003 (day off);
(13) April 29, 2003 (day off);
(14) May 27, 2003 (training);
(15) August 19, 2003 (day off);
(16) September 30, 2003 (off shift);
(17) October 28, 2003 (off shift);
(18) November 25, 2003 (off shift);
(19) December 23, 2003 (off shift);
(20) January 20, 2004 (off shift);
(21) February 17, 2004 (off shift);
(22) April 17, 2004 (S/L);
(23) August 31, 2004 (training);
(24) September 28, 2004 (A/L);
(25) December 21, 2004 (off shift); and
(26) February 15, 2005 (off shift).

Def. App. 320-21.

According to the meeting minutes and Daily Rosters, during the period March 2005 to December 2006, Lt. Bledsoe did not attend the following MDC Brooklyn Department Head/Lieutenants' meetings:

(1) March 29, 2005 (off shift);
(2) April 26, 2005 (off shift);
(3) May 10, 2005 (A/L);
(4) June 21, 2005 (S/L);
(5) July 5, 2005 (A/L);
(6) November 22, 2005 (off shift);
(7) December 6, 2005 (off shift);
(8) January 18, 2006 (day off);

(9) March 7, 2006 (off shift);
(10) June 13, 2006 (off shift);
(11) September 12, 2006 (A/L); and
(12) November 7, 2006 (off shift).

Def. App. 1342-43.

38. At a Department Head/Lieutenants' Meeting on April 18, 2000, Warden Holder stated:

- This is a called a Department Heads/Lieutenants meeting, but we don't seem to have many Lieutenants present. All Lieutenants should be present. These meetings are critical. The information gathered during these meetings need to be trickled down to all staff.

- Information that isn't shared among staff are [sic] useless information. App. 110--11.

DEFENDANT'S RESPONSE: Admits that Warden Holder essentially said what is stated in the meeting minutes. As Warden Holder stated:

> According to the minutes, I stated all Lieutenants "should be present," not that all Lieutenants must be present. My statement was not an order or instruction requiring Lieutenants who were not on their scheduled shift at the time of the meeting to attend the meeting. According to the minutes, only five Lieutenants were present at the April 18, 2000 meeting. Our complement at that time was approximately 14 Lieutenants. Exhibit D. My statement was made to encourage Lieutenants to attend these meetings. My statement was not an order directing Lieutenants who were not on duty to work overtime, and it did not direct or approve any overtime work.

Def. App. 60. Lt. Bledsoe was not at the April 2000 meeting. Def. App. 67. He was transferred to MDC Brooklyn effective May 21, 2000. Def. App. 42.

39. On October 25, 2000, MDC Brooklyn Lt. Vincent Wash sent an e-mail to the MDC Brooklyn lieutenants, in which he stated, in part:

> This is just to inform you that there is a scheduled Department Head/Lieutenant's meeting on 31 October 2000, at 1:00 p.m. Deputy Captain Betler has requested that you notify him of your intended agenda item prior to the start of the meeting. Also, the annual leave roster will be completed for the Lieutenants. Therefore, it will be necessary to have your

leave request completed prior to the meeting. App. 142.

DEFENDANT'S RESPONSE: Admits. The October 25, 2000 e-mail of Lt. Wash did not direct Lieutenants to attend the Department Head/Lieutenants' meeting scheduled on October 31, 2000, at 1:00 p.m. Pl. App. 142. The following Lieutenants did not attend the Department Head/Lieutenants' meeting on October 31, 2000: (1) D. Tessel (day off); (2) T. Ventiere (day off); (3) R. Gorbea (day off); (4) S. Barrere (S/L); and (5) L. Hernandez (on duty). Def. App. 332 (Lopresti). There were no consequences for Lieutenants who did not attend the meeting. Def. App. 313 (Lopresti).

40. Attendance at lieutenants meeting is "mandatory." App. 40. Warden Zenk has admitted, "Department heads are expected [to attend department head meetings] if they are on duty." App. 59.

DEFENDANT'S RESPONSE: Denies that attendance at MDC Brooklyn combined Department Head/Lieutenants' meetings or subsequent, closed Lieutenants' meetings was or is mandatory. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 321-22 (Lopresti); Def. App. 1340 (Schoenfelder). Lieutenants were not required to attend the meetings at times when they were not on their scheduled shift, e.g., when on leave, on day off, or on their shift-off. Id. Defendant also incorporates its response to Plaintiff's Proposed Finding No. 37.

