U.S. Department of Justice

Federal Bureau of Prisons

*Metropolitan Detention Center*

*Brooklyn, New York 11232*

June 24, 2003

MEMORANDUM TO MICHAEL A. ZENK, WARDEN /s/

FROM: Christine Rock, Captain's Secretary

SUBJECT Department Head/Lieutenant's Meeting Minutes

A Department Head/Lieutenant's Meeting was held on June 24, 2003, at 1:10 p.m. in the Warden's Conference Room. The following staff were present:

**Present:**
**Michael A. Zenk, Warden**
**William Ey, Associate Warden, Programs**
**Roland Booher, Associate Warden, Custody**
**Louis German, Associate Warden, Transportation**
**Linda Thomas, Associate Warden, Operations**
**Angel Motta, Acting Executive Assistant**
**Douglas White, Acting Captain**
Audrey Taylor, Acting Human Resource Manager
Jacqueline Felton, Acting Facilities Manager
Diana Guerrero, Chief Psychologist
Jacob Hoenig, Supervisory Chaplain
Carlos Duff, Unit Manager I
Stacey Leneck, Acting Unit Manager H
Yemisi Oladunmoye, Acting Trust Fund Supervisor
Raoul Watson, Computer Services Manager
Kim Easterling, Unit Manager B/C
David Williams, Unit Manager K
David Schiavone, Unit Manager D/E
Kevin Page, Unit Manager J
Benius Beard, Acting Unit Manager G



A 114a

GOVERNMENT EXHIBIT I
PENGAD-Bayonne, N. J.

Stephanie Middleton, Health Services Administrator
Andrew Butler, Safety Manager
Terry Gosnell, Inmate Systems Manager
Jeff Tacconni, Food Service Administrator
Todd Bailey, Staff Attorney
Danny Garcia, Volunteer Coordinator
Cynthia Godbold, CMC
Clemmie Cooper, DHO
William Pridgen, Union President
Thomas Cush, Lieutenant
Lyndsay Bledsoe, Lieutenant
Curtis Cole, Lieutenant
Jorge Maldonado, Lieutenant
William Beck, Lieutenant
Steven Barrere, Lieutenant
Frank Maldonado, Lieutenant
Vincent Alvarez, Lieutenant
Melvin Vaughn, SIA
Anthony Kimbrough, Emergency Preparedness Officer
Christine Rock, Captain's Secretary/Recorder

The following Lieutenants were unable to attend:

David Tessel, Lieutenant
Kelly Tassio, Lieutenant
Daniel Ortiz, Lieutenant
Jose Benitez, Lieutenant
Elizabeth Torres, Lieutenant
Marcial Mundo, Lieutenant
Muriel Wilkins, Lieutenant
Howard Gussak, Lieutenant
Joseph Eberhardt, Lieutenant
Christopher Parlo, Lieutenant
Ralph Gorbea, Lieutenant
Ronnie Rojas, Lieutenant
Lamine N'Diaye, SIA
Richard Desmond, Intelligence Operations Officer
Christopher Hurley, Security Officer

you in regards to property. Let Mr. Harris know if you will keep the property or discard it.

- Ms. Thomas informed Cost Center Managers that some departments have been reprogrammed monies. They are at the end of the third quarter and the money must be spent by Thursday afternoon.

**Warden Zenk:**

- Warden Zenk added that departments that are not able to spend monies allotted them, should inform their Associate Warden and the money will be given to departments in need.

**Roland Booher:**

- We need to tighten up on security issues and ensure our areas are up to speed.

- It takes time to take care of work requests given to the Computer Services and Facilities Departments. At the present time there is only one person in the Computer Services Department. We need to give them time to work on the problem before calling four or five times. Because of the constant interruptions, time is being taken away from productivity.

**William Ey:**

- The holdover Units K-82 and K-83 are functional. We began moving inmates on June 23, 2003. The numbers are up on inmate holdovers. We may have to place them elsewhere. Everyone's hard work with movement of these inmates is appreciated.

- Congratulations is due to Mr. Sommerville who received the permanent Counselor's position.

- A retreat for department heads is schedule for July 31 thru August, 1, 2003 at Ft. Hamilton. This would be a good opportunity to disseminate information.

- Please inform Unit Management when inmates are moved to and from their units.

**Warden Zenk:**

- [redacted]

[redacted]

♦ The [redacted] It is purely [redacted] staff who is [redacted]

♦ There [redacted] and the [redacted]. Staff must be careful not to put themselves in a position where they speak on behalf of the institution.

♦ A [redacted] We should not take anything on [redacted]

♦ Warden Zenk disseminated a memorandum concerning Portal-to-Portal Issues/Assigned Work Hours. Staff must be compensated for work performed outside of their scheduled hours of work. Staff must get approval in writing of all such time from their first line supervisor and appropriate associate warden, in advance of being worked. It is imperative that we follow the policy regarding portal-to-portal and the issues associated with staff being properly compensated for their work time. The memorandum is self explanatory.

♦ Warden Zenk attended a Warden's Conference less than two weeks ago. Director Lappin is a great person to oversee this organization. Mr. Lappin spoke of his expectations for the Bureau of Prisons. The following information was shared with the attending staff:

♦ Director Lappin spoke on tradition and believes in the Mission Statement. The Mission Statement will be sent to all department heads.

♦ We must continue with good stewardship. This includes management of money and property. If we can't use it, we should give it to someone who can.

♦ Director Lappin also believes in diverse well-trained

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

. . . . . . . . . . . . . . . . . . . . . . . . X

GARY L. AARON, et al., DARYL A. AABERG, et al., CHARLES CARLSEN, JR., et al., JOSE L. ACEBAL., et al., FRIEDA ADKINS, et al., BUDDY J. ADELSBERGER, et al., ANGIE CRUZ ALDRIDGE, et al., MICHAEL ATTY, et al., JANINE A. BANKS, et al., DENNIS AVRIPAS, et al.,

Plaintiffs,

Nos.
00-315C,
00-454C,
00-617C,
01-47C,
01-313C,
01-314C,
01-480C,
02-35C,
03-446C,
03-2363C

-against-

THE UNITED STATES,

Defendant.

. . . . . . . . . . . . . . . . . . . . . . X

80 29th Street
Brooklyn, New York

January 30th, 2004
3:54 p.m.

