IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSE L. ACEBAL, et al., Plaintiffs, v. UNITED STATES, Defendant. | ) | Case No. 01-47C (Senior Judge Bruggink) |

PLAINTIFF'S RESPONSE TO
DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
REGARDING PLAINTIFF LINDSEY BLEDSOE

1. Bureau of Prison ("BOP") national policy is stated in Operations Memorandum No. 214-95, dated November 1, 1995, and the BOP Human Resource Management Manual and provides:

> Shift starting and stopping times for employees who work inside an institution shall be scheduled to begin and end at the point employees pick-up and drop-off equipment (keys, radios, body alarms, work detail pouches, etc.) at the control center. Therefore, employees who pick-up equipment at the control center shall have their shifts scheduled to include reasonable time to travel from the control center to their assigned duty post and return (at the end of the shift). . . .
> An institution employee whose shift starts at 7:30 a.m. must be at the control center and have received his/her equipment no later than 7:30 a.m. to be considered "on time" for the start of his/her shift. To accomplish this, each location should ensure minimum waiting time for the employee in the key line. If that same employee's shift ends at 4:00 p.m., he/she should drop-off his/her keys/equipment in the control center at 4:00 p.m., the scheduled quitting time. Reasonable travel time to and from the duty post to the control center would be compensable as part of the employee's tour of duty....

Def. App. 33-34; see also Def. App. 39-40.[1] BOP national policy further states:

> If an employee arrives at the key line in a reasonable time to get equipment prior to the shift, but does not receive the equipment by the beginning of the shift because of unforeseen circumstances, this employee is not to be considered late.

[1] "Def. App." refers to Defendant's Appendix to Defendant's Opposition To Plaintiff Lindsey Bledsoe's Motion For Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment Regarding Plaintiff Lindsey Bledsoe. "Pl. App." refers to Plaintiff's Appendix re Plaintiff Lindsey Bledsoe's Motion For Partial Summary Judgment.

Def. App. 40.

Response: Plaintiffs admit that defendant properly quotes from BOP policy statements, but deny that the policy is always effectuated.

2. Pursuant to this BOP national policy, when a Lieutenant's assignment required that he pick up keys or equipment (e.g., radio) from the Control Center, he was to be in the key line at the Control Center at his shift-starting time. Def. App. 33-34, 39-30. Similarly, when a Lieutenant's assignment required that he drop off keys or equipment at the Control Center, he was to be at the Control Center at his shift-ending time. Id.

Response: Plaintiffs admit that when a lieutenant's assignment required that he pick up keys or equipment (e.g., radio) from the Control Center, he was to be in the key line at the Control Center at his shift-starting time, to be considered "on time." Plaintiffs admit that when a lieutenant's assignment required that he drop off keys or equipment at the Control Center, he was to be at the Control Center at his shift-ending time, to be considered "on time."

3. The October 1997 version of the BOP Correctional Services Manual stated as follows:

> A Lieutenants' meeting will be held monthly to discuss programs and problem areas of general concern. A definite time and date should be set for these meetings. For example, 8:30 a.m. on the second Tuesday of each month. An agenda, prepared and distributed in advance, is desirable. The institution Executive Staff, Department Heads, and other interested persons, (ex. the union), should be encouraged to attend. Accordingly, missing tools will be discussed and documented at this meeting.
>
> Those Lieutenants not attending will be listed and the reasons for not attending recorded. The Captain, or a Lieutenant appointed by the Captain, will chair the meeting and a recorder will be assigned to compose the minutes using the format in Attachment 10. Completed minutes shall be forwarded monthly to the Regional Correctional Services Administrator.
>
> At a closed meeting, either before or after the formal meeting, the Captain and Lieutenants will review and evaluate the progress and performance of each probationary officer. Specific comments regarding performance, progress, and the

> advisability of retention or termination should be addressed for each case. The Personnel Officer (or designee) should attend.

Def. App. 1113-14, 1196-98.

Response: Plaintiffs admit that defendant properly quotes the BOP Correctional Services Manual.

4. In October 2003, a new Correctional Services Manual became effective, and contained modified language regarding Lieutenants' meetings, stating as follows:

> A Lieutenants' meeting will be held monthly to discuss programs and problem areas of general concern.
>
> * Missing tools will be discussed at this meeting.
> * Lieutenants in attendance will be listed in the minutes.
> * A recorder will be assigned to compose the minutes.
> * The minutes will be submitted to the Correctional Services Administrator, Regional Office, monthly.
>
> At a closed meeting, either before or after the formal meeting, the Captain and Lieutenants will review the progress and evaluate each probationary officer's performance.

Def. App. 1114, 1199-1200. The Correctional Services Manual did not require that Lieutenants attend the Lieutenants' meetings on their day off or outside of their scheduled shift. Def. App. 1113-14, 1199-1200. It required that BOP institutions hold "a Lieutenants' meeting . . . monthly." Id.

Response: Plaintiffs admit that defendant properly quotes the BOP Correctional Services Manual. Also, while the Manual by itself, "did not require that Lieutenants attend the Lieutenants' meetings on their day off or outside of their scheduled shift," it and other written policies did require that overtime.

USP Lewisburg, PA

5. From August 2, 1998, to May 20, 2000, Lt. Bledsoe was a GS-9 Lieutenant at the United States Penitentiary ("USP") Lewisburg, PA. Def. App. 2 (Bledsoe Dep. 5), 41-42.

Response: Admitted.

6. From August 1988 to May 2000, USP Lewisburg was a high security level facility which housed approximately 1,400 inmates. Def. App. 1106.

Response: Admitted.

7. During the period August 1998 to May 1999, Lt. Bledsoe reported to Captain Louis Lopez. Def. App. 3 (Bledsoe Dep. 6). During the period May 1999 through May 2000, Lt. Bledsoe reported to Captain William Ey. Def. App. 1106. In August 1998 to May 2000, there were approximately 15-16 Lieutenants employed by USP Lewisburg. Def. App. 1130, 1142, 1150, 1158, 1164, 1175-76, 1185-86.

Response: Admitted.

8. At USP Lewisburg, Lt. Bledsoe was assigned as Activities Lieutenant, Segregation ("SEG") Lieutenant, and G Block Lieutenant. Def. App. 1108-09. The SEG Lieutenant also was known as a Special Housing Unit (SHU") Lieutenant. Def. App. 1110; Def. App. 3 (Bledsoe Dep. 6).

Response: Admitted.

USP Lewisburg Activities Lieutenant

9. According to the USP Lewisburg Quarterly Roster for the period July 5, 1998 through October 3, 1998 (Def. App. 1127-32), Lt. Bledsoe was assigned as Day Watch Activities Lieutenant, 6:30 a.m.-3:00 p.m., with Saturdays and Sundays off. Def. App. 1109, 1130 (Ey). According to this same Quarterly Roster, Lt. Bledsoe, as the Day Watch Activities Lieutenant,

was relieved by the Evening Watch Activities Lieutenant, 2:45 p.m.-11:00 p.m. Id. There was a 15-minute overlap between the Day Watch Activities Lieutenant and the Evening Watch Activities Lieutenant, from 2:45 p.m.-3:00 p.m. Id.

Response: Admitted.

10. According to the USP Lewisburg Quarterly Roster for the period October 4, 1998 through January 2, 1999 (Def. App. 1133-38), Lt. Bledsoe was assigned as Evening Watch Activities Lieutenant, 2:45 p.m.-11:45 p.m., with Wednesdays and Thursdays off. Def. App. 1109, 1136 (Ey). According to this same Quarterly Roster, Lt. Bledsoe relieved the Day Watch Activities Lieutenant, 6:30 a.m.-3:00 p.m. Id. There was a 15-minute overlap between the Day Watch Activities Lieutenant and the Evening Watch Activities Lieutenant, from 2:45 p.m.-3:00 p.m. Id.

Response: Admitted.

