No. 01-47C
(Senior Judge Bruggink)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOSE L. ACEBAL, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF LINDSEY BLEDSOE

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KATHRYN A. BLEECKER
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

OF COUNSEL:

ERIKA TURNER
Assistant General Counsel
Bureau of Prisons

July 9, 2007

TABLE OF CONTENTS

Introduction .......... 1

I. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Overtime Claim For Lieutenants' Meetings At USP Lewisburg .......... 4

II. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Pre-Shift And Post-shift Overtime Claim At USP Lewisburg .......... 5

III. Plaintiff's Assertion That He Needs Additional Discovery At USP Lewisburg Is Without Merit .......... 8

IV. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Pre-shift And Post-shift Overtime Claim At MDC Brooklyn .......... 8

V. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Overtime Claim For MDC Brooklyn Lieutenant Meetings .......... 12

VI. There Is No Merit In Plaintiff's Request That The Court Ignore Or Strike The Government's Declarations .......... 16

VII. The Court Should Not Stay Its Consideration Of Lt. Bledsoe's Claims .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........ 3, 4

Arthur A. Collins, Inc. v. Northern Telecom Ltd,
216 F.3d 1042 (Fed. Cir. 2000) ........ 3

Bishop v. United States,
72 Fed. Cl. 766 (2006) ........ passim

Bishop v. United States,
74 Fed. Cl. 144 (2006) ........ 7, 11, 12

Carlsen v. United States,
72 Fed. Cl. 782 (2006) ........ passim

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........ 3, 4

Cleveland v. Policy Management Corp.,
526 U.S. 795 (1999) ........ 16

Cornetta v. United States,
831 F.2d 1039 (Fed. Cir. 1987) ........ 8

Crown Operations Int'l, Ltd. v. Solutia Inc.,
280 F.3d 1367 (Fed. Cir. 2002) ........ 3

DJ Manufacturing Corp. v. United States,
86 F.3d 1130 (Fed. Cir. 1996) ........ 3

Doe v. United States,
372 F.3d 1347 (Fed. Cir. 2004), cert. denied,
544 U.S. 904 (2005) ........ passim

Florida Power & Light Co. v. United States,
375 F.3d 1117 (Fed. Cir. 2004) ........ 4

Gaines v. United States,
131 F. Supp. 925 (Ct. Cl. 1955) ........ 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSE L. ACEBAL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-47C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF LINDSEY BLEDSOE

Introduction

In our motion for summary judgment relating to the claims of plaintiff Lindsey Bledsoe, we demonstrated that, at the Bureau of Prisons ("BOP") United States Penitentiary ("USP") Lewisburg, Lt. Bledsoe did not identify any documents directing him to work overtime at Lieutenants' meetings and that there were no written orders directing him to work the pre-shift or post-shift overtime that he claimed. See Pl. Res. Def. PFUF No. 20.[1] We also demonstrated that, during many periods, the shifts for the Activities Lieutenants overlapped and that, as an Activities Lieutenant during such periods, Lt. Bledsoe was not required to perform tasks that inherently required the presence of two employees, one of whom is off-duty. See Pl. Res. Def. PFUF Nos. 9-11. In Bishop v. United States, 72 Fed. Cl. 766, 777, 781 (2006) (Bishop I), this Court concluded that the only Post Orders that required overtime were those listing tasks "at the beginning or end of each shift which inherently require the presence of two employees, one of

[1] "Pl. Res. Def. PFUF" refers to "Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact Regarding Plaintiff Lindsey Bledsoe," filed May 29, 2007. "Pl. Op." refers to "Brief in Support of Plaintiff Lindsey Bledsoe's Reply to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment," filed May 25, 2007. "Def. App." refers to our appendices.

whom is off-duty." The overlapping shifts for Activities Lieutenants at USP Lewisburg distinguished Lt. Bledsoe's case from the factual circumstances in Bishop I and Carlsen v. United States, 72 Fed. Cl. 782 (2006), appeal pending, Fed. Cir. No. 2007-5011. We also demonstrated that, as Segregation ("SEG") Lieutenant and G Block Lieutenant, Lt. Bledsoe was not ordered in writing to work any pre-shift or post-shift overtime, but was to be in the key line at his shift-starting time and was to be dropping off keys and any equipment at the Control Center at his shift-ending time. See Pl. Res. Def. PFUF Nos. 17-18 (admitting our PFUFs). This Court has held that a Lieutenant who is to be in the key line at the Control Center at the start of his shift and was to be dropping off keys and equipment at the Control Center at the end of his shift is not entitled to overtime pursuant to the Federal Employee Pay Act ("FEPA"), 5 U.S.C. § 5542. Bishop I, 72 Fed. Cl. at 770-71, 777.

At the Metropolitan Detention Center ("MDC") Brooklyn, we demonstrated that the Lieutenants, including Lt. Bledsoe, often did not attend Lieutenants' meetings at times outside of their scheduled shift, e.g., when they were on leave or off-shift. See Pl. Res. Def. PFUF Nos. 71,72 (admitting our PFUFs). We also demonstrated that the documents that Lt. Bledsoe did identify were not official, written orders expressly directing him to work overtime at Lieutenants' meetings.