Admits Warden Zenk stated that "Department heads are expected [to attend department head meetings] if they are on duty." Def. App. 117 (Dep. 42). Warden Zenk further explained that, if a Department Head was not on duty, an Acting Department Head would be designated and that person would attend the meeting. Id. He also stated that Lieutenants were not required to attend the Department Head/Lieutenants' meetings or subsequent, closed Lieutenants'

meetings. Def. App. 116-17 (Dep. 41-42).

41. However, if employees were on annual leave and in the vicinity of MDC Brooklyn, they still had to show up at the meetings. App. 39.

DEFENDANT'S RESPONSE: We assume "employees" refers to Lieutenants and deny the proposed finding. Defendant incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40.

42. Several times Capt. Salvatore LoPresti told the lieutenants to be at the lieutenants' meetings. App. 2, 5, 54. MDC Brooklyn AW James Sherman "basically said [to] attend them all." App. 34. Plaintiff Bledsoe explained, "[I]f you don't show up for [a meeting,] they want to know why." App. 40.

DEFENDANT'S RESPONSE: Denies. Capt. Lopresti told the Lieutenants that they were not required to attend the Lieutenants' meetings when they were not on duty, e.g., when they were on leave, on their day off, or not on their scheduled shift. Def. App. 312-13, 314, 321-22 (Lopresti). Denies that MDC Brooklyn AW James Sherman said to attend them all. Def. App. 126-28 (Sherman). Denies that Capt. Lopresti wanted to know why, if a Lieutenant did not show up for a meeting. Def. App. 312-13, 314, 321-22 (Lopresti). Denies that AW Sherrman wanted to know why, if a Lieutenant did not show up for a meeting, but admits that, after May 30, 2001, AW Sherman wanted to why a Lieutenant was not attending the meeting. Def. App. 126-28 (Sherman). Defendant also incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40.

43. AW Sherman, Capt. LoPresti, and Capt. James Betler ordered Plaintiff Bledsoe, Plaintiff Lt. Willie Moran, and Lt. Percy Johnson to attend the meetings. App. 37-38, 5, 143.

DEFENDANT'S RESPONSE: Denies. Defendant incorporates its responses to Plaintiff's

Proposed Findings Nos. 37, 40 and 42.

44. While he does not know of any lieutenants who were disciplined for not attending a lieutenants' meeting, "a couple of lieutenants faced some discipline action [for not submitting an agenda] for a lieutenants' meeting." App. 40-41.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe did not know of any Lieutenants who were disciplined for not attending a Lieutenants' meeting. Denies that Lieutenants faced some discipline action for not submitting an agenda for a Lieutenants' meeting. Def. App. 313, 322 (Lopresti).

45. On October 30, 2000, Acting Warden Linda Thomas reminded staff at a Department Head meeting, which Plaintiff Bledsoe attended, "to be cognizant of their meeting times." App. 117.

DEFENDANT'S RESPONSE: Admits.

46. On April 12, 2001, Capt. Betler sent an e-mail to the lieutenants at MDC Brooklyn to advise them to attend the monthly Department Head/Lieutenants' meeting scheduled for 2 p.m. on April 16, 2001. App. 144. He sent copies to all lieutenants, including Plaintiffs Anthony Kimbrough and William Moran, as well as Plaintiff Bledsoe. Id. Among other things, the e-mail ordered the recipients to turn in agenda items by the preceding Friday, April 13, 2001, and bemoaned the fact that "several ... stated that [they] had nothing to discuss at the last meeting." The e-mail went on to say that "the [Regional Correctional Services Administrator] sent out a message a couple months ago. . . [requiring] that all lieutenants be in attendance and have a topic to discuss." Id.

DEFENDANT'S RESPONSE: Denies that James Betler was Captain; he was a Deputy Captain. Def. App. 12 (Bledsoe Dep. 42). Admits that James Betler sent the April 12, 2001 e-mail to

MDC Brooklyn Lieutenants, including Lt. Moran and Lt. Bledsoe. Pl. App. 144. Denies that Anthony Kimbrough was a Lieutenant; he was an Emergency Preparedness Officer ("EPO"), not a Lieutenant. Def. App. 353, 355. Admits that the April 12, 2001 e-mail stated that Lieutenants should ensure that they had turned in their agenda items by the preceding Friday, April 13, 2001. Pl. App. 144. Denies that the e-mail "bemoaned" anything. Id. Admits the April 12, 2001 e-mail stated what is quoted in the final sentence of plaintiff's proposed finding, but denies that there was such a message from the Regional Correctional Services Administrator requiring that all Lieutenants, including those who were not on duty, be in attendance and have a topic to discuss. Attendance at MDC Brooklyn combined Department Head/Lieutenants' meetings or subsequent, closed Lieutenants' meetings was not mandatory for all Lieutenants. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 321-22 (Lopresti); Def. App. 1340 (Schoenfelder). Lieutenants were not required to attend the meetings at times when they were not on their scheduled shift, e.g., when on leave, on day off, or on their shift-off. Id. Defendant also incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40.