DEPOSITION of MICHAEL ANTHONY ZENK, the Non-Party witness, taken on behalf of the Plaintiffs, pursuant to Notice, held at the above-mentioned time and place, before Maria Cirillo, a Notary Public of the State of New York.

M. Zenk

214-95?

A Specific institutions?

Q Yes.

A Not specific institutions. Being at Devens in the capacity I was I didn't really have knowledge of specific institutions other than Devens. And I wasn't in a capacity where I really would have access to that information.

Q Can you identify Exhibit Number 41, please?

A Yes.

Q What is that?

A This is a section of BOP policy that talks about institution shifts starting and stopping time.

Q You have seen that before?

A Yes, I have.

Q Do you know what the purpose of that document is?

A My interpretation is to provide consistency and guidelines to institution management staff and also line staff regarding bureau regulations for start and stop time procedures.



M. Zenk

Q Start and?

A Start and stop time procedures.

Q I am going to hand you Exhibit Number 25.

A Yes.

Q Did you receive a copy of this in around June of 2000?

A I would have received that. I would have been at FCI Allenwood, yes.

Q Did you make any changes at FCI Allenwood after receiving this e-mail? This is an e-mail from Keith Hall, right?

A Yes.

Q Did you make any changes in the policies or practices at FCI Allenwood after receiving this e-mail?

A No. I felt we were already been in compliance with these specific individuals that were covered by this memo.

Q Take a look at Exhibit Number 10.

A This is the first I have seen this document.

Q Okay. Put it aside then.

Do you recognize Exhibit Number 45?



M. Zenk

A Yes. This would have related to my response to the April request by Mickey Ray regarding review of portal-to-portal issues and procedures here at Brooklyn. Looks like it was follow-up memorandum from Jeff Wrigley, the deputy regional director.

Q Did you have a discussion with Ann Scarpone about these portal-to-portal issues at this time?

A As I stated previously I did. I did ask Ann to be involved in reviewing other practices here at the institution along with the associate wardens to make sure various departments were in compliance with start stop time procedures and appropriate compensation for staff that worked outside of their regular work hours.

Q Is there any follow-up after that?

A Can you explain that?

Q Did you follow up with her, did you talk with her after that?

A Yes, she did the review. We met and based on her review and her, basically, assessment that helped me formulate my response



M. Zenk

to the regional director.

Q Do you recognize Exhibit 32?

A No, this is the first I have seen this memo.

Q You have lieutenants meetings at MDC Brooklyn?

A Yes.

Q They are mandatory, aren't they?

A No.

Q They are not?

A No, not since I have been here.

Q Do you have department head meetings at MDC Brooklyn?

A Yes.

Q And how often do you have them?

A We have those twice a month, once every other week.

Q And are they combined with lieutenants meetings on occasion?

A Yes.

Q When?

A Lieutenants meeting is the last department head meeting of the month. We combine them for efficiency. And just to make sure we

M. Zenk

don't duplicate meetings.

Q You don't require lieutenants to attend those lieutenants meetings?

A They are not required.

Q Are department heads expected to attend department head meetings?

A Department heads are expected if they are on duty. If they are not on duty they would have an acting designated and the acting would be responsible for attending. There are exceptions. Depending if there are priorities that department head would have to take care of that would excuse their presence at the department head meeting. But again would only be during their official work hours.

Q You have held department head meetings at times, haven't you, when some department heads were not scheduled to work, right, on a non-workday or non-work time?

A Our department head meetings are held on Tuesday at 1 p.m. Most department heads, to my knowledge, unless they made an adjustment in their schedule to work different hours, those would be their regular hours unless they were on



M. Zenk

annual leave or sick leave and there is no requirement that they attend. The meeting is not mandatory for all department heads to attend. But it would be an expectation that a representative of the department attend.

Q At the times when department head meetings are combined with lieutenants meetings, isn't it true that those meetings are sometimes when lieutenants are not regularly scheduled to work?

A That is possible.

Q Do you recognize Exhibit Number 47?

A Yes.

Q What is that?

A A memo that I issued to staff June 19th, 2003 regarding portal-to-portal issues and assigned work hours.

Q Why did you issue that?

A That was issued as a follow-up to a discussion during the June 2003 wardens' conference. Where the wardens met with Mickey Ray, the regional director and he emphasized again the importance of us making sure that the staff understood the procedures regarding working



M. Zenk

within regular work hours and also the procedures for insuring that staff were compensated appropriately if they worked outside of their regular work hours.

Q Before you issued this memo, were you aware of any requests for overtime or comp time by any non-bargaining unit employees for working a pre-shift or post-shift activity that were not compensated?

A No.

Q Aside from the lawsuit here?

A No, I wasn't.

Q After you issued this memo, were you aware of any requests for overtime or comp time by any non-bargaining unit employees for time spent in pre-shift or post-shift activity that was not compensated by Bureau of Prisons?

A No.

Q After you issued this memo, were you aware of any requests for comp time or overtime for any work which non-bargaining unit employees did during non-regularly scheduled time?

A Can you repeat that?



M. Zenk

Q After you issued this memo, were you aware of any requests for overtime or comp time from any non-bargaining unit employees for work that they performed outside normally scheduled work hours?

A No. Requests?

Q Requests for overtime or comp time.

A Say that again.

Q Requests for overtime or comp time by non-bargaining unit employees for work performed during non-regularly scheduled work hours?

A Yes. Where they did make the requests?

Q Yes.

A Yes, they did make requests.

Q Can you recall examples of that?

A I know I can recall the people that would work directly for me, associate wardens, I know made requests for time that they worked outside of regular works hours for comp time when we had a power outage at the institution. I believe that was in August 2003. And we had to basically lock down the institution for safety

M. Zenk

reasons since we lost all our outside power and our generators failed for a short period of time. So we he had to basically run the institution locked down for a period of time. It lasted overnight and the next morning we fortunately regained power.

Q Do you recognize Exhibit 48?

A Yes.

Q What is that?

A It is the memo from June 19th, 2003 that I reissued to staff during December 2003.

Q Why did you reissue it?

A I had concerns about staff that were working beyond regular work hours and not possibly requesting compensation. That they weren't following the original procedures where it said you had to get approval from your supervisor or your associate warden to work outside the regular work hours so we can insure that you were appropriately compensated.

Q How did you develop those concerns?