11. According to the USP Lewisburg Quarterly Roster for the period January 3, 1999 through April 3, 1999 (Def. App. 1139-44), Lt. Bledsoe was assigned as Evening Watch Activities Lieutenant, 2:45 p.m.-11:45 p.m., with Wednesdays and Thursdays off. Def. App. 1109, 1142 (Ey). According to this same Quarterly Roster, Lt. Bledsoe relieved the Day Watch Activities Lieutenant, 6:30 a.m.-3:00 p.m. Id. There was a 15-minute overlap between the Day Watch Activities Lieutenant and the Evening Watch Activities Lieutenant, from 2:45-3:00 p.m. Id.

Response: Admitted.

12. According to the USP Lewisburg Quarterly Roster for Lieutenants for the period December 19, 1999 to March 25, 2000 (Def. App. 1170-79), Lt. Bledsoe was assigned as

Evening Watch Activities Lieutenant, 2:30 p.m.-10:30 p.m., with Wednesdays and Thursdays off. Def. App. 1111, 1176, 1179, 1205 (Ey). According to this same Quarterly Roster, Lt. Bledsoe relieved the Day Watch Activities Lieutenant, 6:00 a.m.-2:30 p.m. Id. During this quarter, there was no overlap between the Day Watch Activities Lieutenant and the Evening Watch Activities Lieutenant. Id.

Response: Admitted.

13. According to the USP Lewisburg Quarterly Roster for Lieutenants for the period March 26, 2000 to June 17, 2000 (Def. App. 1180-87), Lt. Bledsoe was assigned as Evening Watch Activities Lieutenant, 2:30-10:30 p.m., with Wednesdays and Thursdays off. Def. App. 1111, 1186 (Ey). According to this same Quarterly Roster, Lt. Bledsoe relieved the Day Watch Activities Lieutenant, 6:00 a.m.-2:30 p.m. Id. During this quarter, there was no overlap between the Day Watch Activities Lieutenant and the Evening Watch Activities Lieutenant. Id.

Response: Admitted.

14. The USP Lewisburg Day Watch Activities Lieutenant was required to be in the key line at the Control Center to drop off chits in exchange for the keys and radio at his shift starting time. Def. App. 1111 (Ey). The incoming Evening Watch Activities Lieutenant would drop off his or her chits at the Control Center and obtain the chits for the Day Watch Activities Lieutenant. Def. App. 1111-12 (Ey). The Evening Watch Activities Lieutenant would meet the Day Watch Activities Lieutenant and exchange the chits for the keys and radio, and simultaneously receive oral or written information. Id.; Def. App. 5 (Bledsoe Dep. 14). The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id. The Day Watch Activities Lieutenant walked directly out of

the institution without stopping at the Control Center to drop off keys, radio or chits. Id.

Response: Admitted.

15. When Lt. Bledsoe was assigned as Evening Watch Activities Lieutenant, 2:30 p.m.-10:30 pm., and another Lieutenant was assigned as Day Watch Activities Lieutenant, 6:00 a.m.-2:30 p.m., Lt. Bledsoe usually obtained his keys and radio directly from the Day Watch Activities Lieutenant, who also provided oral or written information. Def. App. 1112 (Ey). The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id.

Response: Admitted.

USP Lewisburg Segregation Lieutenant

16. The Quarterly Roster for the period January 3, 1999 through April 3, 1999, was replaced by another Quarterly Roster. Def. App. 1110. According to the USP Lewisburg Quarterly Roster for Lieutenants for the period March 21, 1999 to June 20, 1999 (Def. App. 1145-54), Lt. Bledsoe was assigned as a Segregation ("SEG") Lieutenant, 7:45 a.m.-4:15 p.m., with Fridays and Saturdays off. Def. App. 1110, 1150, 1154 (Ey). According to the USP Lewisburg Quarterly Roster for the period April 3, 1999 through July 3, 1999 (Def. App. 1155-60), Lt. Bledsoe was assigned as SEG Lt., 7:45 a.m.-4:15 p.m., with Fridays and Saturdays off. Def. App. 1110, 1158, 1160 (Ey).

Response: Admitted.

17. The SEG Lieutenant also was known as a Special Housing Lieutenant. Def. App. 1110. As SEG Lieutenant, Lt. Bledsoe did not relieve another Lieutenant when he arrived, and Lt. Bledsoe was not relieved by another Lieutenant at or before the end of his shift. Id. As SEG

Lieutenant, Lt. Bledsoe picked up his keys and radio from the Control Center and returned them to the Control Center before leaving the institution. Id. The SEG Lieutenant was to be in the key line at the Control Center at the start of the shift. Def. App. 1110 (Ey). The SEG Lieutenant was to be at the Control Center dropping off keys and equipment in exchange for chits at the end of the shift. Id.

Response: Admitted.

USP Lewisburg G Block Lieutenant

18. According to the USP Lewisburg Quarterly Roster for Lieutenants for the period September 19, 1999 through December 18, 1999 (Def. App. 1161-69), Lt. Bledsoe was assigned as G Block Lieutenant, 7:45 a.m.-4:15 p.m., with Sundays and Mondays off. Def. App. 1110-11, 1164, 1168 (Ey). As G Block Lieutenant, Lt. Bledsoe did not relieve another Lieutenant when he arrived, and Lt. Bledsoe was not relieved by another Lieutenant at or before the end of his shift. Id. As G Block Lieutenant, Lt. Bledsoe picked up his keys and radio from the Control Center and returned them to the Control Center before leaving the institution. Id. The G Block Lieutenant was to be in the key line at the Control Center at the start of the shift. Def. App. 1111 (Ey). The G Block Lieutenant was to be at the Control Center dropping off keys and equipment in exchange for chits at the end of the shift. Id.

Response: Admitted.

USP Lewisburg Lieutenants' Meetings

19. During the period August 1998 to May 2000, USP Lewisburg held its Lieutenants' meetings as combined Department Head/Lieutenants' meetings. Def. App. 8-9 (Bledsoe Dep. 29-30); Def. App. 55 (Johns), 1114 (Ey). The combined Department Head/Lieutenants' meeting

usually was followed by a closed, Lieutenants' meeting. Id.

Response: Admitted.

20. Lt. Bledsoe testified that he did not recall any written instructions directing Lieutenants to attend the Lieutenants' meetings at USP Lewisburg. Def. App. 8 (Dep. 27-28). Lt. Bledsoe was not ordered in writing to attend the USP Lewisburg Department Head/Lieutenants' meetings or subsequent, closed Lieutenants meetings at times when he was not on his scheduled shift, e.g., when he was on leave, on his day off, or when he was off shift. Def. App. 8 (Bledsoe Dep. 27-28); Def. App. 55 (Johns), 1114 (Ey).

Response: Admitted.

21. During Captain Ey's tenure at USP Lewisburg, Lt. Bledsoe never brought to Captain Ey's attention his failure to be compensated for attending these meetings. Def. App. 1120.

Response: Denied. In his deposition Plaintiff Bledsoe testified that he thought he asked for compensation for the meetings in Lewisburg, but he was not sure. See Def. App. 8 (28-29). Defendant did not specifically ask him whether he told Captains Lopez or Ey that he wanted to be paid for attending these meetings.

22. According to the meeting minutes, Lt. Bledsoe attended the USP Lewisburg Department Head/Lieutenants' meeting on January 25, 2000, which began at 8:00 a.m. Def. App. 1117-18, 1202-03a. The combined Department Head/Lieutenants' portion of the meeting ended at 8:45 a.m. Id. According to the meeting minutes, the following Lieutenants did not attend the January 25, 2000 USP Lewisburg Department Head/Lieutenants' meeting: (1) J. Bunch, (2) H. Fernandez, (3) K. Johnson, (4) G. McKinney, (5) J. Moralez, (6) V. Rigsby, and (7) D. Shaw. Def. App. 1117-18, 1204.

Response: Admitted. However, for purposes of this case and the instant motions, the last sentence states irrelevant facts.