At MDC Brooklyn, Lt. Bledsoe worked various assignments. We demonstrated that, as Special Investigative Supervisor ("SIS") and Special Housing Unit ("SHU") Lieutenant, Lt. Bledsoe was not ordered in writing to work any pre-shift or post-shift overtime, but was to be in the key line at his shift-starting time and was to be dropping off keys and any equipment at the Control Center at his shift-ending time. See Pl. Res. Def. PFUF Nos. 63 through 68 (admitting our PFUFs).

We also demonstrated that, during many periods, the shifts for Operations Lieutenants and Security ("SEC") Lieutenants overlapped and, as an Operations Lieutenant or SEC Lieutenant at such times, Lt. Bledsoe was not compelled or ordered to work overtime by Post Orders. See Pl. Res. Def. PFUF Nos. 45 through 56 (admitting our PFUFs). Our motion was well supported by contemporaneous documents and declarations authenticating the documents and explaining the BOP's procedures and policies. Indeed, Lt. Bledsoe admitted almost all of our proposed findings of uncontroverted fact and, where he disagreed, he did not provide contrary evidence. This is an apt case for summary judgment.

Further, because the documents identified by Lt. Bledsoe did not "expressly" direct him to work the overtime he claims, Lt. Bledsoe has failed to establish an essential element of his FEPA claim. Doe v. United States, 372 F.3d 1347, 1349, 1353, 1363 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005); 5 C.F.R. § 550.111(c). "When a party moves for summary judgment on an issue as to which the other party bears the burden of proof, the moving party need not offer evidence, but may obtain summary judgment merely by pointing out to the court 'that there is an absence of evidence to support the nonmoving party's case.'" DJ Manufacturing Corp. v. United States, 86 F.3d 1130, 1135 (Fed. Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); accord Arthur A. Collins, Inc. v. Northern Telecom Ltd, 216 F.3d 1042, 1046 (Fed. Cir. 2000). Once the moving party points to an absence of evidence on an essential issue as to which the nonmovant bears the burden of proof, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact which exists only if the evidence is such that a reasonable jury could reach a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1367-68 (Fed. Cir. 2002). In attempting to meet its burden, the nonmovant "cannot rest on mere

allegations, but must present actual evidence." Crown Operations Int'l, Ltd. v. Solutia Inc., 280 F.3d 1367, 1375 (Fed. Cir. 2002). Thus, the nonmovant must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; accord Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003). Lt. Bledsoe bears the burden of proof of demonstrating that official, written orders expressly directed him to work overtime. Doe, 372 F.3d at 1349, 1353, 1363. Because Lt. Bledsoe has failed to make a sufficient showing on an essential element of his case with respect to which he carries the burden of proof, the Government is entitled to summary judgment. Celotex Corp., 477 U.S. at 325 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (quoting Fed. R. Civ. P. 56(c))); Anderson, 477 U.S. at 250; Florida Power & Light Co. v. United States, 375 F.3d 1117, 1124 (Fed. Cir. 2004).

## I. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Overtime Claim For Lieutenants' Meetings At USP Lewisburg

As to the Lieutenants' meetings at USP Lewisburg, Lt. Bledsoe asserts that he testified to having received written orders to attend such meetings. Pl. Op. 15. That assertion is incorrect and directly contrary to his deposition testimony. Lt. Bledsoe testified that he did not recall any written orders directing him to attend the USP Lewisburg Lieutenants' meetings. Def. App. 8 (Dep. 27-28). Further, in response to our proposed finding, Lt. Bledsoe responded as follows:

> 20. Lt. Bledsoe testified that he did not recall any written instructions directing Lieutenants to attend the Lieutenants' meetings at USP Lewisburg. Def. App. 8 (Dep. 27-28). Lt. Bledsoe was not ordered in writing to attend the USP Lewisburg Department Head/Lieutenants' meetings or subsequent, closed Lieutenants meetings at times when he was not on his scheduled

shift, e.g., when he was on leave, on his day off, or when he was off shift. Def. App. 8 (Bledsoe Dep. 27-28); Def. App. 55 (Johns), 1114 (Ey).
Response: Admitted.

Lt. Bledsoe admits the absence of evidence in support of an essential element of his case and as to which he bears the burden of proof.

Plaintiff asserts that, at one time, Lt. Bledsoe had possession of written orders directing him to work overtime at USP Lewisburg Lieutenants' meetings. Pl. Op. 16. This argument is inconsistent with Lt. Bledsoe's admission that he was not ordered in writing to attend Lieutenants' meetings at times when he was not on his scheduled shift, e.g., when he was on leave, on his day off, or when he was off shift. See Pl. Res. Def. PFUF No. 20. There also is no evidentiary support for the assertion that Lt. Bledsoe had possession of written orders directing him to work overtime at Lieutenants' meetings; counsel's statements in a brief are not evidence. Singh v. INS, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000); Thomas v. Wichita Coco-Cola Bottling Co., 968 F.2d 122, 1025 (10th Cir. 1992). Absent evidence from which a reasonable jury could reach a conclusion that Lt. Bledsoe received written orders directing him to work overtime at Lieutenants' meetings, we are entitled to summary judgment as a matter of law.