47. On May 30, 2001, AW Sherman sent an e-mail to Plaintiff Bledsoe, as well as Plaintiffs Joseph Cuciti, William Moran, Stuart Pray, David Tessel, and others at MDC - Brooklyn, which stated, *inter alia,* "As per the Correctional Services Manual, Lieutenant's [sic] are required to attend these meetings." App. 143, 34-35. Capt. Sherman's e-mail complained about a "major drop in the attendance of the Mandatory Lieutenant's Meetings." App. 143. In addition, the e-mail declared: "Due to your lack of interest, all Lieutenant's [sic] are now required to request approval through me prior to you not attending these meetings." AW Sherman said the only exceptions would be if the lieutenant was "on annual leave and out of the area, [on]

emergency leave, or sick leave," but he **"will still need to be notified in advance of [their] planned absence."** Id. [emphasis in original]. See also App. 34, 38-39.

DEFENDANT'S RESPONSE: Admits, except denies that Mr. Sherman's e-mail "complained" as asserted by plaintiff. Def. App. 127-29 (Sherman); Def. App. 312-13, 314, 321-22 (Lopresti). Further, Joseph Cuciti and William Moran are no longer plaintiffs.

48. Previously, Mr. Sherman "ma[d]e verbal warnings [to the lieutenants--] you have to be there." App. 37. He said, "You need to be there [at lieutenants' meetings]." Id.

DEFENDANT'S RESPONSE: Denies. Def. App. 127-29 (Sherman). There were never any adverse consequences for Lieutenants who did not attend Lieutenants' meetings. Id.; Def. App. 312-13, 314, 321-22 (Lopresti).

49. Plaintiff Bledsoe received another e-mail on June 1, 2005, requiring attendance of all lieutenants at a "mandatory" meeting on June 7, 2005, thus demonstrating this constant requirement. See App. 145.

DEFENDANT'S RESPONSE: Admits that the June 1, 2005 e-mail was sent by Captain Schoenfelder but denies that it concerned a Department Head/Lieutenants' meeting or subsequent, closed Lieutenants' meeting, and also denies that there was any constant requirement for Lieutenants' attendance at Department Head/Lieutenants' meetings or subsequent, closed Lieutenants' meeting. Def. App. 1343-44.

Captain Schoenfelder sent the e-mail dated June 1, 2005, with regard to a special meeting for Lieutenants on June 7, 2005 at 1:00 p.m. Def. App. 1343-44. He wanted Lieutenants to attend that particular meeting. Id. If Lieutenants attending this meeting were not on their scheduled shift, they would have been compensated by submitting an Overtime Authorization Form certifying their overtime. Id. This was not the combined Department Head/Lieutenants'

meeting; that meeting was held on June 21, 2005. Id.; Def. App. 1511-13 (meeting minutes).

50. From 8 a.m. to 9:25 a.m. on June 27, 2000, Plaintiff Bledsoe attended a combined department head/lieutenants' meeting outside his scheduled duty hours. App. 112-13. The department head portion ended at 9:25 a.m.; after that, the lieutenants met for another 1.5 hours. App. 33.

DEFENDANT'S RESPONSE: Admits that, on June 27, 2000, Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting, and that the combined portion ended at 9:25 p.m. Def. App. 331 (Lopresti). A Daily Roster for June 27, 2000 is not available, and it is impossible to determine what Lt. Bledsoe's assigned shift was for that day. Id.

51. According to the quarterly roster for June 18 through September 16, 2000, his shift then began at midnight and ended at 8 a.m. App. 97. He received neither overtime compensation nor compensatory time for attending this meeting.

DEFENDANT'S RESPONSE: Denies. According to the Quarterly Roster for June 18 through September 16, 2000 and Lt. Bledsoe's assignment card, he was assigned to SR-1, with variable shifts. Def. App. 904-05. On the roster, a "zero" stands for "various shifts." Id. The Quarterly Roster does not determine a Lieutenant's shift on a daily basis. Lieutenants' daily shifts are determined by the Daily Roster. Def. App. 308, 331 (Lopresti). There is no Daily Roster available for June 27, 2000, and it is not possible to determine what Lt. Bledsoe's scheduled shift was on June 27, 2000. Id.