A Just by some general feedback that I was receiving from staff. And just some observations that I made where I did observe some



M. Zenk

staff that were in the institution outside regular working hours and was a concern. I wanted to make sure again staff knew if they were working -- it is okay to be in the institution outside of regular working hours, if you are doing official work, if you are not there for I guess personal or social reasons, or you are dealing with a personal matter that is not work related or socializing with someone that is not work related, that is okay. But if they were staying on their own to do extra work they still were expected to request compensation for that and also get the approval of their supervisor before doing that.

Q What did you observe employees doing that led you to wonder if employees were working beyond regularly scheduled hours?

A Being in the institution at times outside of their regular work hours. In areas that would indicate that they were possibly working.

Q What were they doing, do you recall?

A I can't recall specifics.



M. Zenk

Q Some kind of work activity you regard as work?

A I would say possibly work, yes. Again, if I am leaving the institution at a particular time and there is an employee that is also leaving. As an SCS of course I am not entitled to overtime or comp time. So if I stay later and leave later I don't expect compensation. If an employee that is staying later than their regular work hours and I happened to see them I just want to make sure again that the procedures are understood and followed so that we don't have any confusion that could lead possibly to an issue that we could resolve and do in the proper way without it becoming a potential lawsuit.

Q Do you recognize Exhibit Number 49?

A Yes, I do.

Q What is that?

A That is a memo from Mickey Ray that discusses hours of work and importance of having time and attendance properly recorded as official time worked and not using some other informal means or unofficial means of allowing staff to



M. Zenk

have compensation time approved outside of the time and attendance records.

Q Did you ever discuss this with Mickey Ray about this memo?

A I don't recall discussing this with Mickey Ray.

Q Do you have post orders at MDC Brooklyn?

A Yes.

Q Do you expect the people covered by those post orders to follow them?

A Yes. As a general rule it is expected they follow them. It is a guideline but as a general rule they are expected to follow those as a guideline.

Q Do you recognize Exhibit Number 56?

A Yes.

Q What is that?

A Minutes from our December 9th, 2003 department head meeting.

Q Can you go take a look at the last page, page 5, that refers to -- well, please read into the record what it says there.

A Everything on 5?

550.1 COMPENSATORY TIME

1. PURPOSE AND SCOPE. To establish procedures for using compensatory time off in lieu of overtime pay.

2. DIRECTIVES AFFECTED

5 U.S.C. 5543
5 CFR 550.114
Operating Manual Federal Wage System, Subchapter S8
* DOJ 1551.1C

3. REGULATIONS

a. Prevailing rate employees (Federal Wage System or FWS) may request and be granted compensatory time off equal to time spent in irregular or occasional overtime worked in lieu of overtime pay. *

b. General Schedule (GS) employees below GS-12 may request and be granted compensatory time off equal to time spent in irregular or occasional overtime worked in lieu of overtime pay.

c. Employees at GS-12 and above are required to take compensatory time off equal to time spent in irregular or occasional overtime worked in lieu of overtime pay.

A memorandum must be submitted for requests to waive the restriction on overtime pay for employees at GS-12 and above from the Warden through the Regional Director to the Director for a final decision.

d. Compensatory time must be used by the end of the leave year following the leave year in which it was earned. Utilizing sound judgement as to on-going workforce needs in terms of program and operational requirements, managers and supervisors must make every effort to allow employees to use earned compensatory time.

(1) Fair Labor Standards Act (FLSA) covered employees will be compensated for any unused compensatory time at the FLSA overtime rate in effect for the employee at the time in which the compensatory time was earned.

(2) Employees exempt from coverage under FLSA will forfeit any unused compensatory time, unless:

- the compensatory time was requested and subsequently denied and



Ex. 40

- the latest request was made between September 1 and September 30 of the leave year following that in which the compensatory time was earned, in which case the employee shall receive overtime pay at the overtime rate in effect when the compensatory time was earned.

e. Compensatory time is considered a form of premium pay and is subject to all applicable maximum earnings limitations.

f. Compensatory time off in lieu of overtime pay is not an employee's absolute right. Management may deny requests for compensatory time off and pay overtime.

4. PROCEDURES

a. Authorization for Compensatory Time

The approving official will indicate in writing when compensatory time off, rather than overtime pay, is the authorized manner of compensation for officially ordered and approved overtime worked.

b. Crediting and Use of Compensatory Time

(1) Compensatory time is to be credited and used in increments of quarter hours (15 minutes).

(2) Periods of irregular, unscheduled overtime work, no matter how small, will be accumulated daily and totaled by the Timekeeper at the end of the workweek. Fractions of less than one-quarter hour will be dropped from the total.

(3) Employee requests to use earned compensatory time must be made in writing using a Standard Form 71 (Application for Leave) or an acceptable substitute form of memorandum. The appropriate official may approve or deny the request. Denial of the request must be noted on the request form and include the official's signature and the date the request was denied.

(4) Appropriate entries must be made on the employee's Time and Attendance Report (T&A) to account for all compensatory time as it is earned and used.

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

July 18, 2003

MEMORANDUM FOR WARDENS
NORTHEAST REGION

FROM: M. E. Ray, Regional Director

SUBJECT: Hours of Work

As you know, over the past several years there have been a number of issues raised over portal-to-portal issues affecting supervisory staff. In an effort to avoid potential claims, apparently there have been "unofficial" methods implemented in some offices to account for time worked that staff were not compensated. As a reminder, it is inappropriate (and illegal) to allow staff to be away from work based on "unofficial" records. All compensatory time must be approved on the proper form and officially recorded on the time and attendance records (T&As). Compensatory time not approved by the appropriate official (Warden or Regional Director, as required by policy), will not be recorded on the T&As. All T&A records <u>must</u> accurately reflect when a staff member works or takes leave.

If you have any questions, please feel free to give me a call.

2003 JUL 24

A 121

Ex. 49

# 600 ATTENDANCE AND LEAVE

## 600.1 ELECTRONIC TIME AND ATTENDANCE REPORTING (PC-TARE)

1. PURPOSE AND SCOPE. To outline requirements and responsibilities associated with the National Finance Center's (NFC) Personal Computer Time and Attendance Remote Entry System (PC-TARE) for the processing of time and attendance data.