23. According to the USP Lewisburg Daily Roster (Def. App. 1205-10), on January 25, 2000, Lt. Bledsoe was Evening Watch Activities Lieutenant, shift 23, 2:30 p.m.-10:30 pm. Def. App. 1118, 1205.

Response: Admitted.

24. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the January 25, 2000 USP Lewisburg Department Head/Lieutenants' meeting on overtime, and was not compensated for overtime in attending the January 25, 2000 Department Head/Lieutenants' meeting. Def. App. 1118.

Response: Admitted.

25. According to the meeting minutes, the USP Lewisburg Department Head/Lieutenants' meeting on February 22, 2000, began at 8:00 a.m. Def. App. 1118, 1211. According to the minutes, Lt. Bledsoe did not attend the February 22, 2000 meeting. Def. App. 1118, 1211, 1214, 1217.

Response: Admitted.

26. According to the USP Lewisburg Daily Roster (Def. App. 1214-19), on February 22, 2000, Lt. Bledsoe was on annual leave. Def. App. 1118, 1217.

Response: Admitted.

27. According to the meeting minutes, Lt. Bledsoe attended the USP Lewisburg Department Head/Lieutenants' meeting on March 21, 2000, which began at 8:00 a.m. Def. App. 1118, 1220.

Response: Admitted.

28. According to the USP Lewisburg Daily Roster (Def. App. 1223-28), on March 21, 2000, Lt. Bledsoe was Evening Watch Activities Lieutenant, shift 23, 2:30 p.m.-10:30 p.m. Def. App. 1119, 1223.

Response: Admitted.

29. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the March 21, 2000 Department Head/Lieutenants' meeting on overtime, and was not compensated for overtime in attending the Department Head/Lieutenants' meeting on March 21, 2000. Def. App. 1119.

Response: Admitted.

30. According to the meeting minutes, Lt. Bledsoe attended the USP Lewisburg Department Head/Lieutenants' meeting on April 18, 2000, which began at 8:00 a.m. Def. App. 1119, 1229-31. The combined Department Head/Lieutenants' portion of the meeting ended at 8:45 a.m. Id.

Response: Admitted.

31. According to the USP Lewisburg Daily Roster (Def. App. 1232-37), on April 18, 2000, Lt. Bledsoe was assigned to Evening Watch Activities Lieutenant, shift 23, 2:30 p.m.-10:30 p.m. Def. App. 1119, 1232.

Response: Admitted.

32. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the April 18, 2000 Department Head/Lieutenants' meeting on overtime, and was not compensated for overtime in attending the

Department Head/Lieutenants' meeting on April 18, 2000. Def. App. 1119-20.

Response: Admitted.

MDC Brooklyn, NY

33. The Metropolitan Detention Center ("MDC") Brooklyn, NY, is a detention center that houses approximately 2,800 inmates. Def. App. 304.

Response: Admitted.

34. MDC Brooklyn is comprised of two buildings: the East or old building, and the West or new building. Def. App. 46. The West Building opened in about April 2000. Id. There are two Control Centers, one for the East Building and one for the West Building. Id. There also are two Lieutenants' offices, one in the East Building and one in the West Building. Id.

Response: Admitted.

35. By memorandum dated June 19, 2003 (Exhibit F), MDC Brooklyn Warden Michael Zenk directed all staff that they "may not work outside their scheduled hours of work without approval or compensation." Def. App. 86-87, 108. He also directed all staff "to cease any such activity" and that "all overtime must be requested and approved, in writing, **by your supervisor and appropriate associate warden, in advance of being worked**." (Emphasis in original). Id. On or about June 19, 2003, Lt. Bledsoe received and read a copy of Warden Zenk's June 19, 2003 memorandum. Def. App. 19-20 (Bledsoe Dep. 71-74).

Response: Admitted. In addition, plaintiffs note that Warden Zenk's statements confirm that staff was working overtime without compensation and that he was concerned that staff could claim overtime pay for overtime work.

36. Lt. Bledsoe attended the MDC Brooklyn Department Head/Lieutenants' meeting on

June 24, 2003. Def. App. 114a. At the MDC Brooklyn Department Head/Lieutenants' meeting on June 24, 2003, Warden Zenk disseminated and discussed his June 19, 2003 memorandum. Def. App. 114d. As recorded in the meeting minutes, Warden Zenk "disseminated a memorandum concerning Portal-to-Portal Issues/Assigned Work Hours," and stated that

> Staff must be compensated for work performed outside of their scheduled hours of work. Staff must get approval in writing of all such time from their first line supervisor and appropriate associate warden, in advance of being worked. It is imperative that we follow the policy regarding portal-to-portal and the issues associated with staff being properly compensated for their work time. The memorandum is self explanatory.

Def. App. 114d.

Response: Admitted. In addition, plaintiffs note that Warden Zenk's statements confirm that staff was working overtime without compensation and that he was concerned that staff could claim overtime pay for overtime work.

37. At the MDC Brooklyn Department Head meeting on December 9, 2003 (Exhibit H), Warden Zenk again gave the instructions that he had given in his June 19, 2003 memorandum. Def. App. 86-87, 109, 113-14.

Response: Admitted. In addition, plaintiffs note that Warden Zenk's statements confirm that staff was working overtime without compensation and that he was concerned that staff could claim overtime pay for overtime work.

38. During the period May 21, 2000 to February 2005, Lt. Bledsoe reported to MDC Brooklyn Captain Salvatore Lopresti. Def. App. 304. During the period February 2005 to the present, Lt. Bledsoe has reported to MDC Brooklyn Captain Ricky Schoenfelder. Def. App. 1333.

Response: Admitted.

39. According to MDC Brooklyn Quarterly Rosters and Lt. Bledsoe's assignment cards, Lt. Bledsoe has had the following quarterly assignments:

(1) 6/18/2000-9/16/2000, SR-1, variable shifts, Tuesdays and Fridays off;

(2) 9/17/2000-12/16/2000, SR-1, variable shifts, Tuesdays and Fridays off;

(3) 12/17/2000-3/17/2001, Security ("SEC") Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m., Mondays and Tuesdays off;

(4) 3/18/2001-6/16/2001, SEC Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m., Mondays and Tuesdays off (based on his assignment card);

(5) 6/17/2001-9/15/2001, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Tuesdays and Wednesdays off;

(6) 9/16/2001-12/15/2001, Admax Lieutenant, Evening Watch (12 hour emergency roster)(8:00 p.m.-8:00 a.m.), Tuesdays and Wednesdays off (based on his assignment card);

(7) 12/16/2001-3/16/2002, Admax Lieutenant, Morning Watch (midnight-8:00 a.m.), Mondays and Tuesdays off;

(8) 3/31/2002-6/29/2002, Special Investigative Supervisor ("SIS") Lieutenant, various shifts, Mondays and Tuesdays off;

(9) 6/30/2002-9/28/2002, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(10) 9/29/2002-12/28/2002, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(11) 12/29/2002-3/29/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(12) 3/30/2003-6/28/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(13) 6/29/2003-9/27/2003, SIS Lieutenant, variable shifts, Mondays and Tuesdays off;

(14) 9/28/2003-12/27/2003, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Sundays and Mondays off;

(15) 12/28/2003-3/27/2004, Operations Lieutenant, Morning Watch (midnight-8:00 a.m.), Sundays and Mondays off;

(16) 3/28/2004-6/26/2004, Special Housing Unit ("SHU") Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m., Sundays and Saturdays off;

(17) 6/27/2004-9/25/2004, Operations Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m., Fridays and Saturdays off;

(18) 9/26/2004-1/1/2005, SEC Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m., Sundays and Mondays off;

(19) 1/2/2005-3/26/2005, Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight, Thursdays and Fridays off;

(20) 3/27/2005-6/25/2005, SR-2, variable shifts, Fridays and Saturdays off;

(21) 6/26/2005-9/24/2005, Operations Lieutenant, shift 8 (8:00 a.m.-4:00 p.m.), Fridays and Saturdays off;

(22) 9/25/2005-1/7/2006, SEC Lieutenant, 2:00 p.m.-10:00 p.m., Wednesdays and Thursdays off;

(23) 1/8/2006-3/25/2006, East Activities Lieutenant, 4:00 p.m.-midnight, Wednesdays and Thursdays off;

(24) 3/26/2006-6/24/2006, Operations Lieutenant, midnight-8:00 a.m., Sundays and Mondays off;

(25) 6/25/2006-9/23/2006, Operations Lieutenant, midnight-8:00 a.m. (based on his assignment card);

(26) 9/24/2006-12/23/2006, Operations Lieutenant, midnight-8:00 a.m., Sundays and Mondays off.