Further, in April 2007, Lt. Bledsoe submitted to the BOP overtime authorization forms for attending three Lieutenants' meetings at USP Lewisburg in 2000, and he requested overtime pay for those three meetings. App. 1848, 1861-63. As explained in the declaration of Franceen Fletcher, in 2007, the BOP approved Lt. Bledsoe's request for overtime for those three meetings and Lt. Bledsoe has received overtime pay for attending those three meetings. App. 1848-68. Thus, the record evidence does not demonstrate that there are any specific USP Lewisburg Lieutenants' meeting that Lt. Bledsoe attended and for which he did not receive compensation.

## II. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Pre-Shift And Post-shift Overtime Claim At USP Lewisburg

We submitted detailed proposed findings of uncontroverted fact identifying Lt. Bledsoe's assignments and duties at USP Lewisburg. In response, plaintiff admitted all of our proposed findings of uncontroverted fact. See Pl. Res. Def. PFUF Nos. 5 through 18. Therefore, there is no genuine issue of material fact relating to Lt. Bledsoe's pre-shift and post-shift claims at USP Lewisburg.

Plaintiff asserts that there is a genuine issue of material fact as to whether Lt. Bledsoe's pre-shift and post-shift overtime as Activities Lieutenant is de minimis. Pl. Op. 14. There is no merit in this argument. First, there is no dispute about the amount of pre-shift and post-shift overtime that Lt. Bledsoe claims at USP Lewisburg. In our motion, we cited Lt. Bledsoe's testimony that he claims 5.5 minutes of pre-shift overtime preparing for his daily activities, and 5.5 minutes of post-shift overtime, or a total of 11 minutes per workday. Def. App. 4 (Dep. 10-12). Plaintiff agrees that with these amounts. Pl. Op. 12-13.

Second, there is no genuine issue as to how long it takes two Activities Lieutenants to exchange the keys, radio and information. Plaintiff admits that the exchange of keys, radio, and information between the two Lieutenants usually would not take more than a couple of minutes. See Pl. Res. Def. PFUF Nos. 14-15. Plaintiff responded to our proposed findings as follows:

> 14. The USP Lewisburg Day Watch Activities Lieutenant was required to be in the key line at the Control Center to drop off chits in exchange for the keys and radio at his shift starting time. Def. App. 1111 (Ey). The incoming Evening Watch Activities Lieutenant would drop off his or her chits at the Control Center and obtain the chits for the Day Watch Activities Lieutenant. Def. App. 1111-12 (Ey). The Evening Watch Activities Lieutenant would meet the Day Watch Activities Lieutenant and exchange the chits for the keys and radio, and simultaneously receive oral or written information. Id.; Def. App. 5 (Bledsoe Dep. 14). The

exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id. The Day Watch Activities Lieutenant walked directly out of the institution without stopping at the Control Center to drop off keys, radio or chits. Id.
Response: Admitted.

15. When Lt. Bledsoe was assigned as Evening Watch Activities Lieutenant, 2:30 p.m.-10:30 pm., and another Lieutenant was assigned as Day Watch Activities Lieutenant, 6:00 a.m.-2:30 p.m., Lt. Bledsoe usually obtained his keys and radio directly from the Day Watch Activities Lieutenant, who also provided oral or written information. Def. App. 1112 (Ey). The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id.
Response: Admitted.

As in Carlsen, 72 Fed. Cl. at 799-800, the Court may determine that Lt. Bledsoe's overtime as an Activities Lieutenant is de minimis based upon the record evidence without a trial.

As Day Watch Activities Lieutenant, Lt. Bledsoe was to be in the key line at the Control Center at his shift-starting time. See Pl. Res. Def. PFUF No. 14. Thus, his claim for pre-shift overtime as Day Watch Activities Lieutenant fails for lack of a written order directing him to work pre-shift overtime. As Day Watch Activities Lieutenant, Lt. Bledsoe claims 5.5 minutes of post-shift overtime and he usually was relieved by the Evening Watch Activities Lieutenant. However, overtime of 10 minutes or less is de minimis as a matter of law.[2] BOP is "not required to pay overtime when the work takes ten minutes or less." Bishop v. United States, 74 Fed. Cl. 144, 148 (2006) (Bishop II) (citing 5 C.F.R. § 550.112(b)(1)(I)), appeal pending, Fed. Cir. No.

---

[2] Lt. Bledsoe's claim for 5.5 minutes of post-shift overtime would have to be reduced by the amount of time it took to walk from the Lieutenants' office to the Control Center at USP Lewisburg. Carlsen, 72 Fed. Cl. at 799 (subtracting walking time from Lieutenants' office to the Control Center). The BOP measured with a stop watch the amount of time that it took to walk from the Control Center to the Lieutenants' office at USP Lewisburg. A44-45. The time measured ranged from 29 seconds to one minute and 23 seconds, with the longer time resulting from a person having to wait for the Control Center officer to supply staff with radios before opening the grill. Id. See also A1108.

2007-5099; Carlsen, 72 Fed. Cl. at 798; Bishop I, 72 Fed. Cl. at 781.