52. Plaintiff Bledsoe also attended a combined department head/lieutenants' meeting on August 14, 2000, at times outside his normal tour of duty. See App. 114. The department head portion of the meeting began at 3:05 p.m. and adjourned at 4:10 p.m. App. 114-15. The lieutenants' meeting lasted another 1.5 hours. App. 33. The BOP scheduled Plaintiff Bledsoe to

work from 12 midnight to 8 a.m. during this time period. App. 4, 97. Therefore, Plaintiff Bledsoe was not on his scheduled shift when he attended this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on August 14, 2000, but denies that he was not on duty during the meeting. According to the Daily Roster, on August 14, 2000, Lt. Bledsoe was Morning Watch Operations Lieutenant, midnight to 8:00 a.m. Def. App. 315, 332, 384 (Lopresti). According to his time and attendance records and an Overtime Authorization Form, Lt. Bledsoe also received overtime pay for working from 8:00 a.m.-4:00 p.m. on August 14, 2000. Def. App. 315, 390, 871-72 (Lopresti). Lt. Bledsoe was compensated with overtime pay for attending the Department Head/Lieutenants' meeting on August 14, 2000, until 4:00 p.m. Id.

Admits that the combined Department Head/Lieutenants' portion of the August 14, 2000 meeting began at 3:05 p.m. and adjourned at 4:10 p.m. Def. App. 332. Denies that the subsequent, closed Lieutenants' meeting took another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 37.

53. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on September 19, 2000, at times outside his normal tour of duty. See App. 116. The department head portion of the September 19, 2000, meeting started at 1:00 p.m. and adjourned at 2:30 p.m. App. 116-17. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for September 17 through December 16, 2000, the BOP scheduled Plaintiff Bledsoe to work from midnight to 8 a.m. on September 19, 2000. See App. 99. Therefore, Plaintiff Bledsoe was not on his regular shift during this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on September 19, 2000, at times outside of his scheduled shift for

that day. Def. App. 316 (Lopresti). According to the Daily Roster, on September 19, 2000, Lt. Bledsoe was assigned to Morning Watch SEC Lieutenant, midnight to 8:00 a.m., and was not on his scheduled shift during the meeting. Def. App. 316 (Lopresti). Denies that the Quarterly Roster determines a Lieutenant's daily shift. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the September 19, 2000 meeting started at 1:00 p.m. and ended at 2:30 p.m. Def. App. 316 (Lopresti). Denies that a subsequent, Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

54. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on October 31, 2000, at times outside his normal tour of duty. App. 118. The department head portion of the October 31, 2000, meeting commenced at 1:00 p.m. and adjourned at 2:15 p.m. App. 118-19. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for September 17 through December 16, 2000, App. 99, the BOP scheduled Plaintiff Bledsoe to work from midnight to 8 a.m. on October 31, 2000. Therefore, Plaintiff Bledsoe was not on his regular shift during this meeting.

<u>DEFENDANT'S RESPONSE</u>: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on October 31, 2000, at times outside of his scheduled shift for that day. Def. App. 316 (Lopresti). According to the Daily Roster, on October 31, 2000, Lt. Bledsoe was Morning Watch SEC Lieutenant, midnight to 8:00 a.m. Def. App. 316 (Lopresti). Denies that, according to the Quarterly Roster for September 17 through December 16, 2000, Lt. Bledsoe was scheduled to work from midnight to 8:00 a.m. on October 31, 2000. The Quarterly Roster for September 17 through December 16, 2000 states that Lt. Bledsoe was assigned to "SR-1," with "various shifts;" on the roster, "zero" stands for "various shifts." Pl. App. 99; Def.

App. 908-09. The Quarterly Roster also did not determine his daily assignments. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the October 31, 2000 meeting began at 1:00 p.m. and ended at 2:15 p.m. Def. App. 316. Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

55. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on June 27, 2001, at times outside his normal tour of duty. App. 123. The department head portion of the meeting lasted from 1:25 to 3:05 p.m. App. 122, 124. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for June 17 through September 15, 2001, Plaintiff Bledsoe had Wednesdays off. App. 101. Therefore, Plaintiff Bledsoe was not on his regular shift during this meeting.

<u>DEFENDANT'S RESPONSE</u>: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on June 27, 2001. Def. App. 317 (Lopresti). The Daily Roster determined Lt. Bledsoe's assignment on June 27, 2001. Def. App. 308 (Lopresti). However, no Daily Roster is available for June 27, 2001, and thus, it is not possible to determine his assignment or whether he was off on June 27, 2001. Def. App. 317 (Lopresti). Admits that, according to the Quarterly Roster for June 17 through September 15, 2001, Lt. Bledsoe had Wednesdays off, but denies that the Quarterly Roster determined his daily assignment. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the June 27, 2001 meeting lasted from 1:25 to 3:05 p.m. Def. App. 335, 451-53 (Lopresti). Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. According to the Overtime

Authorization Forms completed for other Lieutenants, the June 27, 2001 meetings ended by 4:00 p.m. Def. App. 335, 454-55. Defendant also incorporates its response to Plaintiff's Proposed Finding No. 33.

56. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on July 24, 2001, at times outside his normal tour of duty. App. 125. The department head portion of the meeting lasted from 1 to 2:20 p.m. App. 125-26. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for June 17 through September 15, 2001, Plaintiff Bledsoe had Tuesdays off then. See App. 97. Therefore, Plaintiff Bledsoe was not on his regular shift during this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on July 24, 2001. Admits that, according to the Quarterly Roster for June 17 through September 15, 2001, Lt. Bledsoe had Tuesdays off, but denies that the Quarterly Roster determined his daily assignment. Def. App. 317-18, 335 (Lopresti). The Daily Roster determined Lt. Bledsoe's assignment on July 24, 2001. Id. However, no Daily Roster is available for July 24, 2001, and thus, it is not possible to determine his assignment or whether he was on day off on July 24, 2001. Id.

Admits that the combined Department Head/Lieutenants' portion of the July 24, 2001 meeting lasted from 1:00 to 2:20 p.m. Def. App. 335 (Lopresti). Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

57. Plaintiff Bledsoe attended a combined department head/lieutenant's meeting on August 23, 2001, at times outside his normal tour of duty. See App. 128. The department head portion of the meeting lasted from 1:25 to 3:00 p.m. App. 127, 129. The lieutenants' meeting

lasted another 1.5 hours. App. 33. According to the quarterly roster for June 17 through September 15, 2001, the BOP assigned Plaintiff Bledsoe to work from midnight to 8 a.m. See App. 97. Therefore, Plaintiff Bledsoe was not on his regular shift during this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on August 23, 2001, at times outside of his scheduled shift for that day. Def. App. 318 (Lopresti). According to the Daily Roster, on August 23, 2001, Lt. Bledsoe was Operations Lieutenant, Morning Watch, midnight-8:00 a.m. Id. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he attended the August 23, 2001 meeting on overtime. Id. Denies that the Quarterly Roster determined Lt. Bledsoe's shift on August 23, 2001. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the August 23, 2001 meeting lasted from 1:25 to 3:00 p.m. Def. App. 318. Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

58. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on January 22, 2002, at times outside his normal tour of duty. See App. 131. The department head portion of the meeting lasted from 1:10 to 2:10 p.m. App. 130, 132. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for December 16, 2001 through March 16, 2002, Plaintiff Bledsoe had Tuesdays off. App. 103. Therefore, Plaintiff Bledsoe was not on his regular shift during the time of this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on January 22, 2002, at times outside of his scheduled tour of duty for that day. Def. App. 318-19 (Lopresti). According to the Daily Roster, on January 22, 2002,

Lt. Bledsoe was on his day off, and was not on his scheduled shift during the meeting. Def. App. 318-19. Denies that the Quarterly Roster determined his shift or whether he was on his day off on January 22, 2002. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the January 22, 2002 meeting lasted from 1:10 to 2:10 p.m. Def. App. 318. Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

59. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on September 17, 2002, at times outside his normal tour of duty. See App. 134. The department head portion of the meeting lasted from 1:20 to 2:35 p.m. App. 133, 135. The Lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for June 30 through September 28, 2002, Plaintiff Bledsoe then was serving as Special Investigative Supervisor (SIS) on an evening shift (14:30-22:30) and had Mondays and Tuesdays off. See App. 105. Therefore, Plaintiff Bledsoe was not on his regular shift during the time of this meeting.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on September 17, 2002, at times outside of his scheduled tour of duty for that day. Def. App. 319 (Lopresti). According to the Daily Roster, on September 17, 2002, Lt. Bledsoe was on his day off, and he was not on his scheduled shift during the meeting. Def. App. 319. Denies that the Quarterly Roster determined Lt. Bledsoe's shift on September 17, 2002. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the September 17, 2002 meeting lasted from 1:20 to 2:35 p.m. Def. App. 319 (Lopresti). Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to

Plaintiff's Proposed Finding No. 33.

60. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on June 24, 2003, at times outside his normal tour of duty. See App. 137. The department head portion of the meeting commenced at 1:10 p.m. and ended at 2:15 p.m. App. 136, 138. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for March 30 through June 28, 2003, Plaintiff Bledsoe then was serving as SIS lieutenant on an evening shift (14:30-22:30) and had Mondays and Tuesdays off. See App. 107. Therefore, Plaintiff Bledsoe attended this meeting for one hour and 20 minutes before his regular shift began.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting on June 24, 2003, but denies that he attended it at times outside of his scheduled shift for that day. Def. App. 319-20, 341 (Lopresti). According to the Daily Roster, on June 24, 2003, Lt. Bledsoe was SIS Lieutenant, shift 5, 7:45 a.m. to 4:15 p.m. Id. He was on his scheduled shift during the meeting and was compensated through his regular pay. Id. Denies also that the Quarterly Roster determined his shift on June 24, 2003. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the meeting began at 1:10 p.m. and ended at 2:15 p.m. Def. App. 319-20, 341. Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

61. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on July 22, 2003, at times outside his normal tour of duty. See App. 140. The department head portion of the meeting lasted from 1 to 1:40 p.m. App. 139, 141. The lieutenants' meeting lasted another 1.5 hours. App. 33. According to the quarterly roster for June 29 through September 27, 2003, Plaintiff Bledsoe then was serving as SIS Lieutenant on an evening shift (14:30-22:30) and had

Mondays and Tuesdays off. See App. 109. Therefore, Plaintiff Bledsoe attended this meeting for two hours and 45 minutes on his day off.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting from 1:00 to 1:40 p.m. on July 22, 2003, which time was outside of his scheduled shift for that day. Def. App. 320 (Lopresti). Denies that Lt. Bledsoe attended the July 22, 2003 meeting on his day off. Id. According to the Daily Roster, on July 22, 2003, Lt. Bledsoe was SIS Lieutenant, shift 7, 2:30 p.m. to 10:30 p.m. Id. On July 22, 2003, he was on his scheduled shift beginning at 2:30 p.m. Id. Denies that the Quarterly Roster determined Lt. Bledsoe's shift on July 22, 2003. Def. App. 308 (Lopresti).

Admits that the combined Department Head/Lieutenants' portion of the July 22, 2003 meeting lasted from 1:00 p.m. to 1:40 p.m. Def. App. 320. Denies that a subsequent, closed Lieutenants' meeting lasted another 1.5 hours. Defendant incorporates its response to Plaintiff's Proposed Finding No. 33.

Denies that Lt. Bledsoe worked two hours and 45 minutes of overtime on his day off; July 22, 2003 was not his day off, and his scheduled shift that day began at 2:30 p.m. Def. App. 320 (Lopresti).

62. Lieutenants' meetings are still being held at MDC Brooklyn. As the institution is preparing for a program review, management will make it clear that attendance at such meetings is "mandatory." App. 36. Plaintiff Bledsoe explained: "[A]s time get[s] closer to the program review paperwork and they want lieutenants to be there and they won't take exceptions .... No excuses [-] just show up." Id.

DEFENDANT'S RESPONSE: Admits that combined Department Head/Lieutenants' meetings and closed Lieutenants' meetings are still being held at MDC Brooklyn. Denies the second and

third sentences. Defendant incorporates its responses to Plaintiff's Proposed Findings Nos. 33.

63. Sometimes the BOP ordered Plaintiff Bledsoe to attend meetings outside his regular tour of duty, but authorized only compensatory time (not overtime pay) for his overtime work in attending such meeting.

DEFENDANT'S RESPONSE: Denies that BOP ordered Lt. Bledsoe to attend meetings outside of his scheduled or regular tour of duty, but authorized only compensatory time (not overtime pay) for his overtime work in attending such meeting. Denies that there was such an oral or written order. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder). Defendant also incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40.

Lt. Bledsoe has received either compensatory time or overtime pay for his attendance at Lieutenants' meetings at times when he was not scheduled to work. Def. App. 380-81, 390, 416-17, 447-48, 1718-25.

64. For example, from 7:30 a.m. to 12 p.m. on July 31, 2000, when his shift was midnight to 8 a.m., Plaintiff Bledsoe attended a "mandatory lieutenant's meeting." App. 147-48. (Others at that meeting included Plaintiffs David Tessel, Moran, and Cuciti.)

DEFENDANT'S RESPONSE: Admits that, on July 31, 2000, Lt. Bledsoe attended a Lieutenants' meeting, but denies that it started at 7:30 a.m. and denies that the meeting was mandatory for all Lieutenants and that Lt. Bledsoe was ordered to attend such a meeting prior to actually attending the meeting. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder). Defendant also incorporates its responses to Plaintiff's Proposed

Findings Nos. 37 and 40. There are no minutes for a Lieutenants' meeting on July 31, 2000, and, at that time, the meetings usually started at 8:00 a.m. Def. App. 329-31. Denies that Lt. Bledsoe's shift on July 31, 2000 was midnight to 8:00 a.m. Plaintiff relies upon the Quarterly Roster. According to the Quarterly Roster for the period June 18, 2000 to September 16, 2000 (Def. App. 902-05), Lt. Bledsoe was assigned to SR-1, "various shifts;" on the roster, "zero" refers to "various shifts" Def. App. 904-05. In any event, the Quarterly Roster did not determine his daily assignment. Def. App. 308. Admits David Tessel, William Moran, and Joseph Cuciti attended the meeting. Mr. Moran and Mr. Cuciti are no longer plaintiffs.