2. DIRECTIVES AFFECTED

Directives Referenced

a. DOJ Orders 1630.1B and 2160.6C

b. NFC Payroll/Personnel Processing Manual (PPPM), (Time and Attendance Report Form AD-321), Title I, Chapter 21 and Title VI, Chapter 10, Sections 1 and 2 (PC-TARE Security Officers and PC-TARE For Timekeepers.)

3. T & A TRANSMISSION TIME FRAMES. T & A's should be completed and transmitted to the NFC by the close of business of the Monday following the pay period. This will ensure that time and attendance has been recorded for those units that have employees working over the weekend.

* 4. RESPONSIBILITIES. The requirements and responsibilities involved in the proper processing of Time and Attendance reports are established by Department of Justice Order 2120.6C. In carrying out these requirements and responsibilities, it is essential that all levels of managers, supervisors, timekeepers/timekeyers, and employees are knowledgeable of their role in compliance with this Order.

a. Chief Executive Officers. Chief Executive Officers or their designees must approve, in advance, the granting of overtime and compensatory time. In addition, the Chief Executive Officer (or designee) will delegate the responsibility for keying T & A's.

b. Supervisors

(1) Individual supervisors shall: be aware of existing leave policy and regulations published in DOJ Order 1630.1B; ensure that staff understand leave policy and regulations; and, exercise fair and honest enforcement of this policy and regulations

(2) Supervisors of organizational units are responsible for designating timekeepers and alternates and for notifying the Human Resource Office in writing of any change in timekeepers.

(3) Supervisors are responsible for furnishing timekeepers with all necessary documentation (i.e. Form BP-369 (35)) concerning any employee overtime worked or compensatory time earned during the pay period. Supervisors should also ensure that documentation pertaining to corrected/amended T & A's is submitted promptly to the timekeeper/keyer.

(4) Supervisors are responsible for ensuring that employees do not certify their own time and attendance reports.

(5) Supervisors are responsible for certifying, by signing the T & A form, that time and leave for each of their employees has been accurately recorded. Supervisors should also ensure that adequate T & A records are maintained to support the entries made.

(6) Supervisors are responsible for ensuring that leave errors are promptly resolved and that any adjustments are properly documented. Leave audits should be performed in correcting most leave discrepancies and should be certified in writing by the supervisor. However, when leave audits are not appropriate, a memorandum to the file should be completed and signed by the supervisor detailing the reason adjustments were made. (See Section 5. Leave Adjustment Procedures.)

c. <u>Human Resource Managers</u>

(1) The Human Resource Manager is responsible for ensuring that timekeepers/timekeyers are adequately trained by a qualified and knowledgeable person(s) (at a minimum, annual refresher training) in both keying and the recording of time and attendance. *

(2) The Human Resource Manager or other responsible official within the Human Resource Office is responsible for obtaining and sending time and attendance data to the National Finance Center each pay period. Other personnel may be designated to do the actual uploading, but the responsibility remains with the Human Resource Manager.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSE L. ACEBAL, *et al.*, Plaintiffs, | ) | |
| v. | ) | No. 01-47C (Senior Judge Bruggink) |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF JAMES F. SHERMAN

I, James F. Sherman, under penalty of perjury, do hereby state that the following statement is true and correct to the best of my knowledge and belief:

1. Since June 11, 2006, I have been the Senior Deputy Regional Director in the Northeast Regional Office, Philadelphia, PA, of the Bureau of Prisons ("BOP").

2. From June 1985 to July 1987 (two years and one month), I served as a Correctional Officer at FCI Oxford, WI. From July 1987 to September 1988 (one year and two months), I served as a Senior Officer Specialist, also at FCI Oxford. From September 1988 to November 1989 (one year and one month), I served as a Lieutenant at FPC Duluth, MN. From November 1989 to May 1992 (two years and six months), I served as a Special Investigative Supervisor at FCI Sandstone, MN. From May 1992 to March 1994 (one year and nine months), I served as the SIS Coordinator for the Mid-Atlantic Region, Annapolis Junction, MD.

3. From March 1994 to July 1996 (two years and four months), I served as Captain at FCI Ashland, KY. From July 1996

to April 1998 (one year and nine months), I served as an Assistant Correctional Services Administrator in the Northeast Regional Office, Philadelphia, PA. From April 1998 to June 2000 (two years and one month), I served as Captain at USP Allenwood, PA. Thereafter, I served as an Associate Warden at MDC Brooklyn, NY, from June 2000 to May 2002 (one year and 11 months), and, after that, as an Associate Warden at FCI Sandstone, MN, from May 2002 to January 2004 (one year and eight months). From January 2004 to June 10, 2006 (two years and four months), I was the Warden at FCI McKean, PA.

4. As an Associate Warden at MDC Brooklyn, I initially reported to MDC Brooklyn Warden Carlyle Holder. Thereafter, from August 2000 to March 2002, I reported to MDC Brooklyn Warden Dennis Hasty. From April 2002 until my departure from MDC Brooklyn in August 2002, I reported to MDC Brooklyn Warden Michael Zenk.

5. As an Associate Warden at MDC Brooklyn, I attended the combined Department Head/Lieutenants' Meetings. At MDC Brooklyn, the Lieutenants' meetings were held as a combined Department Head/Lieutenants' meeting, and, after completion of the combined portion, the Lieutenants would have a closed meeting.

6. When I started at MDC Brooklyn in June 2000, the Lieutenants' Meeting usually were held monthly at 8:00 a.m.

7. On August 17, 2000, Warden Hasty issued a "Schedule of Meetings," a copy of which is attached. The schedule provided that the combined Department Head/Lieutenants' Meeting would be held on Tuesday, of the last pay week of the month, at 1:00 p.m. On April 18, 2001, Warden Hasty issued a revised "Schedule of Meetings," copy attached, which did not change the time of the combined Department Head/Lieutenants' Meeting.

8. During my tenure at MDC Brooklyn, it was my understanding that Lieutenants who were on their scheduled shift at the time of the Lieutenants' meeting were required to attend, unless they had been excused because of training, an emergency, or some another reason.

9. During my tenure at MDC Brooklyn, it also was my understanding that Lieutenants were not required to attend the Lieutenants' meetings at times when they were not on duty, e.g., on their day off, on leave, or when they were not on their scheduled shift. Although Lieutenants who were not on duty were not required to attend the Lieutenants' meetings, they were encouraged to do so, and were compensated, usually with compensatory time, when they attended the meetings. The Lieutenants would certify on the overtime forms that they had attended the meetings, and compensation would be approved for their overtime.