Def. App. 307-08, 1335.

Response: Admitted.

40. Lt. Bledsoe's assignments on the Quarterly Roster were modified by Daily Rosters, which determined his daily assignments. Def. App. 308, 1335.

Response: Admitted.

41. For the period March 27, 2005 to January 2, 2007, Lt. Bledsoe's daily assignments are recorded in the document contained in Defendant's Appendix at pages 1462-74.

Response: Admitted.

42. During the period May 2000 to present, MDC Brooklyn Lieutenants have not been required in writing to pick up batteries for their radios at the Control Center prior to their shift-starting time. Def. App. 308.

Response: Admitted in part. This statement rests upon the self-serving declaration of Captain Salvatore Lopresti, and he merely stated a generality and did not address the issue of whether the BOP required Plaintiff Bledsoe in particular to pick up a battery before his shift starting time. The MDC Post Orders require lieutenants to report for duty in the proper uniform. The required equipment includes certain key rings, a radio, handcuffs and a handcuff key. App. 86, 89, 92.

43. During the period May 2000 to present, MDC Brooklyn Lieutenants have not been required in writing to wait at the institution after their shift has ended for an inmate count to clear. Def. App. 308. For example, the Day Watch Operations Lieutenant was not required in writing to stay after the end of the shift until there was a clear count of the inmates. Id.

Response: Admitted in part. Supervisors told lieutenants that they had to wait until there was a clear count. See Tessel Depo. 36-37 (Supp. App. 3-5), Depo. Of Joseph Cuciti (Supp. App. 53).[2]

MDC Brooklyn Operations Lieutenant

44. During the period May 2000 to present, at MDC Brooklyn, the incoming Operations Lieutenant obtained his keys and radio directly from the outgoing Operations Lieutenant and did not swap or exchange chits in order to obtain the keys and radio. Def. App. 310 (Lopresti); Def. App. 1336, 1338-89 (Schoenfelder); Def. App. 1120-21 (Ey). For example, the incoming

---

[2] "Supp. App." refers to Plaintiffs' Supplemental Appendix, infra.

Morning Watch Operations Lieutenant obtained his keys and radio directly from the Evening Watch Operations Lieutenant. Id. The incoming Day Watch Operations Lieutenant obtained his keys and radio directly from the Morning Watch Operations Lieutenant. Id. The incoming Evening Watch Operations Lieutenant obtained his keys and radio directly from the Day Watch Operations Lieutenant. Id. The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id. The outgoing Operations Lieutenant did not drop off the keys or radio at the Control Center on his way out of the institution. Id. As Operations Lieutenant, Lt. Bledsoe did not drop off any keys or radio at the Control Center on his way out of the institution. Id.

Response: Admitted.

45. According to the MDC Brooklyn Quarterly Roster for the period June 17, 2001 to September 15, 2001 (Def. App. 921-25), Lt. Bledsoe was assigned as Operations Lieutenant, Morning Watch, midnight-8:00 a.m., Tuesdays and Wednesdays off. Def. App. 307, 923. According to the same Quarterly Roster, Lieutenants also were assigned as Operations Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m., and Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 309, 923, 925. During this quarter, there was a 15-minute period of overlap between the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant at 7:45 a.m.-8:00 a.m. Id. There was no period of overlap between the shifts of the Evening Watch Operations Lieutenant and the Morning Watch Operations Lieutenant. Id.

Response: Admitted.

46. According to the MDC Brooklyn Quarterly Roster for the period September 28, 2003-December 27, 2003 (Def. App. 1020-34), Lt. Bledsoe was assigned as Operations

Lieutenant, Morning Watch, midnight-8:00 a.m., Sundays and Mondays off. Def. App. 308, 1020. According to the same Quarterly Roster, other Lieutenants were assigned as Operations Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m., and Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 309, 1024, 1029. During this quarter, there was a 15-minute period of overlap between the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant at 7:45 a.m.-8:00 a.m. Id. There was no period of overlap between the shifts of the Evening Watch Operations Lieutenant and the Morning Watch Operations Lieutenant. Id.

Response: Admitted.

47. According to the MDC Brooklyn Quarterly Roster for the period December 28, 2003 to March 27, 2004 (Def. App. 1035-47), Lt. Bledsoe was assigned as Operations Lieutenant, Morning Watch, midnight-8:00 a.m., Sundays and Mondays off. Def. App. 308, 1034. According to the same Quarterly Roster, other Lieutenants were assigned as Operations Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m., and Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 309, 1038, 1043. During this quarter, there was a 15-minute period of overlap between the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant at 7:45 a.m.-8:00 a.m. Id. There was no period of overlap between the shifts of the Evening Watch Operations Lieutenant and the Morning Watch Operations Lieutenant. Id.

Response: Admitted.

48. According to the MDC Brooklyn Quarterly Roster for the period June 27, 2004 to September 25, 2004 (Def. App. 1063-76), Lt. Bledsoe was assigned as Operations Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m., with Fridays and Saturdays off. Def. App. 308, 1067. According to the same Quarterly Roster, other Lieutenants were assigned to Operations

Lieutenant, Morning Watch, midnight-8:00 a.m., and Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 309, 1063, 1067, 1072. During this quarter, there was a 30-minute period of overlap between shifts of the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant at 7:30 a.m.-8:00 a.m. Id. There was no period of overlap between the shifts of the Day Watch Operations Lieutenant and the Evening Watch Operations Lieutenant, and there was no period of overlap between the shifts of the Evening Watch Operations Lieutenant and the Morning Watch Operations Lieutenant. Id.

Response: Admitted.

49. According to the MDC Brooklyn Quarterly Roster for the period January 2, 2005 to March 26, 2005 (Def. App. 1092-1105), Lt. Bledsoe was assigned as Operations Lieutenant, Evening Watch, 4:00 p.m.-midnight, with Thursdays and Fridays off. Def. App. 308, 1101, 1335. According to the same Quarterly Roster, other Lieutenants were assigned as Operations Lieutenant, Morning Watch, midnight-8:00 a.m., and Operations Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m. Def. App. 309, 1092, 1096. During this quarter, there was a 30-minute period of overlap between the shifts of the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant at 7:30 a.m.-8:00 a.m. Id. There was no period of overlap between the shifts of the Day Watch Operations Lieutenant and the Evening Watch Operations Lieutenant, and there was no period of overlap between the shifts of the Evening Watch Operations Lieutenant and of the Morning Watch Operations Lieutenant. Id.

Response: Admitted.

50. According to the MDC Brooklyn Quarterly Roster for the period June 26, 2005 to September 24, 2005, Lt. Bledsoe was assigned as Operations Lieutenant, Day Watch, 8:00 a.m.-

4:00 p.m., with Fridays and Saturdays off. Def. App. 1335. According to that same Quarterly Roster, other Lieutenants also were assigned as Morning Watch Operations Lieutenant, midnight-8:00 a.m., and Evening Watch Operations Lieutenant, 4:00 p.m.-midnight. Def. App. 1337. During this quarter, there was no period of overlap between the shifts of the Day Watch Operations Lieutenant and of the Evening Watch Operations Lieutenant, and there was no period of overlap between the shifts of the Morning Watch Operations Lieutenant and of the Day Watch Operations Lieutenant. Id.

Response: Admitted.