Similarly, as Evening Watch Activities Lieutenant, Lt. Bledsoe was to turn in his keys and equipment at the Control Center at his shift-ending time. See Pl. Res. Def. PFUF No. 15. Thus, his claim for post-shift overtime fails for lack of a written order directing him to work post-shift overtime. As Evening Watch Activities Lieutenant, Lt. Bledsoe claims 5.5 minutes of preshift overtime and such overtime is de minimis as a matter of law.

## III. Plaintiff's Assertion That He Needs Additional Discovery At USP Lewisburg Is Without Merit

Plaintiff makes a conclusory assertion that he did not receive all documents re USP Lewisburg, but does not identify any particular documents that plaintiff needed in order to respond to our summary judgment motion. Pl. Op. 11. Plaintiff has discovered all of the relevant documents at USP Lewisburg, including all available Post Orders, Lieutenants' meeting minutes, Correctional Services rosters, and Lt. Bledsoe's time and attendance records. Plaintiff fails to identify any particular items that he still must obtain in order to respond to our summary judgment motion as required by Rule 56(f). Cornetta v. United States, 831 F.2d 1039, 1041 (Fed. Cir. 1987). Indeed, plaintiff responded to our motion.

## IV. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Pre-Shift And Post-shift Overtime Claim At MDC Brooklyn

We submitted proposed findings of uncontroverted fact identifying Lt. Bledsoe's various assignments and duties at MDC Brooklyn that were supported with declarations and contemporaneous documents. In response, plaintiff has admitted almost all of our proposed findings of uncontroverted fact. See Pl. Res. Def. PFUF Nos. 33 through 41, 44 through 58, 60 and 61, and 63 through 68 (admitting our proposed findings). In those few instances where plaintiff did not admit our proposed finding, plaintiff failed to present countervailing evidence,

and thus, there is no genuine issue of material fact, and no need for a trial relating to Lt. Bledsoe's pre-shift and post-shift claims at MDC Brooklyn. See Pl. Res. Def. PFUF Nos. 42, 43, 59 & 62.

There also is no merit in plaintiff's arguments. Plaintiff states that "[d]efendant contends that at MDC Brooklyn Plaintiff Bledsoe did not obtain his keys and radio from the Control Center" and refers to Lt. Bledsoe's assignment as Operations Lieutenant. Pl. Op. 16-17. Plaintiff then asserts that the Post Orders directed MDC Brooklyn Operations Lieutenants "to carry an institutional radio at all times" and cites language in Post Orders stating, "Draw a radio, then proceed to the Lieutenant's office." Pl. Op. 16-17. Plaintiff claims that Lt. Bledsoe's claim for pre-shift overtime includes time spent obtaining a radio at the Control Center when he was the Operations Lieutenant. Pl. Op. 17.

While plaintiff's argument is unclear, there is no real substance to it because plaintiff admits that, as an Operations Lieutenant, Lt. Bledsoe obtained the keys and radio directly from the Operations Lieutenant on the prior shift and did not draw his keys and radio at the Control Center. Thus, Lt. Bledsoe admits as follows:

> 44. During the period May 2000 to present, at MDC Brooklyn, the incoming Operations Lieutenant obtained his keys and radio directly from the outgoing Operations Lieutenant and did not swap or exchange chits in order to obtain the keys and radio. Def. App. 310 (Lopresti); Def. App. 1336, 1338-89 (Schoenfelder); Def. App. 1120-21 (Ey). For example, the incoming Morning Watch Operations Lieutenant obtained his keys and radio directly from the Evening Watch Operations Lieutenant. Id. The incoming Day Watch Operations Lieutenant obtained his keys and radio directly from the Morning Watch Operations Lieutenant. Id. The incoming Evening Watch Operations Lieutenant obtained his keys and radio directly from the Day Watch Operations Lieutenant. Id. The exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes. Id. The outgoing Operations Lieutenant did not drop off the keys

> or radio at the Control Center on his way out of the institution. Id.
> As Operations Lieutenant, Lt. Bledsoe did not drop off any keys or radio at the Control Center on his way out of the institution. Id.
> Response: Admitted.

Thus, in this case, what the Post Order said regarding how Operations Lieutenants obtained their keys and radio is not even relevant. At MDC Brooklyn, Operations Lieutenants did not "draw" their keys or radios from the Control Center; instead, they obtained their keys and radio directly from the Operations Lieutenant on the prior shift. See Pl. Res. Def. PFUF No. 44.

There is no necessity for a trial on whether Lt. Bledsoe's pre-shift and post-shift overtime at MDC Brooklyn is de minimis. There is no dispute regarding how much overtime Lt. Bledsoe claims for MDC Brooklyn. Lt. Bledsoe claims 5.5 minutes of pre-shift overtime. Def. App. 9-10 (Dep. 33-34). For post-shift overtime, Lt. Bledsoe claims three minutes for the Morning Watch and the Evening Watch and five to 5.5 minutes for the Day Watch. Def. App. 10 (Dep. 36-37).

There is no genuine issue regarding how much time it takes Operations Lieutenants, SEC Lieutenants, and Admax Lieutenants to exchange keys, radio and information. Plaintiff admits that "[t]he exchange of keys, radio and information between the two Lieutenants usually would not take more than a couple of minutes." See Pl. Res. Def. PFUF Nos. 44, 52, 57, 59, 62; A310-11, 1338-39. Plaintiff also does not provide evidence that contradicts our evidence. Id.