65. The BOP provided compensatory time (not overtime pay) for the 4.5 hours plaintiff spent at the mandatory lieutenants' meeting on July 31, 2000. App. 43, 147-48. This compensation was approved by Deputy Capt. Betler, AW Sherman, and Warden Holder (by Mr. Wunderle). App. 44.

DEFENDANT'S RESPONSE: Admits BOP provided Lt. Bledsoe compensatory time for 7:30 a.m.-noon on July 31, 2000, but denies that all of that time was spent at a Lieutenants' meeting and that all Lieutenants' attendance at the meeting was mandatory or required. Pl. App. 148. Defendant incorporates its responses to Plaintiff's Proposed Finding Nos. 37, 40, and 64.

Admits that Deputy Capt. Betler and AW Sherman both signed off on the Overtime Authorization Form, but denies that they approved it; the approving official on the form was Associate Warden ("AW") B. Wunderle for Warden Holder. Pl. App. 147.

66. From 1 p.m. to almost 3 p.m. on November 28, 2000, Plaintiff Bledsoe attended "the monthly scheduled lieutenants meeting." (Plaintiff Lt. Moran also attended that meeting.) See App. 120, 149-50, 45. The BOP provided three hours of compensatory time (not overtime pay) for the time Plaintiff Bledsoe spent at the mandatory lieutenants' meeting on November 28, 2000.

This compensatory time was approved by Capt. LoPresti, AW Sherman, and Warden Hasty. App. 149-50, 50.

DEFENDANT'S RESPONSE: Admits that Lt. Bledsoe attended a Lieutenants' meeting on November 28, 2000, but denies that this meeting lasted to almost 3:00 p.m. According to the Overtime Authorization Form, Lt. Bledsoe received three hours of compensatory time, and the November 28, 2000 meeting was over by 4:00 p.m. Pl. App. 150. Admits that former Lt. Moran also attended the meeting, but he no longer is a plaintiff. Denies that all Lieutenants' attendance at the November 28, 2000 meeting was mandatory or required. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder). Defendant also incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40.

Admits that Capt. Lopresti and AW Sherman both signed off on the Overtime Authorization Form, but denies that they approved it. Pl. App. 149. The approving official was Warden Hasty. Id.

67. Plaintiff Bledsoe attended a combined department head/lieutenants' meeting on November 28, 2000, at times outside his normal tour of duty. App. 149-50. The department head portion of the November 28, 2000 meeting commenced at 1:00 p.m. and ended at 2:48 p.m. App. 120-21. The Lieutenants' meeting lasted another 1.5 hours. According to the quarterly roster for September 17, 2000, through December 16, 2000, App. 99, the BOP scheduled Plaintiff Bledsoe to work from midnight to 8 a.m. on this day. Therefore, Plaintiff Bledsoe was not on his regular shift during the time of this meeting.

DEFENDANT'S RESPONSE: Admits that on November 28, 2000, Lt. Bledsoe attended a combined Department Head/Lieutenants' meeting at times outside of his scheduled tour of duty

for that day. Pl. App. 149-50. Admits that the combined Department Head/Lieutenants' portion of the meeting began at 1:00 p.m. and ended at 2:48 p.m. Pl. App. 120-21. Denies that the Lieutenants' meeting lasted another 1.5 hours. According to the Overtime Authorization Form, the Lieutenants' meeting was over by 4:00 p.m. and thus, the closed Lieutenants' meeting lasted no longer than one hour and 12 minutes. Pl. App. 149-50. Denies that, according to the Quarterly Roster for September 17, 2000 through December 16, 2000, Lt. Bledsoe was assigned to morning watch on November 28, 2000. The Quarterly Roster did not determine his daily assignment; his daily assignment was determined by the Daily Roster. Def. App. 308 (Lopresti). In addition, according to the Quarterly Roster for the period September 17, 2000 through December 16, 2000 (Def. App. 906-10), Lt. Bledsoe was assigned to "SR-1," "various shifts;" on the roster, "zero" refers to "various shifts." Def. App. 908-09.