10. For Lieutenants who did not attend the Lieutenants' meeting, the reason for their absence was sometimes noted in the meeting minutes, e.g., "A/L" meaning Lieutenant on annual leave, "Training," meaning Lieutenant in training, "Day Off" meaning the Lieutenant was on day off, "Off Shift" meaning the Lieutenant was not on-shift, etc. This was in accordance with the Correctional Services Manual which stated: "Those Lieutenants not attending will be listed and the reasons for not attending recorded."

11. As Associate Warden at MDC Brooklyn, I did not direct, order, or require that the Lieutenants attend the Lieutenants' meetings at times when they were not on duty, e.g., not on their scheduled shift, on their day off, or on leave. Lieutenants were encouraged to attend these meetings when they were not scheduled to work, but they were not required to do so.

12. There was concern at the Northeast Regional Office about attendance of Lieutenants at Lieutenants' meetings, as reflected in an April 12, 2001 e-mail issued by James Betler, Deputy Captain, MDC Brooklyn (copy attached). At the May 29, 2001 Lieutenants' meeting, I noticed a major drop in the attendance of Lieutenants at the Lieutenants' meeting. As stated in my May 30, 2001, e-mail (copy attached), there were only five Lieutenants at the May 29, 2001 meeting. In my e-mail, I directed that the Lieutenants seek my approval, in addition to the approval of their direct supervisor (the Captain), before not

attending these meetings. My e-mail indicated that I was to be informed of the reasons why Lieutenants were not attending the meetings. My e-mail did not order Lieutenants to attend the Lieutenants' meetings on overtime. After my e-mail, Lieutenants still were not required to attend the Lieutenants' meetings when they were not on duty, e.g., when they were on leave, on their day off, or when they were not on their scheduled shift.

13. As Associate Warden at MDC Brooklyn, I never took any actions or made any adverse recommendations regarding any Lieutenant because of their not attending the Lieutenants' meetings. I also never took any actions or made any adverse recommendations because of a Lieutenant's not informing me of reasons for not attending such meetings.

14. After my May 30, 2001 e-mail, MDC Brooklyn Lieutenants who were not on duty were not required to attend the Lieutenants' meetings. Those Lieutenants on duty at the time of the Lieutenants' meeting were required to attend, absent an emergency or some other reason. The following Chart attached to my declaration indicates the attendance and the non-attendance of MDC Brooklyn Lieutenants at Lieutenants' meetings, based on the meeting minutes and other attached documents.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/25/07

James F. Sherman

James F. Sherman

MDC Brooklyn Department Heads/Lieutenants' meetings

| Date and Time of Meeting | Lts Attending | Lts Not Attending |
|---|---|---|
| May 30, 2000,<br>8:00-9:10 a.m. | J. Cuciti,<br>G. Miller,<br>L. Bledsoe,<br>L. Littles,<br>R. Gorbea,<br>P. Johnson,<br>D. White,<br>J. Rosa,<br>W. Moran,<br>D. Tessel,<br>T. Ventiere,<br>K. Snyder,<br>E. Soto,<br>A. Long,<br>J. Pena | M. Wilkins,<br>S. Barrere,<br>R. Nared,<br>V. Wash,<br>B. Stokes,<br>S. Pray,<br>A. Joseph,<br>J. Lane |
| June 27, 2000,<br>8:00-9:25 a.m. | E. Soto (comp),<br>J. Pena (comp),<br>R. Gorbea (comp),<br>V. Wash,<br>S. Barrere,<br>J. Cuciti (comp),<br>M. Wilkins,<br>A. Joseph (comp),<br>B. Stokes,<br>P. Johnson (comp),<br>L. Bledsoe,<br>J. Rosa,<br>K. Snyder (comp),<br>D. Tessel,<br>A. Long,<br>L. Littles,<br>R. Nared (comp),<br>S. Pray,<br>W. Moran (comp) | G. Miller<br>D. White |
| July 31, 2000 | No minutes available<br>J. Cuciti (comp),<br>W. Moran (comp),<br>R. Gorbea (comp),<br>D. Tessel (comp),<br>P. Johnson (comp),<br>L. Bledsoe (comp),<br>M. Wilkins (comp) | |

| | | |
|---|---|---|
| August 14, 2000, 3:05-4:10 p.m. | M. Wilkins,<br>B. Stokes,<br>D. White,<br>R. Gorbea,<br>J. Cuciti,<br>R. Nared,<br>T. Ventiere,<br>K. Snyder,<br>E. Soto,<br>A. Joseph,<br>P. Johnson,<br>J. Rosa,<br>S. Pray,<br>J. Pena,<br>V. Wash,<br>L. Littles,<br>L. Bledsoe,<br>S. Barrere | D. Tessel (A/L),<br>W. Moran (A/L),<br>J. Lane (A/L) |
| September 19, 2000, 1:00-2:30 p.m. | K. Malone,<br>P. Johnson,<br>L. Bledsoe,<br>A. Joseph,<br>K. Snyder,<br>J. Cuciti,<br>A. Long,<br>E. Soto,<br>L. Littles,<br>S. Pray,<br>V. Wash,<br>S. Barrere,<br>M. Wilkins,<br>J. Lane | W. Moran,<br>T. Ventiere,<br>D. Tessel,<br>R. Nared,<br>J. Rosa,<br>J. Pena,<br>R. Gorbea |

| | | |
|---|---|---|
| October 31, 2000,<br>1:00-2:15 p.m. | E. Soto,<br>J. Lane,<br>J. Pena,<br>V. Wash,<br>D. White,<br>J. Cuciti,<br>M. Wilkins,<br>A. Joseph,<br>K. Malone,<br>P. Johnson,<br>L. Bledsoe,<br>J. Rosa,<br>K. Snyder,<br>S. Pray,<br>L. Littles,<br>R. Nared,<br>W. Moran | D. Tessel,<br>T. Ventiere,<br>R. Gorbea,<br>S. Barrere |
| November 28, 2000,<br>1:00-2:48 p.m. | D. White (comp),<br>P. Johnson,<br>L. Bledsoe (comp),<br>A. Joseph,<br>K. Snyder,<br>J. Cuciti,<br>K. Malone,<br>J. Rosa,<br>L. Littles,<br>W. Moran (comp),<br>V. Wash,<br>S. Barrere,<br>M. Wilkins (comp),<br>T. Ventiere,<br>R. Gorbea (comp),<br>R. Denjen (comp) | not identified in minutes |
| December 26, 2000,<br>1:00-1:25 p.m. | J. Rosa,<br>V. Wash,<br>D. Ortiz,<br>M. Wilkins,<br>D. White,<br>T. Ventiere,<br>E. Soto | not identified in minutes |