51. According to the MDC Brooklyn Quarter Rosters, Lt. Bledsoe was assigned as Operations Lieutenant, Morning Watch, midnight-8:00 a.m. for three successive quarters, together covering the period March 26, 2006 to December 23, 2006. Def. App. 1335. According to the Quarterly Rosters, other Lieutenants also were assigned as Day Watch Operations Lieutenant, 8:00 a.m.-4:00 p.m., and Evening Watch Operations Lieutenant, 4:00 p.m.-midnight. Def. App. 1337. During this period, there was no period of overlap between the shifts of the Morning Watch Operations Lieutenant and the Day Watch Operations Lieutenant, and there was no period of overlap between the shifts of the Morning Watch Operations Lieutenant and the Evening Watch Operations Lieutenant. Id.

Response: Admitted.

MDC Brooklyn Security Lieutenant

52. During the period May 2000 to present, at MDC Brooklyn, the incoming SEC Lieutenant obtained his keys and radio directly from the outgoing SEC Lieutenant and did not swap or exchange chits in order to obtain the keys and radio. Def. App. 310 (Lopresti), 1336

(Schoenfelder); Def. App. 1120-21 (Ey). For example, the incoming Morning Watch Operations SEC obtained his keys and radio directly from the Evening Watch SEC Lieutenant. Id. The incoming Day Watch SEC Lieutenant obtained his keys and radio directly from the Morning Watch SEC Lieutenant. Id. The incoming Evening Watch SEC Lieutenant obtained his keys and radio directly from the Day Watch SEC Lieutenant. Id. The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id. A SEC Lieutenant did not drop off the keys and radio at the Control Center on his way out of the institution. Id. As SEC Lieutenant, Lt. Bledsoe did not drop off the keys or a radio at the Control Center on his way out of the institution. Id.

Response: Admitted.

53. According to the MDC Quarterly Roster for the period December 17, 2000 to March 17, 2001 (Def. App. 911-15), Lt. Bledsoe was assigned as SEC Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m. Def. App. 307, 913, 915. According to that same roster, other Lieutenants were assigned as SEC Lieutenant, Morning Watch, midnight - 8:00 a.m. and SEC Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 913, 915. There was a 15-minute period of overlap between the Day Watch SEC Lieutenant and the Evening Watch SEC Lieutenant, at 4:00 p.m.-4:15 p.m. Id. There was a 15-minute period of overlap between the Morning Watch SEC Lieutenant and the Day Watch SEC Lieutenant, at 7:45 a.m.-8:00 a.m. Id.

Response: Admitted.

54. According to his assignment card for the period March 18, 2001 to June 16, 2001 (Def. App. 900), Lt. Bledsoe was assigned as SEC Lieutenant, Day Watch, 7:45 a.m.-4:15 p.m.. Def. App. 307, 913, 915. According to the Quarterly Roster for that same period (Def. App. 916-

20), other Lieutenants were assigned as SEC Lieutenant, Morning Watch, midnight - 8:00 a.m. and SEC Lieutenant, Evening Watch, 4:00 p.m.-midnight. Def. App. 309, 918, 920. There was a 15-minute period of overlap between the Day Watch SEC Lieutenant and the Evening Watch SEC Lieutenant, at 4:00 p.m.-4:15 p.m. Id. There was a 15-minute period of overlap between the Morning Watch SEC Lieutenant and the Day Watch SEC Lieutenant, at 7:45 a.m.-8:00 a.m. Id.

Response: Admitted.

55. According to the Quarterly Roster for the period September 26, 2004 to December 25, 2004 (Def. App. 1077-91), Lt. Bledsoe was assigned as SEC Lieutenant, Day Watch, 7:30 a.m.-4:00 p.m. Def. App. 308, 1081. According to that same Quarterly Roster, other Lieutenants were assigned as SEC Lieutenant, Morning Watch, midnight - 8:00 a.m. and SEC Lieutenant, Evening Watch, 4:00 p.m. - midnight. Def. App. 309, 1077, 1086. During this quarter, there was a 30-minute period of overlap between the Morning Watch SEC Lieutenant and the Day Watch SEC Lieutenant, at 7:30 a.m.-8:00 a.m. Def. App. 1077, 1081, 1086. There was no period of overlap of the Day Watch SEC Lieutenant and the Evening Watch SEC Lieutenant. Id.

Response: Admitted.

56. According to the MDC Brooklyn Quarterly Roster for the period September 25, 2005 to January 7, 2006 (Def. App. 1390-1402), Lt. Bledsoe was assigned as SEC Lieutenant, Evening Watch, 2:00 p.m-10:00 p.m. Def. App. 1335, 1398. According to that same Quarterly Roster, other Lieutenants were assigned as SEC Lieutenant, Morning Watch, 10:00 p.m.-6:00 a.m., and SEC Lieutenant, Day Watch, 6:00 a.m.-2:00 p.m. Def. App. 1390, 1394. During this quarter, there was no period of overlap between the Morning Watch SEC Lieutenant and the Day Watch

SEC Lieutenant. Id. There also was no period of overlap between the Day Watch SEC Lieutenant and the Evening Watch SEC Lieutenant. Id. There also was no period of overlap between the Evening Watch SEC Lieutenant and the Morning Watch SEC Lieutenant. Id.

Response: Admitted.

MDC Brooklyn East Activities Lieutenant

57. Captain Schoenfelder changed the name of the SEC Lieutenant to "East Activities Lieutenant." Def. App. 1336, 1403-16. At MDC Brooklyn, the East Activities Lieutenant has obtained his keys and radio from the East Activities Lieutenant on the prior shift and did not swap chits in order to obtain the keys and radio. Def. App. 1336. East Activities Lieutenants did not drop off any chits, keys or radios at the Control Center. Id.

Response: Admitted.

58. According to the MDC Brooklyn Quarterly Roster for the period January 8, 2006 to March 25, 2006 (Def. App. 1403-16), Lt. Bledsoe was assigned as East Activities Lieutenant, Evening Watch, 4:00 p.m.-midnight, Wednesdays and Thursdays off. Def. App. 1335, 1411. According to the same Quarterly Roster, other Lieutenants were assigned as East Activities Lieutenant, Morning Watch, midnight-8:00 a.m., and East Activities Lieutenant, Day Watch, 8:00 a.m.-4:00 p.m. Def. App. 1338, 1403, 1407. During this quarter, there was no period of overlap between the Evening Watch East Activities Lieutenant and the Day Watch Activities Lieutenant. Id. There was no period of overlap between the Evening Watch East Activities Lieutenant and the Morning Watch East Activities Lieutenant. Id. The incoming East Activities Lieutenant and the outgoing East Activities Lieutenant would meet, usually in the Lieutenants' office in the East Building, and the outgoing Lieutenant gave the keys, radio, and verbal or

written information to the incoming Lieutenant. Id.

Response: Admitted.

MDC Brooklyn Admax Lieutenant

59. The MDC Brooklyn Admax Lieutenant assignment was created after September 11, 2001. Def. App. 309-10. The shifts for Admax Lieutenants initially were 12 hours, including four hours of overtime pay. Id. One Admax Lieutenant worked 8:00 a.m.-8:00 p.m. and the other worked 8:00 p.m. to 8:00 a.m. Id. Admax Lieutenants did not use chits to obtain their keys or radios. Def. App. 310-11. An incoming Admax Lieutenant went directly to the unit and obtained the keys and radio from the Admax Lieutenant whom he relieved. Id. The exchange of keys, radio and information between the Admax Lieutenants usually took a couple of minutes. Id. An Admax Lieutenant walked directly out of the institution and did not drop off keys, radio, or chits at the Control Center. Id.

Response: Plaintiffs admit only the first four sentences. An incoming lieutenant had to pick up a battery from the Control Center. Sometimes the line is long. Def. Depo. 10 (Bledsoe Depo. 35-36. Walking through the grills, picking up a battery, and making the exchange with the prior lieutenant takes approximately 5 ½ minutes.