Plaintiff accuses the Government of trying "to impose its putative Springfield model on Plaintiff Bledsoe's overtime as Day Watch Operations Lieutenant." Pl. Op. 17, citing Def. Br. 18-19. Plaintiff asserts "this is sheer guess-work and not a substitute for producing actual evidence" and the Court cannot grant summary judgment. Contrary to plaintiff's argument, there is no "guess-work" or speculation involved in our motion for summary judgment. Our motion is supported by contemporaneous documents and declarations. Plaintiff has failed to present any

evidence rebutting the evidence that we have submitted.

Plaintiff misconstrues our arguments regarding Operations Lieutenants at MDC Brooklyn and wrongly accuses us of misrepresenting this Court's rulings. Pl. Op. 18, citing Def. Br. 21. As plaintiff agrees, at MDC Brooklyn, Operations Lieutenants, SEC Lieutenants, Admax Lieutenants, and East Activities Lieutenants did not swap chits to obtain their keys and radio; instead, they obtained them from Lieutenants on the prior shift without swapping chits. Def. Br. 18; Def. App. 310, 1120-21; See Pl. Res. Def. PFUF Nos. 44, 52, 60.

Plaintiff, however, misunderstands the significance of not swapping or exchanging chits in order to obtain the keys and radio. This Court has ruled that dropping off chits at the Control Center was "an indispensable part of the principal activity for which BOP lieutenants were hired" since the chit was related to the Lieutenants' later obtaining the keys and radio. Bishop II, 74 Fed. Cl. at 148 and n.5; accord Bishop I, 72 Fed. Cl. at 780. The Court held that therefore "all activities occurring between the time a lieutenant [dropped off] chits at the control center and when he turned over the keys and equipment at the end of his shift were within the workday and compensable as overtime if ordered to be performed before or after shift hours." Bishop II, 74 Fed. Cl. at 148.

However, MDC Brooklyn Operations Lieutenants, SEC Lieutenants, Admax Lieutenants, and East Activities Lieutenants did not drop off, swap or exchange chits in order to obtain their keys and radio. Thus, unlike the facts at issue in Bishop, these Lieutenants did not begin their principal activities at the Control Center. Therefore, the time that these lieutenants spent walking into the institution prior to the start of a shift and prior to their obtaining the keys and radio is not an "integral and indispensable part of the principal activities," and such walking time is not compensable as overtime. Bishop II, 74 Fed. Cl. at 148; accord Bishop I, 72 Fed. Cl. at 780.

The effect of this different procedure for MDC Brooklyn Lieutenants is that Lt. Bledsoe's claim for overtime must be reduced by his walking time. For example, his 5.5 minutes of pre-shift overtime as Operations Lieutenant has to be reduced because it included the amount of time he spent walking to the Control Center and, from there, to the Lieutenants' office. As Operations Lieutenant, Lt. Bledsoe's time spent walking prior to obtaining the keys and radio is not compensable as overtime. Def. App. 9-10 (Bledsoe 33-34); Def. App. 308. Carlsen, 72 Fed. Cl. at 799; Doe, 372 F.3d at 1349.

At MDC Brooklyn, the BOP measured the amount of time it takes to walk from the Control Center to the Lieutenant's office. Depending upon the location of the Lieutenants' office (there are two Lieutenants' offices), it took from one minute and 45 seconds to two minutes and 15 seconds to walk from the Control Center to the Lieutenants' office. A54.

Lt. Bledsoe's pre-shift overtime as Operations Lieutenant minus the walking time is about four minutes. If four minutes of pre-shift overtime is added to Lt. Bledsoe's post-shift overtime of three minutes for Morning or Evening Watch, or to his post-shift overtime of five or 5.5 minutes for Day Watch, the result is de minimis. BOP is "not required to pay overtime when the work takes ten minutes or less." Bishop II, 74 Fed. Cl. at 148; Carlsen, 72 Fed. Cl. at 798.

## V. There Are No Genuine Issues Of Material Fact As To Lt. Bledsoe's Overtime Claim For MDC Brooklyn Lieutenant Meetings

Lt. Bledsoe claims that he worked overtime at MDC Brooklyn Lieutenants' meetings and identified 11 meetings for which he allegedly was not compensated, i.e., the meetings on: (1) June 27, 2000; (2) August 14, 2000; (3) September 19, 2000; (4) October 31, 2000; (5) June 27, 2001; (6) July 24, 2001; (7) August 23, 2001; (8) January 22, 2002; (9) September 17, 2002; (10) June 24, 2003; and (11) July 22, 2003. Pl. Br. 23. Lt. Bledsoe agrees that, for two of these dates,

he was compensated, i.e., the meetings on June 24, 2003 and August 14, 2000. See Pl. Res. Def. PFUF Nos. 81, 112.