68. Between 1 p.m. and 4 p.m. on Tuesday, March 20, 2001, Plaintiff Bledsoe attended "a mandatory [lieutenants] and department head meeting." App. 151-52, 51. (Others at that meeting were Plaintiffs Moran and Tessel.) The BOP provided compensatory time (not overtime pay) for the three hours which Plaintiff Bledsoe spent between 1 p.m. and 4 p.m. on March 20, 2001, at a mandatory lieutenants/department head meeting. Capt. LoPresti and Warden Hasty approved this compensatory time. App. 151-52, 52.

DEFENDANT'S RESPONSE: Admits that on March 20, 2001, Lt. Bledsoe attended a Department Head/Lieutenants meeting and subsequent Lieutenants' meeting. Pl. App. 151-52. Denies that Lieutenants' attendance at the meetings was mandatory. Def. App. 58-60 (Warden Holder); Def. App. 84-87 (Warden Zenk); Def. App. 116-17 (Zenk Dep. 41-42); Def. App. 312-13, 314, 320-22 (Lopresti); Def. App. 1340 (Schoenfelder). Defendant incorporates its responses to Plaintiff's Proposed Findings Nos. 37 and 40. Admits that former Lt. Moran and Lt. Tessel

also attended the meeting, but Mr. Moran no longer is a plaintiff. Admits that BOP provided compensatory time for three hours that Lt. Bledsoe spent between 1:00 p.m.-4:00 p.m. at the Department Head/Lieutenants' meeting and subsequent, Lieutenants' meeting, but denies that Lieutenants' attendance was mandatory. Pl. App. 151-52. Admits that Capt. Lopresti signed off on the Overtime Authorization Form, but denies that he approved it; the approving official was Warden Hasty. Pl. App. 151-52.

69. Plaintiff Bledsoe's time and attendance sheets indicate the extent to which he earned comp. time at these meetings. See e.g., App. 146.

DEFENDANT'S RESPONSE: Admits with the clarification that Lt. Bledsoe's time and attendance records at MDC Brooklyn indicate the extent to which he received compensatory time and also overtime pay for his attendance at the Department Head/Lieutenants' and subsequent, closed Lieutenants' meetings. Def. App. 380-81, 390, 416-17, 447-48, 1718-25.

70. Plaintiff Bledsoe and others (Lt. Lane and Lt. Johnson) requested overtime pay for attending the above-described meetings, but management just laughed at them. App. 5.

DEFENDANT'S RESPONSE: Denies. Lieutenants did not request overtime pay, as opposed to compensatory time, for attending these meetings, and management did not laugh at them. Def. App. 312-13, 322 (Lopresti).

71. Sometimes management circulated these compensatory time request sheets, and Plaintiff Bledsoe requested compensatory time for attending some lieutenants/department head meetings during non-duty hours. App. 45-48. However, the BOP did not offer him overtime pay on those occasions. App. 45-48, 53.

DEFENDANT'S RESPONSE: We assume that "management" includes Lieutenants. Admits that sometimes Lieutenants circulated the Overtime Authorization Forms, but denied that the forms

are "compensatory time request sheets." Def. App. 380-81, 390, 416-17, 447-48, 1718-25. Admits that sometimes Lt. Bledsoe has requested compensatory time for attending Department Head/Lieutenants' meetings and subsequent Lieutenants' meetings at times when he was not scheduled to work. Def. App. 380-81, 390, 416-17, 447-48, 1718-25. Lt. Bledsoe has received either compensatory time or overtime pay for attendance at these meetings when he was not scheduled to work. Id. However, sometimes, Lt. Bledsoe has failed to submit an Overtime Authorization Form for attending these meetings at times when he was not scheduled to work. Def. App. 314-20 (Lopresti).

72. The BOP generally did not pay Plaintiff Bledsoe overtime pay for the time he spent off-the-clock at the above-described meetings. App. 2-3, 5, 22, 42.

DEFENDANT'S RESPONSE: Lt. Bledsoe has received either compensatory time or overtime pay for attendance at Lieutenants' meetings at times when he was not scheduled to work. Def. App. 380-81, 390, 416-17, 447-48, 1718-25. The procedure for obtaining compensation was that Overtime Authorization Forms were completed and submitted by Lieutenants. Def. App. 313-14, 380-81, 416-17, 447-48. The Captain or Deputy Captain signed off on such forms and they were submitted to the Associate Warden and Warden for approval. Id. Lt. Bledsoe did not submit such forms for some meetings and never brought to Captain Lopresti's attention his failure to be compensated for attending such meetings. Def. App. 314; Def. App. 17 (Bledsoe Dep. 65). Thus, no compensation was approved for his attendance at some meetings.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons
April 4, 2007