| | | |
|---|---|---|
| January 23, 2001,<br>1:00-2:00 p.m. | S. Pray,<br>S. Barrere,<br>V. Wash,<br>T. Ventiere,<br>A. Joseph,<br>J. Cuciti,<br>J. Rosa,<br>M. Wilkens,<br>R. Nared,<br>E. Soto | not identified in minutes |
| February 20, 2001,<br>1:00-1:55 p.m. | J. Cuciti,<br>M. Wilkins,<br>A. Joseph,<br>S. Pray,<br>W. Moran,<br>J. Lane,<br>V. Wash,<br>T. Ventiere,<br>W. Beck | D. Tessel (S/L),<br>S. Barrere (A/L),<br>J. Pena (ADMIN LV),<br>L. Littles (S/L),<br>K. Snyder (Day off),<br>J. Rosa (ADMIN LV),<br>D. Oritiz (Day off),<br>R. Gorbea (Day off),<br>E. Soto (ADMIN LV),<br>D. White (A/L),<br>P. Johnson (Training),<br>L. Bledsoe (Day off)<br>R. Denjen (A/L) |
| March 20, 2001,<br>1:00-2:00 p.m. | W. Beck,<br>L. Bledsoe (comp),<br>J. Rosa,<br>D. Ortiz,<br>W. Moran (comp),<br>P. Johnson (comp),<br>D. Tessel (comp),<br>D. White (comp),<br>J. Lane,<br>K. Snyder,<br>A. Joseph,<br>J. Cuciti,<br>S. Barrere,<br>M. Wilkins,<br>S. Pray,<br>R. Gorbea,<br>J. Mundo,<br>M. Mundo | T. Ventiere (A/L),<br>V. Wash (Training) |
| May 29, 2001, | no minutes available<br>5 Lts and SIA<br>D. White (comp) | |

| | | |
|---|---|---|
| June 27, 2001,<br>1:25-3:05 p.m. | W. Beck,<br>L. Bledsoe,<br>F. Maldanado,<br>D. White (comp),<br>K. Snyder,<br>J. Cuciti,<br>J. Lane,<br>T. Ventiere,<br>W. Moran (comp),<br>R. Denjen,<br>M. Wilkins,<br>R. Gorbea,<br>E. Torres,<br>M. Mundo,<br>H. Gussak | V. Wash (A/L),<br>D. Tessel (A/L),<br>S. Pray (S/L),<br>D. Ortiz (LWOP),<br>L. Littles (A/L),<br>A. Joseph (LWOP),<br>S. Barrere (A/L) |
| July 24, 2001,<br>1:00-2:20 p.m. | V. Wash,<br>L. Bledsoe,<br>R. Denjen,<br>T. Ventiere,<br>F. Maldonado,<br>S. Barrere | not identified in minutes |
| August 23, 2001,<br>1:25-3:00 p.m. | V. Wash,<br>W. Beck,<br>M. Wilkins,<br>J. Lane,<br>W. Moran,<br>H. Gussak,<br>F. Maldonado,<br>T. Ventiere,<br>M. Mundo,<br>J. Cuciti,<br>K. Snyder,<br>L. Bledsoe | not identified in minutes |
| September 2001 | no meeting | |
| October 29, 2001,<br>1:25-2:50 p.m. | S. Pray,<br>T. Ventiere,<br>K. Snyder,<br>T. Cush,<br>F. Maldonado,<br>J. Lane,<br>E. Torres,<br>V. Wash | not identified in minutes |

| | | |
|---|---|---|
| November 27, 2001, 1:10-2:15 p.m. | J. Cuciti (Acting Captain)<br>V. Wash<br>S. Pray<br>W. Beck,<br>F. Maldanado<br>K. Snyder,<br>J. Lane<br>H. Gussak,<br>T. Cush | D. Tessel (day off),<br>A. Joseph (Training),<br>S. Barrere (A/L),<br>L. Bledsoe (day off)<br>D. Ortiz,<br>D. White,<br>W. Moran,<br>R. Denjen,<br>M. Wilkins,<br>R. Gorbea,<br>E. Torres,<br>M. Mundo |
| December 2001 | no meeting | |
| January 22, 2002, 1:10-2:10 pm. | J. Eberhart,<br>J. Cuciti,<br>F. Maldonado,<br>K. Snyder,<br>D. Tessel,<br>L. Bledsoe,<br>T. Cush,<br>D. Ortiz,<br>M. Mundo,<br>J. Maldonado | A. Joseph (Training),<br>S. Barrere (A/L),<br>D. White,<br>W. Moran,<br>R. Denjen,<br>M. Wilkins,<br>R. Gorbea,<br>E. Torres,<br>V. Wash,<br>W. Beck,<br>J. Lane,<br>H. Gussak |
| February 19, 2002, 1:05-1:30 p.m. | J. Lane,<br>K. Snyder,<br>C. Cole | J. Eberhart,<br>J. Cuciti,<br>F. Maldonado,<br>D. Tessel<br>L. Bledsoe,<br>T. Cush,<br>D. Ortiz,<br>M. Mundo,<br>J. Maldonado,<br>A. Joseph (Training),<br>S. Barrere,<br>D. White,<br>W. Moran,<br>M. Wilkins,<br>R. Gorbea,<br>E. Torres,<br>V. Wash,<br>W. Beck,<br>H. Gussak |

| | | |
|---|---|---|
| March 19, 2002,<br>1:00-2:00 p.m. | F. Maldonado,<br>E. Torres,<br>W. Beck,<br>J. Lane,<br>H. Gussak,<br>M. Mundo,<br>J. Cuciti,<br>K. Snyder | not identified in minutes |