60. According to his assignment card, during the period September 16, 2001 to December 15, 2001, Lt. Bledsoe was assigned as Admax Lieutenant, Evening Watch, 8:00 p.m.-8:00 a.m. Def. App. 307. He worked a 12-hour shift and received four hours of overtime pay daily. Id. As Admax Lieutenant, Lt. Bledsoe did not drop off chits at the Control Center and he obtained the keys and radio directly from the Admax Lieutenant whom he relieved. Id. As Admax Lieutenant, Lt. Bledsoe walked directly out of the institution and did not drop off the keys, radio,

or chits at the Control Center when leaving the institution. Id.

Response: Admitted.

61. Effective the quarter December 16, 2001-March 16, 2002, the shifts for Admax Lieutenants were as follows: (1) Morning Watch, midnight - 8:00 a.m.; (2) Day Watch, 7:45 a.m.-4:00 p.m.; and (3) Evening Watch, 4:00 - midnight. Def. App. 307, 309-11. According to the MDC Brooklyn Quarterly Roster for the period December 16, 2001-March 16, 2002, Lt. Bledsoe was assigned as Admax Lieutenant, Morning Watch, midnight -8:00 a.m. Id.

Response: Admitted.

62. It would have been difficult to measure and record the number of minutes that Operations Lieutenants, Security Lieutenants, East Activities Lieutenants, and Admax Lieutenants spent exchanging the keys, radio and information. Def. App. 311, 1338-39. Lieutenants engage in personal pleasantries and conversations, and it would not have been practical to measure and record the amount of time Lieutenants actually spent conversing on work matters, not including time spent conversing on personal ones. Id. The amount of time Lieutenants spend conversing also would vary. Id. Since the amount of time spent could vary each day, such measurements would have to be attempted daily, each time the shift changes. Id. It does not take more than a couple of minutes for a Lieutenant to convey to his relief any pertinent information, and the exchange of keys and radio, including counting the keys, can be done simultaneously and in less than one minute. Id. Most important information already is recorded in the Lieutenants' log and other reports and documents which are readily available to Lieutenants in hard copy and on the Lieutenants' computer. Id.

Response: Denied. The preceding "fact" is all opinion, not a fact. Actually the BOP can

easily measure when plaintiffs and others start and stop work by asking them to record their time on time clocks near the control center. On the other hand, if the BOP cannot measure how long it takes, it is estopped from arguing that the time is de minimis.

MDC Brooklyn SIS Lieutenant

63. As SIS Lieutenant, Lt. Bledsoe picked up his office keys at the Control Center upon his arrival, and returned the office keys and any equipment to the Control Center before leaving the institution. Def. App. 312, 1121, 1338.

Response: Admitted.

64. As SIS Lieutenant, Lt. Bledsoe was to be in the key line at his shift-starting time. Def. App. 312, 1121.

Response: Admitted.

65. As SIS Lieuteant (sic), Lt. Bledsoe was to be at the Control Center dropping off the office keys and any equipment at his shift-ending time. Def. App. 312, 1121.

Response: Admitted.

MDC Brooklyn Special Housing Unit Lieutenant

66. As SHU Lieutenant, Lt. Bledsoe picked up his keys and radio at the Control Center upon his arrival, and returned them to the Control Center before leaving the institution. Def. App. 311-12, 1121, 1337-38.

Response: Admitted.

67. As SHU Lieutenant, Lt. Bledsoe was to be in the key line at his shift-starting time. Def. App. 311-12, 1121, 1337-38.

Response: Admitted.

68. As SHU Lieutenant, Lt. Bledsoe was to be at the Control Center dropping off his keys and radio at his shift-ending time. Def. App. 312, 1121, 1338.

Response: Admitted.

Lieutenants' Meetings at MDC-Brooklyn

69. During the period May 2000 to present, MDC Brooklyn has held Lieutenants' meetings as a combined Department Head/Lieutenants' meeting. Def. App. 312, 1121. The combined meetings usually were followed by a closed Lieutenants' meeting. Id. The meetings usually were held on a monthly basis. Id. However, sometimes monthly meetings were not held. Id.; Def. App. 336-37.

Response: Admitted.

70. MDC Brooklyn Captain Lopresti did not order or require in writing that the Lieutenants who were not on duty at the time of the combined Department Head/Lieutenants' meeting and subsequent, closed Lieutenants' meeting attend such meetings. Def. App. 312, 1121. Captain Lopresti did not order or require in writing that the Lieutenants who were not on their scheduled shift, who were on their day off, or who were on leave at the time of such meetings attend the meetings. Id.

Response:

71. According to the meeting minutes and MDC Brooklyn Daily Rosters, during the period May 2000 to February 2005, Lt. Bledsoe did not attend the following MDC Brooklyn Department Head/Lieutenants' meetings:

(1) December 26, 2000 (day off);
(2) January 23, 2001;
(3) February 20, 2001 (day off);
(4) October 29, 2001 (off shift);
(5) November 27, 2001 (on duty);

(6) February 19, 2002 (training);
(7) March 19, 2002 (day off);
(8) August 22, 2002;
(9) October 28, 2002 (day off);
(10) January 21, 2003 (day off);
(11) February 25, 2003 (day off);
(12) March 18, 2003 (day off);
(13) April 29, 2003 (day off);
(14) May 27, 2003 (training);
(15) August 19, 2003 (day off);
(16) September 30, 2003 (off shift);
(17) October 28, 2003 (off shift);
(18) November 25, 2003 (off shift);
(19) December 23, 2003 (off shift);
(20) January 20, 2004 (off shift);
(21) February 17, 2004 (off shift);
(22) April 17, 2004 (S/L);
(23) August 31, 2004 (training);
(24) September 28, 2004 (A/L);
(25) December 21, 2004 (off shift); and
(26) February 15, 2005 (off shift).

Def. App. 320-21.

Response: Admitted.

72. According to the meeting minutes and MDC Brooklyn Daily Rosters, during the period March 2005 to December 2006, Lt. Bledsoe did not attend the following MDC Brooklyn Department Head/Lieutenants' meetings:

(1) March 29, 2005 (off shift);
(2) April 26, 2005 (off shift);
(3) May 10, 2005 (A/L);
(4) June 21, 2005 (S/L);
(5) July 5, 2005 (A/L);
(6) November 22, 2005 (off shift);
(7) December 6, 2005 (off shift);
(8) January 18, 2006 (day off);
(9) March 7, 2006 (off shift);
(10) June 13, 2006 (off shift);
(11) September 12, 2006 (A/L); and
(12) November 7, 2006 (off shift).

Def. App. 1342-43.

Response: Admitted.

73. During MDC Brooklyn Captain Lopresti's tenure, the procedure for Lieutenants to obtain compensation for attendance, outside of their scheduled shift, at combined Department Head/Lieutenants' meetings and subsequent, closed Lieutenants' meeting was that Lieutenants certified on an Overtime Authorization Form that they had attended such meetings on overtime and submitted such forms to the Captain or the Deputy Captain. Def. App. 313-14, 1122-23. Lieutenants who attended the meeting outside of their scheduled shift would indicate such information on the Overtime Authorization Form and write a "C" in the box indicating that they requested "Compensatory Time" for attending the meeting. Id. The Captain and the Deputy Captain did not complete Overtime Authorization Forms for Lieutenants. Id. It was a Lieutenant's responsibility to complete and submit an Overtime Authorization Form. Id. Captain Lopresti routinely signed off on such Overtime Authorization Forms, which were submitted up the chain of command to the Associate Warden, and the Warden, for approval. Id.

Response: Denied in part: Usually, at the meetings the Admin. Lieutenant would pass around an overtime form among the lieutenants and type it up. When the form was not circulated, the Admin. Lieutenant, per the Deputy Captain, told Lt. Bledsoe that he would take care of it. See Def. App. 16 (Bledsoe Depo. 59-61).