For six of these dates, we agreed that the available records indicated that Lt. Bledsoe was not compensated for attending such meetings: (1) September 19, 2000, (2) October 31, 2000, (3) August 23, 2001, (4) January 22, 2002, (5) September 17, 2002, and (6) July 22, 2003. However, Lt. Bledsoe had failed to certify on an Overtime Authorization Form that he attended such meetings on overtime. Def. App. 313-14. In April 2007, Lt. Bledsoe submitted to the BOP overtime authorization forms for among other things these six MDC Brooklyn Lieutenants' meetings, and he requested overtime pay. A1848-68. As explained in the declaration of Franceen Fletcher, in 2007, the BOP approved Lt. Bledsoe's overtime at those meetings and he received overtime pay for attending those meetings. A1848-68. Thus, there is no issue regarding Lt. Bledsoe not being compensated for attending those six meetings.

The only issue remaining is Lt. Bledsoe's claim for overtime for three MDC Brooklyn Lieutenants' meetings, i.e., the meetings on: (1) June 27, 2000, (2) June 27, 2001, and (3) July 24, 2001. For these three dates, MDC Brooklyn Daily Rosters are not available. Def. App. 43, 315, 317-18. Thus, it is not possible to determine what shift Lt. Bledsoe worked on those dates or whether he was on his day off. Id. Plaintiff, in making his claim of non-payment, relied upon the MDC Brooklyn Quarterly Rosters in attempting to determine what Lt. Bledsoe's shift was on particular days. See Pl. PFUF Nos. 51, 55, 56; Pl. App. 97, 101. However, the Quarterly Rosters do not indicate what Lt. Bledsoe's shift was on a daily basis. Pl. Res. Def. PFUF No. 40; Def. App. 308, 1335. In order to determine Lt. Bledsoe's assignment on a particular date, one must consult the Daily Roster. Id. Accordingly, Lt. Bledsoe has not demonstrated that he attended these three meetings at times that were outside of his scheduled shift or on his day off.

Plaintiff also must provide a written order directing him to attend the MDC Brooklyn Lieutenants' meetings on overtime, e.g., on his day off or outside of his scheduled shift. Under Doe, Lt. Bledsoe bears the burden of demonstrating a written order directing that he work overtime at Lieutenants' meetings. Plaintiff relies upon MDC Brooklyn Warden Hasty's memoranda re scheduling of meetings in attempting to demonstrate a written order to work overtime at Lieutenants' meetings. A143-44. Plaintiff asserts that such memoranda directed staff to attend the combined Department Head/Lieutenants' meetings and that we, instead, have made a "deceitful reading of the memos." Pl. Op. 19. At no point did Warden Hasty issue directions to staff to attend the combined Department Head/Lieutenants' meetings. A143-44. Although his memoranda did contain statements that the Duty Officers must be present at certain meetings, they did not contain such statements with regard to the combined Department Head/Lieutenants' meetings or with regard to the Lieutenants. Id.

Plaintiff also asserts that "e-mail meeting reminders and other instructions to attend off-shift meeting" "implicitly compel overtime and satisfy the underlying objective of the regulation" and plaintiff requests that this Court relax its requirement that plaintiff demonstrate a written order "expressly" or "explicitly" directing overtime work. Pl. Op. 5. This Court's application of controlling precedent was correct. In Doe, the Federal Circuit applied 5 C.F.R. § 550.111(c), and found two problems with the writings presented: 1) many were not authored by those with authority to "officially order[] or approve[]" overtime, and 2) those that were authorized "[did] not order attorneys to work any amount of overtime-[they did] not even...order an indefinite number of overtime hours." 372 F.3d at 1363. The Federal Circuit concluded: "We have reviewed each of these documents, and none of them includes an express directive to work overtime." Id. at 1363 (emphasis added). In Doe, 372 F.3d at 1353, the Federal Circuit quoted

and relied upon the holding in Gaines v. United States, 131 F. Supp. 925, 927 (Ct. Cl. 1955), that "any claim [for FEPA overtime] must be based upon the performance of overtime services which were expressly authorized or approved in writing by an officer or employee to whom such authority has been specifically delegated."

As noted above, the only remaining issue is Lt. Bledsoe's claim for overtime for the Lieutenants' meetings on: (1) June 27, 2000, (2) June 27, 2001, and (3) July 24, 2001. Plaintiff has failed to identify any document that directed Lt. Bledsoe to attend the June 27, 2000 meeting on overtime. See Pl. Res. Def. PFUF No. 78. For the other two meetings - on June 27 and July 24, 2001, plaintiff relies on the May 30, 2001 e-mail of Mr. Sherman. See Pl. Res. Def. PFUF No. 97; A146. Mr. Sherman's e-mail did not state that Lieutenants must attend the Lieutenants' meetings on overtime, e.g., at times when they were not scheduled to work. A146. Mr. Sherman opted for a notification procedure and stated in his email that "all Lieutenants are now required to request approval through me prior to you not attending these meetings." Id. Mr. Sherman also stated: "I will still need to be notified in advance of your planned absence." Id. An instruction to provide notification when not attending a meeting is different from an order directing employees to work overtime by attending meeting at times when they are not scheduled to work.