Exhibits

| | |
|---|---|
| Exhibit 1 | Excerpt re Lieutenants' meetings from Correctional Services Manual, 10/27/97 |
| Exhibit 2 | August 17, 2000 Memorandum of Warden Hasty re Schedule of Meetings |
| Exhibit 3 | April 18, 2001 Memorandum of Warden Hasty re Schedule of Meetings - Revised |
| Exhibit 4 | April 12, 2001 E-mail of James Betler |
| Exhibit 5 | May 30, 2001 E-mail of James Sherman |
| Exhibit 6 | Minutes of May 30, 2000 Department Head/Lieutenants' meeting |
| Exhibit 7 | Overtime Authorization Form re June 27, 2000 Lieutenants' meeting |
| Exhibit 8 | Minutes of June 27, 2000 Department Head/Lieutenants' meeting |
| Exhibit 9 | Overtime Authorization Form Re July 31, 2000 Lieutenants' meeting |
| Exhibit 10 | Minutes of August 14, 2000 Department Head/Lieutenants' meeting |
| Exhibit 11 | Minutes of September 19, 2000 Department Head/Lieutenants' meeting |
| Exhibit 12 | Minutes of October 31, 2000 Department Head/Lieutenants' meeting |
| Exhibit 13 | Minutes of November 28, 2000 Department Head/Lieutenants' meeting |
| Exhibit 14 | Overtime Authorization Form re November 28, 2000 Lieutenants' meeting |
| Exhibit 15 | Minutes of December 26, 2000 Department Head/Lieutenants' meeting |
| Exhibit 16 | Minutes of January 23, 2001 Department Head/Lieutenants' meeting |

| | |
|---|---|
| Exhibit 17 | Minutes of February 20, 2001 Department Head/Lieutenants' meeting |
| Exhibit 18 | Minutes of March 20, 2001 Department Head/Lieutenants' meeting |
| Exhibit 19 | Overtime Authorization Forms re March 20, 2001 Department Head/Lieutenants' meeting |
| Exhibit 20 | Overtime Authorization Form re May 29, 2001 Department Head/Lieutenants' meeting |
| Exhibit 21 | Minutes of June 27, 2001 Department Head/Lieutenants' meeting |
| Exhibit 22 | Overtime Authorization Forms re June 27, 2001 Department Head/Lieutenants' meeting |
| Exhibit 23 | Minutes of July 24, 2001 Department Head/Lieutenants' meeting |
| Exhibit 24 | Minutes of August 23, 2001 Department Head/Lieutenants' meeting |
| Exhibit 25 | Memorandum re no September 2001 Department Head/Lieutenants' meeting |
| Exhibit 26 | Minutes of October 29, 2001 Department Head/Lieutenants' meeting |
| Exhibit 27 | Minutes of November 27, 2001 Department Head/Lieutenants' meeting |
| Exhibit 28 | Memorandum re no December 2001 Department Head/Lieutenants' meeting |
| Exhibit 29 | Minutes of January 22, 2002 Department Head/Lieutenants' meeting |
| Exhibit 30 | Minutes of February 29, 2002 Department Head/Lieutenants' meeting |
| Exhibit 31 | Minutes of March 19, 2002 Department Head/Lieutenants' meeting |

U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 5500.09 |
| **DATE:** | 10/27/97 (CN-1 10/9/98) |
| **SUBJECT:** | Correctional Services Manual |

**LIMITED OFFICIAL USE ONLY - NOT TO BE REPRODUCED**

1. PURPOSE AND SCOPE. To implement policies, procedures, and guidelines to protect the public and maintain a secure, safe and orderly living and working environment for inmates and staff.

This Program Statement promotes standard management practices for correctional staff in all Bureau institutions, while recognizing differences among institutions that vary in missions and security levels.

2. PROGRAM OBJECTIVES. The expected results of this program are:

a. The complement of Correctional Services staff for each institution will be appropriate for that institution's mission and based on national staffing guidelines.

b. The role of each Correctional Services staff position will be consistently and clearly defined.

* c. Security posts will be established through meaningful post orders; using a standard roster, most officers will be rotated through various assignments over a period of time in accordance with the procedures in the Master Agreement. All assignments will be recorded. *



GOVERNMENT EXHIBIT

A 139

BOP 131429

hazardous materials, it may be necessary to develop a separate Tool Perpetual Audit Schedule to ensure a more in-depth review of these items. A sample perpetual audit schedule is listed on (Attachment 9).

Additionally, perpetual audit files will include all working papers. During the quarter when a Program Review or an Operational Review is being conducted, Perpetual Audits need not be accomplished.

[redacted]

111. LIEUTENANTS' MEETINGS. A Lieutenants' meeting will be held monthly to discuss programs and problem areas of general concern. A definite time and date should be set for these meetings. For example, 8:30 a.m. on the second Tuesday of each month. An

agenda, prepared and distributed in advance, is desirable. The
* institution Executive Staff, Department Heads, and other
interested persons, (ex. the union), should be encouraged to attend. Accordingly, missing tools will be discussed and documented at this meeting. Those Lieutenants not attending will be listed and the reasons for not attending recorded. The Captain, or a Lieutenant appointed by the Captain, will chair the meeting and a recorder will be assigned to compose the minutes using the format in Attachment 10. Completed minutes shall be forwarded monthly to the Regional Correctional Services Administrator. *

At a closed meeting, either before or after the formal meeting, the Captain and Lieutenants will review and evaluate the progress and **performance of each probationary officer**. Specific comments
regarding performance, progress, and the advisability of retention or termination should be addressed for each case. The Personnel Officer (or designee) should attend.

* [redacted] *

113. <u>REPORTS REQUIRED MONTHLY/UPON REQUEST FROM THE REGIONAL ADMINISTRATORS</u>

1. Lieutenants' Meeting Minutes. This report is to be submitted monthly in the format outlined in Attachment 10.

[redacted]

The Regional Correctional Services Administrator may require more frequent reporting.

A 141

# MINUTES OF THE LIEUTENANT'S MEETING

Short introductory paragraph stating where held, date held, and time convened. List those attending. Identify Lieutenants not present and give the reasons for their absence.

## Old Business

### Each Subject Topic Discussed

Identify the committee member who introduces each topic for discussion. Include written suggestions submitted for discussion, but do not identify the employee who submitted the suggestion.

Discussion: Briefly state the points considered in the discussion of the topic.

Action: State the recommended action and the means through which it will be accomplished. If procedures are to be changed, state who will issue the necessary orders.