74. During Captain Lopresti's tenure, Lt. Bledsoe occasionally submitted Overtime Authorization Forms for attending Department Head/Lieutenants' meetings and subsequent, closed Lieutenants' meetings at times when he was not on his scheduled shift. Def. App. 314, 380-81, 416-17, 447-48. Captain Lopresti or the Deputy Captain signed off on such forms, which

were submitted up the chain of command to the Associate Warden and Warden, for approval. Id. During Captain Lopresti's tenure at MDC Brooklyn, Lt. Bledsoe never brought to Captain Lopresti's attention his failure to be compensated for attending these meetings. Def. App. 314; Def. App. 17 (Bledsoe Dep. 65).

Response: Plaintiffs admit the first two sentence of the statement. Plaintiff Bledsoe testified, "Since I have been around I never saw the lieutenant just go ahead and type it up for himself for the lieutenant's meetings." Def. App. 17 (Bledsoe Depo. 64-65). It was common practice for an employer to tell his/her hours to another lieutenant to be recorded. Id.

75. According to the meeting minutes (Def. App. 375-77), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on June 27, 2000, which began at 8:00 a.m. Def. App. 314-15, 375-77. The combined Department Head./Lieutenants' portion of the meeting ended at 9:25 a.m. Id. According to an Overtime Authorization Form, the following Lieutenants were not on their scheduled shift during the meeting and were compensated with compensatory time for attending the June 27, 2000 meeting: (1) E. Soto; (2) J. Pena; (3) R. Gorbea; (4) J. Cuciti; (5) A. Joseph; (6) P. Johnson; (7) K. Snyder; (8) R. Nared; and (9) W. Moran. Def. App. 315, 378-81.

Response: Admitted.

76. A MDC Brooklyn Daily Roster for June 27, 2000 is not available, and it is not possible to determine based upon the records what Lt. Bledsose's (sic) assigned shift was on June 27, 2000. Def. App. 43, 315.

Response: Admitted.

77. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the June 27, 2000 meeting on overtime. Def.

App. 315.

Response: Admitted in part and denied in part. The June 27, 2000 meeting minutes list Lt. Bledsoe as one of the staff present at this meeting.

78. Lt. Bledsoe was not ordered in writing to attend the June 27, 2000 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Admitted that BOP did not specifically order Plaintiff Bledsoe in writing to attend this particular meeting. However, for the reasons plaintiffs have stated in their briefs in this case and others, the Court should interpret BOP documents as requiring Plaintiff Bledsoe to work overtime at such meeting generally.

79. According to the meeting minutes (Def. App. 382-83), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on August 14, 2000, which began at 3:05 p.m. Def. App. 315. The combined Department Head/Lieutenants' portion of the meeting ended at 4:10 p.m. Id.

Response: Admitted.

80. According to the MDC Brooklyn Daily Roster (Def. App. 384-89), on August 14, 2000, Lt. Bledsoe was Morning Watch Operations Lieutenant, midnight to 8:00 a.m. Def. App. 315, 384.

Response: Admitted.

81. According to his time and attendance records and an Overtime Authorization Form (Def. App. 390), Lt. Bledsoe also received overtime pay for working from 8:00 a.m.- 4:00 p.m. on August 14, 2000. Def. App. 315-16, 871-73. Lt. Bledsoe was compensated with overtime pay for attending the August 14, 2000 Department Head/Lieutenants' meeting until 4:00 p.m. Id.

Response: Admitted.

82. Lt. Bledsoe was not ordered in writing to attend the August 14, 2000 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Admitted that BOP did not specifically order Plaintiff Bledsoe in writing to attend this particular meeting. However, for the reasons plaintiffs have stated in their briefs in this case and others, the Court should interpret BOP documents as requiring Plaintiff Bledsoe to work overtime at such meeting generally.

83. According to the meeting minutes (Def. App. 391-92), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on September 19, 2000, which began at 1:00 p.m. Def. App. 316, 391-92. The combined Department Head/Lieutenants' portion of the meeting ended at 2:30 p.m. Id. According to the minutes and the Daily Roster (Def. App. 393-98), the following Lieutenants did not attend the September 19, 2000 meeting: (1) W. Moran (day off); (2) T. Ventiere (day off); (3) D. Tessel (day off); (4) R. Nared (day off); (5) J. Rosa (training); (6) J. Pena (A/L); and (7) R. Gorbea (day off). Def. App. 316, 393-98.

Response: Admitted.

84. According to the MDC Brooklyn Daily Roster (Def. App. 393-98), on September 19, 2000, Lt. Bledsoe was Morning Watch SEC Lieutenant, midnight to 8:00 a.m. Def. App. 316, 393.

Response: Admitted.

85. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the September 19, 2000 meeting on overtime and was not compensated for attending the meeting. Def. App. 316.

Response: Admitted.

86. Lt. Bledsoe was not ordered in writing to attend the September 19, 2000 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Admitted that BOP did not specifically order Plaintiff Bledsoe in writing to attend this particular meeting. However, for the reasons plaintiffs have stated in their briefs in this case and others, the Court should interpret BOP documents as requiring Plaintiff Bledsoe to work overtime at such meeting generally.

87. According to the meeting minutes (Def. App. 399-401), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on October 31, 2000, which began at 1:00 p.m. Def. App. 316, 399-401. The combined Department Head/Lieutenants' portion of the meeting ended at 2:15 p.m. Id. According to the minutes and the Daily Roster (Def. App. 402-07), the following Lieutenants did not attend the October 31, 2000 meeting: (1) D. Tessel (day off); (2) T. Ventiere (day off); (3) R. Gorbea (day off); (4) S. Barrere (S/L); and (5) L. Hernandez (on duty). Def. App. 316, 402-07.

Response: Admitted.

88. According to the MDC Brooklyn Daily Roster (Def. App. 402-07), on October 31, 2000, Lt. Bledsoe was Morning Watch SEC Lieutenant, midnight to 8:00 a.m. Def. App. 316, 402.

Response: Admitted.

89. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the October 31, 2000 meeting on overtime and was not compensated for attending the meeting. Def. App. 316-17.

Response: Admitted.

90. Lt. Bledsoe was not ordered in writing to attend the October 31, 2000 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Admitted that BOP did not specifically order Plaintiff Bledsoe in writing to attend this particular meeting. However, for the reasons plaintiffs have stated in their briefs in this case and others, the Court should interpret BOP documents as requiring Plaintiff Bledsoe to work overtime at such meeting generally.

91. According to the meeting minutes (Def. App. 451-53), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on June 27, 2001, which began at 1:25 p.m. Def. App. 317, 451-53. According to the minutes, the following Lieutenants did not attend the meeting: (1) V. Wash (annual leave ("A/L"); (2) D. Tessel (A/L); (3) S. Pray (sick leave ("S/L"); (4) D. Ortiz (leave without pay ("LWOP"); (5) L. Littles (A/L); (6) A. Joseph (LWOP); and (7) S. Barrere (A/L). Id. According to Overtime Authorization Forms, the following Lieutenants were not on their scheduled shift during the June 27, 2001 meeting and were compensated with compensatory time for their overtime: (1) D. White, and (2) W. Moran. Def. App. 317, 454-55.

Response: Admitted.

92. A MDC Brooklyn Daily Roster for June 27, 2001 is not available, and it is not possible to determine based upon the records what Lt. Bledsoe's assigned shift was on June 27, 2001. Def. App. 43, 317.

Response: Plaintiffs cannot admit this since they do not know whether this is true or false.

93. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the June 27, 2001 meeting on overtime. Def.

App. 317.

Response: Denied in part. Lt. Bledsoe is listed in the June 27, 2001 meeting minutes as one of the staff present.

94. According to the meeting minutes (Def. App. 456-57), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on July 24, 2001, which began at 1:00 p.m. Def. App. 317, 456-57. The combined Department Head/Lieutenants' portion of the meeting ended at 2:20 p.m. Id. According to the minutes, six Lieutenants, including Lt. Bledsoe, attended the meeting. Id. According to the Quarterly Roster for Lieutenants for the period June 17, 2001-September 15, 2001 (Def. App. 921-25), there were approximately 20 Lieutenants employed at MDC Brooklyn at that time. Def. App. 317, 921-25.