Further, following Mr. Sherman's May 30, 2001 e-mail, MDC Brooklyn Lieutenants continued not to attend the combined Department Head/Lieutenants' meetings. At the June 27, 2001 meeting, seven Lieutenants did not attend the meeting. See Pl. Res. to Def. PFUF No. 91. Only six Lieutenants attended the July 24, 2001 meeting, although approximately 20 Lieutenants were employed at MDC Brooklyn at that time. Def. App. 456; See Pl. Res. Def. PFUF No. 94. Indeed, after Mr. Sherman's May 30, 2001 e-mail, Lt. Bledsoe did not attend numerous Department Head/Lieutenants' meetings. See Pl. Res. Def. PFUF No. 71. Lt. Bledsoe did not

attend some meetings because he worked an "odd shift" and was sleeping, or because it was his day off. Def. App. 15 (Dep. 54-55). Lt. Bledsoe explained his understanding of "mandatory" was "you just have to give an explanation of why you were not attending if you chose not to attend." Def. App. 15 (Dep. 54). Mr. Sherman's notification procedure in his e-mail did not expressly direct that all Lieutenants must attend the meetings or that Lieutenants who are not on duty must attend the meetings.[3]

## VI. There Is No Merit In Plaintiff's Request That The Court Ignore Or Strike The Government's Declarations

Plaintiff requests this Court to ignore or strike our declarations. Pl. Op. 10. There is no merit in this argument. First, there was no obligation upon us to produce all of the individuals who provided us with declarations for deposition by the plaintiff. Two of the declarants were produced for deposition, i.e., MDC Brooklyn Warden Michael Zenk and Associate Warden William Ey, and plaintiff never requested depositions of the other witnesses. There also was no obligation upon us to prepare these declarations during the discovery period. Instead, Rule 56 contemplates that a party will support or defend against motions for summary judgment by providing affidavits. Our declarations therefore were properly prepared in responding to plaintiff's summary judgment motion.

Plaintiff relies upon cases stating that "party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn

---

[3] Plaintiff refers to MDC Brooklyn Warden Zenk's June 2003 memorandum directing staff not to work overtime without approval or compensation. Pl. Op. 18. Plaintiff asserts that Warden Zenk wrote this memorandum because of this lawsuit and directions from his regional office and that fact that his employees constantly needed to work overtime to perform their required duties. Id. Plaintiff's citations do not support his assertions. A1873-76 (Dep. 9, 12, 25).

deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Management Corp., 526 U.S. 795, 806 (1999); see also Sinskey v. Pharmacia Ophthalmics, Inc., 982 F.2d 494, 498 (Fed. Cir. 1992). Pl. Op. 9. In applying this rule, courts assess whether the witness has contradicted his prior sworn testimony and how a party is using the declaration. For example, in Sinskey, 982 F.2d at 497, the witness testified in deposition that a lens did not require testing and would work and there was no need for any further tests. In his declaration, the witness stated that the same lens was experimental, that he could not be sure that the lens would work, and that he needed to perform additional tests in order to insure that the lens would consistently work well. The Federal Circuit, presented with this direct conflict in testimony, stated that "a party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity." Id. at 498. The Federal Circuit held that a party who "seeks to create an issue of fact through a later, inconsistent declaration," "has the duty to provide a satisfactory explanation for the discrepancy at the time the declaration is filed." Id.

The precedent cited by plaintiff is not relevant because the declarations of MDC Brooklyn Warden Zenk and Mr. Ey are not inconsistent with their deposition testimony. Plaintiff did not identify any alleged conflict between Warden Zenk's declaration and his deposition testimony. Pl. Op. 7. An examination of Mr. Ey's deposition testimony demonstrates that there is no conflict. For example, Mr. Ey's statements in his declaration about rosters are not inconsistent with his deposition testimony about rosters. In his declaration, Mr. Ey stated:

> 4. At USP Lewisburg and MDC Brooklyn, Lieutenants were assigned to and worked various shifts. Lieutenants generally were scheduled to work five days a week and had two days off. The shift assignments for correctional officers and Lieutenants were stated in the Quarterly Rosters. There also were daily

> changes in assignments and, consequently, there was a Daily Assignment Roster indicated a Lt.'s daily assignment. The Quarterly Rosters and Daily Rosters did not tell Lieutenants where they were required to be at the start of their shift or where they were required to be at the end of their shift. The rosters did not tell the Lieutenants that they had to be at a particular location, e.g., the Lieutenants' office, at a particular time. The rosters stated their shift times and assignments.

A1106-07. In deposition, Mr. Ey stated that:

> A. For the most part. They are given a quarterly assignment if something was to happen, i.e., a staff member gets hurt, he can't work his post. We need to fill that post and it is a critical post such as the control center then we get with the union, we reassign other staff members that are qualified to work those posts. But for the most part this is their quarterly assignment, yes.

A1251 (Dep. 46). In deposition, Mr. Ey explained that quarterly assignments for correctional officers can and do change; thus, the quarterly roster does not state an officer's daily assignment. Id. Mr. Ey's deposition testimony about the quarterly assignment of correctional officers is not contrary to his declaration. Further, plaintiff admits that assignments are determined by the Daily Roster, not the Quarterly Roster. See Pl. Res. Def. PFUF No. 40 (admitting "Lt. Bledsoe's assignments on the Quarterly Rosters were modified by Daily Rosters, which determined his daily assignments."). It also is difficult to understand the significance of plaintiff's argument since the Court has ruled that the correctional services rosters are not orders to work overtime. Carlsen, 72 Fed. Cl. at 794.