Time Adjourned: ______

______________
Signature of Reporter

U.S. Department of Justice

Federal Bureau of Prisons

*Metropolitan Detention Center*

Office of the Warden

Brooklyn, New York 11232

August 17, 2000

**MEMORANDUM FOR EXECUTIVE STAFF, DEPARTMENT HEADS AND INSTITUTION DUTY OFFICERS**

**FROM:** Dennis W. Hasty, Warden

**SUBJECT:** Schedule of Meetings

Be advised that effective immediately, the Executive Staff and Department Head Meetings will be conducted as follows:

Mondays - 8:00 a.m. - Executive Staff Meeting
Tuesdays - 8:00 a.m. - Executive Staff Meeting/Duty Officer Exchange[1]
Pay Week Tuesdays - 1:00 pm - Department Head Meeting
Last Pay Week Tuesday of the Month - 1:00 p.m. - Combined Department Head/Lieutenant's Meeting
Wednesdays - 8:00 a.m. - Executive Staff Meeting
Thursdays - 8:00 a.m. - Intelligence Meeting with Executive Staff
Fridays - 3:30 p.m. - Executive Staff Close-Out[2]

Please note the Affirmative Action Meeting will be conducted bi-monthly, immediately after the Department Head Meeting.

DWH:avw

[1]Both incoming and outgoing Duty Officers must be present.

[2]Duty Officer must be present.

GOVERNMENT EXHIBIT 2

PENGAD-Bayonne, N.J.

**U.S. Department of Justice**

**Federal Bureau of Prisons**

***Metropolitan Detention Center***

*Office of the Warden*

*Brooklyn, New York 11232*

April 18, 2001

**MEMORANDUM FOR EXECUTIVE STAFF, DEPARTMENT HEADS AND INSTITUTION DUTY OFFICERS**

**FROM:** Dennis W. Hasty, Warden

**SUBJECT:** Schedule of Meetings - **Revised**

Be advised that, effective immediately, the Executive Staff and Department Head meetings will be conducted as follows:

Mondays - 8:00 a.m. - Executive Staff meeting
1:00 p.m. - SHU Meeting
1:30 p.m. - SIS/Intelligence meeting with Executive Staff

Tuesdays - 8:00 a.m. - Executive Staff meeting/Duty Officer change[1]
1:00 p.m. - Department Head meeting (pay week Tuesdays)
1:00 p.m. - Combined Department Head/Lieutenant's meeting (last pay week Tuesday of the month)

Wednesdays - 8:00 a.m. - Executive Staff meeting

Thursdays - 8:00 a.m. - Executive Staff meeting

Fridays - 3:00 p.m. - Executive Staff close-out[2]

Please note the Affirmative Action Committee meeting will be conducted bi-monthly, immediately after the Department Head meeting.

DWH:avw

[1]Both incoming and outgoing Duty Officers must be present.

[2]Duty Officer must be present.

A 144

GOVERNMENT EXHIBIT 3

From: James Betler
To: Lieutenants
Date: 4/12/01 12:18PM
Subject: Lieutenant's Meeting

On Monday April 16, 2001, at 2:00PM, the monthly Department Head/Lieutenant's Meeting is scheduled.

Please ensure you attend and that you turn in your agenda items by 4:00PM on Friday April 13, 2001. I noticed that several of you stated that you had nothing to discuss at the last meeting. This is not acceptable seeing how we are less than 90 days out from Program Review and have a significant amount of work still to be done. In addition, the meeting minutes are sent to the Regional Office and are reviewed by several staff at that level to include the Regional Correctional Services Administrator. He sent out a message a couple of months ago informing the Captains in this region that all Lieutenants should be in attendance and have a topic to discuss. We are also required to put reasons in minutes for the Lieutenants that are not in attendance.

I also noticed that we do not have all of the monthly responses for the Ops Review, Program Review and Staff Assist. We discussed this at length at the last Lieutenants Meeting. This assignment is not negotiable and must be submitted the 1st of each month. You must take corrective action now and ensure that it remains corrected by providing follow-up. We will again cover this at the meeting.

As outlined in the memo dated March 19, 2001, Lt. Johnson is assigned as the Chairperson.

Lt. Ventiere, you need to ensure that you cover lost tools at each meeting. This is even more important now since we have had numerous lost tools recently.

PS: Agenda items are not limited to but should cover your area of responsibilities.

CC: Beck, William; Denjen, Randy; Desmond, Richard; Gussak, Howard; Hurley, Christopher; Kimbrough, Anthony; LoPresti, Salvatore; Moran, William; Mundo, Marcial; N' Diaye, Lamine; Vaughn, Melvin

X 30

GOVERNMENT EXHIBIT 4

PENGAD-Bayonne, N.J.

**From:** James Sherman
**To:** Barrere, Steven; Beck, William; Bledsoe, Lindsey; Cuciti, Joseph; Denjen, Randy; Desmond, Richard; Gorbea, Ralph; Gussak, Howard; Johnson, Percy; Joseph, Anthony; Lane, John; Littles, Lacy; Maldonado, Frank; Moran, William; Mundo, Marcial; N' Diaye, Lamine; Ortiz, Daniel; Pray, Stuart; Snyder, Kelly; Tessel, David; Torres, Elizabeth; Vaughn, Melvin; Ventiere, Thomas; Wash, Vincent; White, Douglas; Wilkins, Muriel
**Date:** 5/30/01 10:40AM
**Subject:** Mandatory Lieutenant's Meeting

Lieutenants

Recently I noted a major drop in the attendance of the Mandatory Lieutenant's Meetings. As per the Correctional Services Manual, Lieutenant's are required to attend these meetings.

On May 29, 2001, a total of five Lieutenants and one SIA, were present at the meeting.

Due to your lack of interest, all Lieutenant's are now required to request approval through me prior to you not attending these meetings.

The only exceptions are, your on annual leave and out of the area, emergency leave, or sick leave. **I will still need to be notified in advance of your planned absence.**

Everyone knows the meetings are held the same time as the last Department Head Meeting of the month. If you don't know this you need to get with your Captain for details.

As your AW I expect each of you to know policy and what is going on within your institution.

When I refer to Lieutenants, I include the SIA's and Intel in this category.

Any questions feel free to come see me.

**CC:** Betler, James; LoPresti, Salvatore

See back - turn over



GOVERNMENT EXHIBIT 5