Response: Admitted.

95. A MDC Brooklyn Daily Roster for July 24, 2001 is not available, and it is not possible to determine based upon the records what Lt. Bledsoe's assigned shift was on July 24, 2001. Def. App. 43, 317-18.

Response: Admitted.

96. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the July 24, 2001 meeting on overtime. Def. App. 318.

Response: Admitted.

97. Lt. Bledsoe was not ordered in writing to attend the July 24, 2001 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Denied. An earlier e-mail from Associate Warden, James Sherman, dated

May 30, 2001, indicated that all lieutenants meetings were mandatory.

98. According to the meeting minutes (Def. App. 458-60), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on August 23, 2001, which began at 1:25 p.m. Def. App. 318, 458-60. The combined Department Head/Lieutenants' portion of the meeting ended at 3:00 p.m. Id. According to the Daily Roster (Def. App. 461-66) and the meeting minutes, the following Lieutenants did not attend the August 23, 2001 meeting: (1) E. Torres (off shift); (2) R. Denjen (on shift); (3) R. Gorbea (off shift); (4) D. White (off shift); (5) D. Tessel (day off); (6) S. Pray (A/L); (7) A. Joseph (LWOP); and (8) D. Ortiz (LWOP). Def. App. 318, 336, 461-66.

Response: Admitted.

99. According to the MDC Brooklyn Daily Roster (Def. App. 461-66), on August 23, 2001, Lt. Bledsoe was Morning Watch Operations Lieutenant, midnight to 8:00 a.m. Def. App. 318, 461.

Response: Admitted.

100. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the August 23, 2001 meeting on overtime and was not compensated for attending the meeting. Def. App. 318.

Response: Admitted.

101. Lt. Bledsoe was not ordered in writing to attend the August 23, 2001 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Denied. An earlier e-mail from Associate Warden, James Sherman, dated May 30, 2001, indicated that all lieutenants meetings were mandatory.

102. According to the meeting minutes (Def. App. 488-90), Lt. Bledsoe attended the

Department Head/Lieutenants' meeting on January 22, 2002, which began at 1:00 p.m. Def. App. 318, 488-90. The combined Department Head/Lieutenants' portion of the meeting ended at 2:10 p.m. Id. According to the meeting minutes and the Daily Roster (Def. App. 491-96), the following Lieutenants did not attend the January 22, 2002 meeting: (1) A. Joseph (training); (2) S. Barrere (off shift); (3) D. White (day off); (4) W. Moran (off shift); (5) R. Denjen (S/L); (6) M. Wilkins (A/L); (7) R. Gorbea (day off); (8) E. Torres (day off); (9) V. Wash (A/L); (10) W. Beck (FAM/L); (11) J. Lane (off shift); (12) H. Gussak (off shift); and (13 ) C. Cole (on duty). Def. App. 318-19, 337.

Response: Admitted.

103. According to the MDC Brooklyn Daily Roster (Def. App. 491-96), on January 22, 2002, Lt. Bledsoe was on his day off. Def. App. 319.

Response: Admitted.

104. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the January 22, 2002 meeting on overtime and was not compensated for attending the meeting. Def. App. 319.

Response: Admitted.

105. Lt. Bledsoe was not ordered in writing to attend the January 22, 2002 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Denied.

106. According to the meeting minutes (Def. App. 520-22), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on September 17, 2002, which began at 1:20 p.m. Def. App. 319, 520-22. The combined Department Head/Lieutenants' portion of the meeting ended at

2:35 p.m. Id. According to the meeting minutes and the Daily Roster (Def. App. 523-29), the following Lieutenants did not attend the September 17, 2002 meeting: (1) F. Maldonado (on duty); (2) D. Tessel (off shift); (3) T. Cush (off shift); (4) D. Ortiz (day off); (5) M. Mundo (off shift); (6) J. Maldonado (off shift); (7) W. Moran (S/L); and (8) R. Gorbea (day off). Def. App. 319, 338, 523-29.

Response: Admitted.

107. According to the MDC Brooklyn Daily Roster (Def. App. 523-29), on September 17, 2002, Lt. Bledsoe was on his day off. Def. App. 319, 525.

Response: Admitted.

108. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the September 17, 2002 meeting on overtime and was not compensated for attending the meeting. Def. App. 319.

Response: Admitted.

109. Lt. Bledsoe was not ordered in writing to attend the September 17, 2002 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Denied. An earlier e-mail from Associate Warden, James Sherman, dated May 30, 2001, indicated that all lieutenants meetings were mandatory.

110. According to the meeting minutes (Def. App. 607-09), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on June 24, 2003, which began at 1:10 p.m. Def. App. 319, 607-09. The combined Department Head/Lieutenants' portion of the meeting ended at 2:35 p.m. Id.

Response: Admitted.

111. According to the Daily Roster (Def. App. 610-16), on June 24, 2003, Lt. Bledsoe was SIS Lieutenant, shift 5, 7:45 a.m.-4:15 p.m. Def. App. 319, 612.

Response: Admitted.

112. Lt. Bledsoe attended the June 24, 2003 meeting during his scheduled shift for that day and was compensated for attending the meeting. Def. App. 319-20, 612.

Response: Admitted.

113. According to the meeting minutes (Def. App. 617-19), Lt. Bledsoe attended the Department Head/Lieutenants' meeting on July 22, 2003, which began at 1:00 p.m. Def. App. 320, 617-19. The combined Department Head/Lieutenants' portion of the meeting ended at 1:40 p.m. Id. According to the minutes and the Daily Roster (Def. App. 620-26), the following Lieutenants did not attend the July 22, 2003 meeting: (1) D. Tessel (LWOP); (2) K. Tassio (LWOP); (3) D. Ortiz (off shift); (4) J. Benitez (on duty); (5) E. Torres (off shift); (6) M. Mundo (off shift); (7) T. Cush (on duty); (8) H. Gussak (off shift); (9) V. Alvarez (A/L); (10) C. Parlo (day off); (11) R. Gorbea (A/L); (12) R. Rojas (LWOP); and (13) C. Fields (A/L). Def. App. 320, 341, 620-26.

Response: Admitted.

114. According to the MDC Brooklyn Daily Roster (Def. App. 620-26), on July 22, 2003, Lt. Bledsoe was SIS Lieutenant, shift 7, 2:30 p.m. - 10:30 p.m., and he was on duty starting at 2:30 p.m. Def. App. 320, 341, 622.

Response: Admitted.

115. According to his time and attendance records, Lt. Bledsoe did not certify on an Overtime Authorization Form that he had attended the July 22, 2003 meeting on overtime. Def.

App. 320. Lt. Bledsoe's time on July 22, 2003, after 2:30 p.m., was compensated through his regular pay. Def. App. 320, 622.

Response: Admitted.

116. Lt. Bledsoe was not ordered in writing to attend the July 22, 2003 Department Head/Lieutenants' meeting. Def. App. 312-13.

Response: Denied. An earlier e-mail from Associate Warden, James Sherman, dated May 30, 2001, indicated that all lieutenants meetings were mandatory.

117. At a MDC Brooklyn Department Head/Lieutenants' meeting on September 14, 2005, Captain Schoenfelder discussed the portal to portal issue and told the Lieutenants to ensure they put in their compensation sheet for Lieutenants' meetings. Def. App. 1550. Lt. Bledsoe attended this meeting. Def. App. 1548.

Response: Admitted.

Respectfully submitted,

__/s/Alan Banov____________

ALAN BANOV
Alan Banov & Associates
1819 L Street, N.W.
Suite 700
Washington, D.C. 20036-3830
(202) 822-9699
Fax: (202) 842-9331
ab@banovlaw.com
Attorney for Plaintiffs