Plaintiff claims that Mr. Ey changed his testimony about Operations Memorandum 214-95, but fails to accurately state his deposition testimony. Mr. Ey was asked about his understanding of Operations Memorandum 214-95, in 1995 when he was a Lieutenant at Terre Haute. In response, Mr. Ey testified to his understanding of the memorandum in 1995, that it was "pretty self explanatory – about being in the key line, dropping equipment off and the

procedures of when they start work, when they get off of work." A1870 (Dep. 39). This is not inconsistent with his declaration where Mr. Ey stated:

> 5. Since November 1, 1995, BOP policy has provided that if employees working in an institution pick-up and drop-off equipment at the Control Center, their shift starting time is in the key line at the Control Center and their shift ending time is dropping off their equipment at the Control Center. For example, if a Lieutenant picks up equipment at the Control Center, they are to be in the key line at the Control Center at the start of their shift. Further, if a Lieutenant drops off equipment at the Control Center, they are to be dropping off equipment at the Control Center at the end of their shift. This policy is set forth in the Operations Memorandum No. 214-95, and is incorporated in the BOP Human Resource Management Manual. . . .

A1107. Indeed, plaintiff agrees with our proposed findings regarding Operations Memorandum No. 214-95. See Pl. Res. Def. PFUF Nos. 1-2. The Court also has addressed the significance of Operations Memorandum No. 214-95. Bishop I, 72 Fed. Cl. at 770-71; Carlsen, 72 Fed. Cl. at 787.

Plaintiff has not demonstrated that an inconsistency in Mr. Ey's testimony regarding the MDC Brooklyn Department Head/Lieutenants' meetings. In his declaration, Mr. Ey stated as follows:

> 43. MDC Brooklyn held its Lieutenants' meetings as combined Department Head/Lieutenants' meetings. The combined meeting usually was followed by a closed Lieutenants' meeting.
>
> 44. During my tenure at MDC Brooklyn, Lieutenants were not required to attend the Department Head/Lieutenants' meetings or subsequent, closed Lieutenants' meetings at times when they were not on their scheduled shift. The meetings were required for those Lieutenants who were on duty at the time of the meeting, assuming that they did not have a conflict such as training, an institutional emergency, or another assignment. During my tenure at MDC Brooklyn, I was not aware of any written instructions or orders directing the Lieutenants to attend these meetings.

A1121. In deposition, Mr. Ey was questioned about a different topic – Department Head meetings -- and testified that he did not send e-mails to MDC Brooklyn staff telling them to come to Department Head meetings. A1872 (Dep. 140-41). Mr. Ey then was asked:

> Q. Other people at MDC Brooklyn have sent emails to at least encourage employees to come to those meetings, right?
> A. I am sure, yes.

Id. Thus, his deposition testimony was about Department Head meetings, not the combined Department Head/Lieutenants' meetings, and testimony about Department Head meetings is not pertinent to Lt. Bledsoe's claims. Id. Further, plaintiff misrepresents Mr. Ey's testimony. Pl. Op. 7. Contrary to plaintiff's argument, Mr. Ey did not testify that other managers had directed or required employees to attend the Department Head meetings in e-mails. Plaintiff's counsel asked whether e-mails were sent to "encourage" attendance at Department Head meetings, and did not inquire whether e-mails were sent requiring or directing attendance at Department Head meetings. A1872 (Dep. 141).

In sum, plaintiff has failed to demonstrate (1) that Mr. Ey contradicted his deposition testimony or (2) that we have used contradictory testimony in Mr. Ey's declaration to create a genuine issue of material fact and thereby preclude summary judgment. There is no conflict in testimony and no contradiction that Mr. Ey was required to explain. Moreover, plaintiff admits our proposed findings that were based upon Mr. Ey's declaration. See Pl. Res. Def. PFUF Nos. 6-20, 22-32, 44, 52.

VII. The Court Should Not Stay Its Consideration Of Lt. Bledsoe's Claims

Although this Court has discretion to stays proceedings, it should not do so with regard to Lt. Bledsoe's claims. It is unlikely that the United States Court of Appeals for the Federal

Circuit will decide the Carlsen and Shea appeals before the end of this year.[4] Lt. Bledsoe's motion is fully briefed, and an oral argument would not be a significant additional expenditure of resources. We also request oral argument upon the motions relating to Lt. Bledsoe.

## CONCLUSION

For all these reasons and those stated in our motion for summary judgment, and based upon our response to plaintiffs' proposed findings of undisputed fact and plaintiff's responses to our proposed findings, the Court should deny Lt. Bledsoe's motion for partial summary judgment and grant the Government's motion for summary judgment with regard to Lt. Bledsoe.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons

July 9, 2007

---

[4] The Carlsen appeal is fully briefed. Mr. Shea's appellate brief is due on July 20, 2007. Plaintiffs have requested that the Federal Circuit hold oral arguments in the two appeals before the same panel on the same day.